**FILED**

NOV 1 6 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

VAUGHN L. BENNETT
2520 10th Street, NE, #27
Washington, D.C. 20018
(202) 351-2627    Plaintiff

V.

UNITED STATES OF AMERICA CHESS FEDERATION (USCF),
65 East Street Suite 101
Crossville, Tennessee 38555

JOHN MCCRARY, individually and in his official
capacity as President of the USCF

and
TIMOTHY REDMAN, individually and in his official
capacity as President of the USCF

and
WILLIAM GOICHBERG, individually and in his official
capacity as Executive Director and President of the USCF,

and
CHESS CENTRAL (CC)

and
TIMOTHY W. JUST, individually and in his official
capacity as a member of the USCF, and in his official
capacity as a Tournament Director and Special Referee of the USCF,
and in his official capacity as President of Chess Central

and
WAYNE D. CLARK, individually and in his official
capacity as a member of the USCF, and in his official
capacity as a Tournament Director of the USCF, and in his official
capacity as Vice-President of Chess Central

and
BMR DESIGN
853 Larimer Avenue

CASE NUMBER 1:05CV02225

JUDGE: Richard J. Leon

DECK TYPE: Civil Rights (non-employmet

DATE STAMP: 11/16/2005



1

Turtle Creek, PA 15145

and
BOYD M. REED, individually and in his official
capacity a member of the USCF, and in his official
capacity as a Tournament Director of the USCF and in his official
capacity as President of BMR Design


and
THOMAS BROWNSCOMBE, individually and in his official
capacity as a member of the USCF and in his official
capacity Scholastic Director of the USCF

and
GREGORY VASSERSTEIN, individually and in his official
capacity as a  member of the USCF and in his official
capacity Tournament Director of the USCF

and
UNITED STATES CHESS CENTER FOUNDATION (USCCF),
1501 'M' Street NW
Washington, D.C.

and
DAVID MEHLER, individually and in his official
capacity as a member of the USCF, and in his official
capacity as a Tournament Director of the USCF, and in his official
capacity Executive Director of the USCCF and in his official
capacity as Scholastic Coordinator of the DCCL,

and
DISTRICT OF COLUMBIA CHESS LEAGUE
(DCCL),

and
RALPH MIKELL, individually and in his official
capacity as a member of the USCF, and in his official
capacity President of the DCCL and in his official
capacity as Treasurer of the USCCF,


and
GREG ACHOLONU, individually and in his official
capacity as a member of the USCF and in his official
capacity as an employee of the USCCF

and
SALVADOR ROSARIO, individually and in his official
capacity as a member of the USCF and in his official
capacity as an employee of the USCCF

and
MARYLAND CHESS ASSOCIATION
(MCA),

and
HARRY COHEN, individually and in his official
capacity as a member of the USCF and in his official
capacity as President of MCA and in his official
capacity as Treasurer of DCCL

and
SACHIN SINGHAL, individually and in his official
capacity as Board Member of MCA and in his official
capacity as a member and Tournament Director of the USCF,

and
UNIVERSITY OF MARYLAND AT BALTIMORE COUNTY
(UMBC)

and
DR. FREEMAN HRABOWSKI, III, individually and in his official
capacity as a President of UMBC

and
DR. ALAN SHERMAN, individually and in his official
capacity as a member of the USCF and in his official
capacity faculty member of UMBC

and
HERSHEY LODGE AND CONVENTION CENTER

                              Defendants.
************************************************

## COMPLAINT FOR VIOLATION OF STATUTORY
## TITLE VI, TITLE VII, 42 U.S.C. § 1981, 1983, 1982, 1985, 1986,
## THE KLU KLUX KLAN ACT, DEFAMATION PER SE, RETALIATION,
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS,
## AND COMMON LAW

3

## **NATURE OF THE CLAIM**

1.     Comes now the plaintiff, Vaughn L. Bennett, pro se, and files this action

pursuant to 42 U.S.C. §1981, 1982, 1983, 1985 and 1986 and under Title VI and Title VII

of the Civil Rights Act of 1871 and 1964 as amended by the Civil Rights Act of 1991, to

redress the deprivation of rights, privileges and immunities secured to plaintiff by the

First, Fourth, Thirteenth, and Fourteenth Amendments to the United States

Constitution. Plaintiff also challenges retaliatory acts that defamed him and violated the

rights granted by the common law of the District of Columbia. Plaintiff seeks

$50,000,000.00 in compensatory damages against the individual defendants, and

attorneys' fees pursuant to 42 § U.S.C. 1988. Further, because defendant's actions were

intentional, malicious, and gross; taken in conscious disregard of Plaintiff's constitutional

and civil rights, Plaintiff seeks an award of punitive damages in an amount to be

determined at trial of not less than $100 million dollars.

2.     This Complaint challenges the actions of the US Chess Federation, John

McCrary, Timothy Redman, William Goichberg, Chess Central, Timothy Just, Wayne D.

Clark, BMR Design, Boyd M. Reed, Thomas Brownscombe, Gregory Vasserstein the US

Chess Center Foundation, David Mehler, District of Columbia Chess League, Ralph

Mikell, Greg Acholonu, Salvador Rosario, the Maryland Chess Association, Harry

Cohen, Sachin Singhal, the University of Maryland at Baltimore County, Dr. Freeman

Hrabowski, III, Dr. Alan Sherman, and Hershey Lodge and Convention Center. From

2001 until 2005 defendants engaged in a course of conduct that violated plaintiff's rights

under the First, Fourth, Thirteenth and Fourteenth Amendments to the United States

4

Constitution, federal statute, and under the common law and statutory law of the District

of Columbia.

## JURISDICTION

3.    This action arises under 42 U.S.C. § 1981, 1982, 1983, 1985 and 1986, the

United States Constitution, federal statute, and the common-law and statutory law of the

District of Columbia. This court has jurisdiction over this action pursuant to 28 U.S.C. §

§ 1331, 1343, and 1367.

4.    Venue has been properly laid in this District pursuant to 28 U.S.C. § 1391

5.    At all times relevant in this Complaint, defendants engaged in the illegal

conduct herein mentioned to the injury of plaintiff, and deprived plaintiff of his rights.

## PARTIES

6.    Plaintiff Vaughn L. Bennett is, and has been at all times relevant to this

Complaint, a citizen of the United States and a resident of the District of Columbia, with

his residence at 2520 10th Street, N.E. #27, Washington, D.C. 20018. He is a dues paying

member of the United States of America Chess Federation (USCF), a USCF certified

Tournament Director and is currently the only Black African-American delegate to the

U.S.C.F. in the United States. Plaintiff was also executive director of a nonprofit

corporation, Olympic Chess House. www.olympicchessdc.org

7.    Defendant United States of America Chess Federation (USCF) is an

Illinois State nonprofit corporation headquartered in Tennessee with affiliates in each of

the United States. The USCF is currently the only sanctioning body of chess in the United

States. The actions of several defendants in this suit were taken under their authority and

for the benefit of and on behalf of the USCF.

5

8.    Defendant United States Chess Center Foundation (USCCF) is a nonprofit corporation located in Washington, D.C. It is an affiliate member of the USCF. The actions of several defendants in this suit were taken under their authority and for the benefit of and on behalf of the USCCF.

9.    Defendant District of Columbia Chess League (DCCL) is an unincorporated, nonprofit organization headquartered in Washington, DC. The DCCL is the official "state affiliate" to the USCF and "sanctions" chess activities in Washington, DC. The actions of several defendants in this suit were taken under their authority and for the benefit of and on behalf of the DCCL.

10.    Defendant Maryland Chess Associate (MCA) is a nonprofit corporation located in Maryland. The MCA is the official "state affiliate" to the USCF and "sanctions " chess activities in the state of Maryland. The actions of several defendants in this suit were taken under their authority and for the benefit of and on behalf of the MCA.

11.    Defendant University of Maryland at Baltimore County (UMBC) is a Maryland State university located in Maryland. The UMBC is an affiliate of the USCF. The actions of several defendant s were taken under their authority and for the benefit of and on behalf of the UMBC.

12.    Upon information and belief, defendant John McCrary was the president of the USCF at times relevant to this complaint. As president, defendant McCrary was one of the highest ranking officials in the USCF. On information and belief, defendant McCrary was a policy maker for the USCF for purposes of 42 U.S.C. § 1981, 1982, 1985 and 1986. He is sued here both in his individual and official capacities.

13.     Upon information and belief, defendant Timothy Redman was the president of the USCF at times relevant to this complaint. As president, defendant Redman was one of the highest ranking officials in the USCF. On information and belief, defendant Redman was a policy maker for the USCF for purposes of 42 U.S.C. § 1981, 1982, 1985 and 1986. He is sued here both in his individual and official capacities.

14.     Upon information and belief, defendant William Goichberg was the executive director of the USCF at times relevant to this complaint. As executive director, defendant Goichberg was one of the highest ranking officials in the USCF. On information and belief, defendant Goichberg was a policy maker for the USCF for purposes of 42 U.S.C. § 1981, 1982, 1985 and 1986. He is sued here both in his individual and official capacities.

15.     Defendant Chess Central (CC) is an Illinois state corporation located in Illinois. CC is an affiliate of the USCF. The actions of several defendant s were taken under their authority and for the benefit of and on behalf of the CC.

16.     Upon information and belief, defendant Thomas Brownscombe was the scholastic director of the USCF at times relevant to this complaint. As scholastic director, defendant Brownscombe was one of the highest ranking officials in the USCF. On information and belief, defendant Brownscombe was a policy maker for the USCF for purposes of 42 U.S.C. § 1981, 1982, 1985 and 1986. He is sued here both in his individual and official capacities.

17.     Upon information and belief, defendant Timothy Just was a member of the USCF, delegate to the USCF, the registered agent of the USCF, a national tournament director for the USCF and a "Special Referee" for the USCF at all times relevant to this

7

complaint. Defendant Just was also President of Chess Central, a USCF affiliate.

Defendant Just was also the author of the USCF Chess Rulebook. On information and

belief, defendant Just was a policy maker for the USCF for purposes of 42 U.S.C. § 1981,

1982, 1985 and 1986. He is sued here both in his individual and official capacities.

18.     Upon information and belief, defendant Wayne Clark was a member of the

USCF and a national tournament director for the USCF at all times relevant to this

complaint. Defendant Clark was also Vice-President of Chess Central, a USCF affiliate.

He is sued here both in his individual and official capacities.

19.     Defendant BMR Design (BMR) is a Pennsylvania state corporation

located in Pennsylvania. The actions of several defendant s were taken under their

authority and for the benefit of and on behalf of BMR.

20.     Upon information and belief, defendant Boyd M. Reed was a member of

the USCF at all times relevant to this complaint. Defendant Reed was also President of

BMR Design, a Pennsylvania state corporation. He is sued here both in his individual and

official capacities.

21.     Upon information and belief, defendant Gregory Vasserstein was a

member of the USCF and a tournament director for the USCF at all times relevant to this

complaint. He is sued here both in his individual and official capacities.

22.     Upon information and belief, defendant Attorney David Mehler was the

executive director of the USCCF at all times relevant to this complaint. As executive

director, defendant Attorney Mehler was the highest ranking official in the USCCF.

Defendant Attorney Mehler was also a member of the USCF, a tournament director, and

a member of the USCF by-laws committee at all times relevant to this complaint.

8

Defendant Attorney Mehler, additionally, was the "scholastic coordinator" of the DCCL at all times relevant to this complaint. On information and belief, defendant Attorney Mehler was a policy maker for the USCF, USCCF and the DCCL for purposes of 42 U.S.C. § 1981, 1982, 1983, 1985 and 1986. He is sued here both in his individual and official capacities.

23.    Upon information and belief, defendant Ralph Mikell was the president of the DCCL at all times relevant to this complaint. As president, defendant Mikell was the highest ranking official in the DCCL. Defendant Mikell also was a member of the USCF and a delegate to the USCF. Defendant Mikell, additionally, was the treasurer on the board of directors for the US Chess Center Foundation (USCCF) and the registered agent of the USCCF at all times relevant to this complaint. On information and belief, defendant Mikell was a policymaker for the DCCL and the USCCF for purposes of 42 U.S.C. § 1981, 1982, 1985 and 1986. He is sued here both in his individual and official capacities.

24.    Upon information and belief, defendant Gregory Acholonu was a member of the USCF and an employee of the USCCF at all times relevant to this complaint. He is sued here both in his individual and official capacities.

25.    Upon information and belief, defendant Salvador Rosario was a member of the USCF and an employee of the USCCF at all times relevant to this complaint. He is sued here both in his individual and official capacities.

26.    Upon information and belief, defendant Harry Cohen was the president of the MCA at all times relevant to this complaint. As president, defendant Cohen was the highest ranking official in the MCA. Defendant Cohen also was a member of the USCF

at all times relevant to this complaint. Defendant Cohen, additionally, was the treasurer

on the board of directors for the DCCL at all times relevant to this complaint. On

information and belief, defendant Cohen was a policymaker for the MCA and the DCCL

for purposes of 42 U.S.C. § 1981, 1982, 1985 and 1986. He is sued here both in his

individual and official capacities.

27.    Upon information and belief, defendant Sachin Singhal was a member of

the USCF and a tournament director for the USCF at all times relevant to this complaint.

Defendant Singhal also was a Board Member of MCA at all times relevant to this

complaint. On information and belief, defendant Singhal was a policymaker for the MCA

for purposes of 42 U.S.C. § 1981, 1982, 1985 and 1986. He is sued here both in his

individual and official capacities.

28.    Upon information and belief, defendant Dr. Freeman Hrabowski, III, was

the president of UMBC at all times relevant to this complaint. As president, defendant

Hrabowski was the highest ranking official at UMBC. On information and belief,

defendant Hrabowski was a policy maker for UMBC for purposes of 42 U.S.C. § 1981,

1982, 1983, 1985 and 1986. He is sued here both in his individual and official capacities.

29.    Upon information and belief, defendant Dr. Alan Sherman, was a member

of the USCF, delegate to the USCF and an employee of UMBC at all times relevant to

this complaint. Defendant Sherman also was the director of the chess program at UMBC

at all times relevant to this complaint. On information and belief, defendant Sherman was

a policy maker for UMBC for purposes of 42 U.S.C. § 1981, 1982, 1983, 1985 and 1986.

He is sued here both in his individual and official capacities.

10

**STATEMENT OF FACTS**

30.    On December 22, 2004, while in deposition, under oath to tell the truth, Defendant Attorney David Mehler (expressing his racial animus) stated that he knew of no Black African-American children in D.C. who play chess very well and that, "There were no good chess players in the District of Columbia!" Certain requirements, (in a no longer existing D.C. zoning law), have allowed the Defendants Attorney David Mehler and the United States Chess Center Foundation (USCCF) to enjoy a twenty-year rent free lease on thirteen thousand (13,000) square feet at 1501 'M" Street NW, Washington, D.C., since 1992. Defendant Attorney David Mehler also publicly claims, that since 1992, the USCCF has taught twelve thousand (12,000) "especially inner city" D.C. children the game of chess.

31.    On information and belief, the management of the USCF during times relevant to this complaint consisted of politically elected officials including: President Timothy Redman, President John McCrary, and Executive Director William Goichberg, and various department directors including USCF Scholastic Director Thomas Brownscombe.

32.    In 2000, plaintiff joined the USCF as a dues paying member. Plaintiff attended and participated in various USCF sanctioned activities. Plaintiff later became a USCF certified and sanctioned tournament director, directing many tournaments. Plaintiff also became executive director of Olympic Chess House, a District of Columbia nonprofit chess organization. Plaintiff Bennett was in good standing as a member of the USCF. The Plaintiff advocated many children, schools and organizations, where he taught chess, to join the USCF and become dues paying members and affiliates. He

11

received praise and commendation for his chess teaching skill and dedication to the community.

33.     During Plaintiff's membership with the USCF, he vocally opposed numerous practices and procedures that he believed to be racial discrimination within the USCF, including the inequitable treatment of Black African-American adult and child chess players. In particular, from May 2001until present, in both letters to the management of the USCF and statements to members of the public and media, plaintiff spoke out on a broad range of matters concerning race discrimination and illegal activities, including (but not limited to) the following instances:

a.     On or around April of 2001, Plaintiff discovered an ongoing, racially motivated scheme designed by defendants USCF, USCCF, DCCL, Brownscombe, Redman, McCrary, Attorney Mehler, Mikell and Cohen; to deny Black African-American and Vietnamese children, (who had won the title of D.C. High School Champion) the opportunity to win chess scholarships by representing the District of Columbia at the Arnold Denker Tournament of High School Champions (Denker). The Denker, where each state sends their state high school champion to compete, is the most prestigious scholastic chess tournament in the United States. The top four finishers of the Denker tournament are awarded scholarships from the USCF totaling $1,000.00. In addition to the USCF scholarships, in the year 2000, the University of Texas at Dallas awarded five scholarships, valued at $30,000.00 each, to the winners of the Denker. There has never been a Black African-American winner of the Denker. Plaintiff further discovered that since 1988, no Black African-American child has represented Washington, D.C. at the Denker; and that since 1998, the Denker representative for D.C.

12

had been the same Caucasian child, Johnny Sadoff, son of USCCF board

member/registered agent Elizabeth Sadoff. Johnny never competed for the title of D.C.

high school champion, but ultimately represented D.C. at the Denker five years in a row,

never winning. There is no other person in the entire world that has ever played in the

Denker five years in a row.

        **b.**      Plaintiff Bennett also spoke out about the fact that

Defendants USCF, USCCF and Attorney David Mehler had illegally housed, and

illegally profited from a museum, the "US Chess Hall of Fame", (a financial asset of the

USCF). The US Chess Hall of Fame enjoyed nine years—rent and D.C. tax free at 1501

'M' Street NW, Washington, D.C. The US Chess Hall of Fame was never registered with

the Washington, D.C., Department of Consumer and Regulatory Affairs, thus the

museum was allowed to collect public funds and never pay taxes. The museum outgrew

its nine-year, rent-free space (approximately 5,000 square foot), at 1501 'M' Street and

was moved to Florida. Defendants USCCF and Attorney Mehler also run a for-profit,

"gift shop", inside of the USCCF at 1501 'M' Street, charging D.C. sales taxes on items

sold, (the USCCF is supposed to be a nonprofit corporation). The District of Columbia

government has approved and allowed Defendants USCF, USCCF and Attorney Mehler

to operate illegally collecting public funds.

        c.      Bennett exercised his right to free speech and spoke out

about the fact that Defendants USCF, USCCF, and Attorney David Mehler had conspired

to commit the ongoing fraud of Attorney Mehler's son and daughter becoming two of the

world's highest rated chess players. (Due to fraud, Defendant Attorney Mehler's daughter

has the highest recorded rating of any chess player ever in the history of the world, with a

13

rating of 3019: higher than even world champions Bobby Fischer and Gary Kasparov!)

The Defendants were able to accomplish this fraudulent activity by manipulating the

USCF's performance evaluation/chess-rating system. This dastardly deed involved

having two of the world's highest rated, professional chess players, Grandmasters

Vladimir Epishin and Alex Sherzer, intentionally lose chess games to Mehler's son and

daughter. [A chess grandmaster is at the National Basketball Association (NBA),

National Football League (NFL) and Major League Baseball (MLB) level of chess. There

are less than seven hundred grandmasters in the whole world, some even as young as

twelve (12) years old.] The purpose of Defendants fraudulent activities was to defraud

Plaintiff and other Black African-Americans. Also, the false chess ratings were intended

to secure full scholarships to Defendant UMBC for Defendant Attorney Mehler's son and

daughter.

        d.      Plaintiff spoke out about the USCF's patterns and practices

of racial discrimination that has kept Black African-Americans from being invited for

over one hundred and fifty (150) years, to the US Championships (the chess equivalent to

the US Masters in golf). In 2003, after over one hundred and fifty (150) years, Maurice

Ashley and Stephen Muhammad were the first Black African-Americans ever to be

invited to the US Championships. Plaintiff additionally exercised his right to free speech

in writing about how there is only one Black Grandmaster (Maurice Ashley) of chess in

the entire world due to access being racially denied. (The world' s first Black African-

American International Master, Maurice Ashley, became the world's first, and only,

Black African-American Grandmaster in 1999. In 2003, Stephen Muhammad won the

title of International Master and became the second Black African-American to ever

14

obtain the title of International Master. Muhammad is currently the only Black African-

American International Master in the world.)

        e.      Plaintiff also spoke out about how the USCF's patterns and

practices of racial discrimination has allowed a total of only three Black African-

American children to ever be invited to represent the United States in World Youth

competition, in almost two hundred (200) years.

        f.      Plaintiff also spoke out about Defendants USCCF, Attorney

David Mehler and Mikell illegally using public funds to support the USCF, USCCF and

the DCCL. In particular the D.C. Public Schools permitted Defendants USCCF and

Attorney David Mehler, for many years, to solicit public funds using the D.C. Public

Schools name.

### PLAINTIFF BENNETT'S EFFORTS TO EXPOSE DEFENDANT USCF, USCCF, DCCL, BROWNSCOMBE, ATTORNEY MEHLER, MIKELL AND COHEN'S RACIST SCHEME TO KEEP BLACK AFRICAN-AMERICAN AND VIETNAMESE CHILDREN FROM REPRESENTING WASHINGTON, D.C. AND WINNING SCHOLARSHIPS

      34.      At approximately the end of April in 2001 Plaintiff Bennett became aware

of a racist discriminatory scheme developed and implemented by Defendants USCF,

USCCF, DCCL, Thomas Brownscombe, Attorney David Mehler, Ralph Mikell and

Harry Cohen. Since 1988, the Defendant's scheme has kept Black African-American and

Vietnamese children, who had won the title of D.C. High School Champion, from

representing the D.C. at the most prestigious scholastic tournament in the United States,

the Arnold Denker Tournament of High School Champions (the Denker). The

Defendants, especially Attorney Mehler, through an unfair and inequitable process, had

ensured that only a Caucasian child, Johnny Sadoff, (also the son of USCCF board

member and registered agent, Elizabeth Sadoff), represented D.C. at the Denker from,

(then), 1998—2001.

35.    With knowledge of the fact that from, 1998-2001, the titled and trophy holding D.C. High School Champion had been either Black African-American or Vietnamese, Plaintiff became direly concerned about Black African-American and Vietnamese children being denied access to chess scholarships, especially since no Black African-American child had ever won a full chess scholarship, (though at least twenty three universities offer full or partial chess scholarships). He also was troubled by the adverse impact of the blatant, racially motivated scheme to deny minority children, (many of whom were the Plaintiff's students), chess scholarships.

36.    Plaintiff wrote private email letters titled to various management officials of the USCF, including but not limited to, defendants USCF presidents Redman and McCrary. Plaintiff's email letters expressed his concern over the clear lack of fairness and justice implications that accompanied the facts that: the student population of the District of Columbia Public Schools is approximately 90+% Black African-American; and that since 1988, no Black African-American child has represented Washington, D.C. at the Denker Tournament of High School Champions. The Plaintiff informed elected D.C. Public School Administrators, D.C. Council members and D.C. Board of Education members about the conspiracy to deny minority children, especially Black African-American children, the right to represent Washington, D.C. in national competitions and win full scholarships to college.

37.    On or about May 3rd, 2001, Plaintiff Bennett had a telephone conversation with then USCF Scholastic Coordinator Defendant Thomas Brownscombe in which Plaintiff expressed his concerns about how racist it was for Black African-American children in D.C. to be wrongfully denied the opportunity to represent D.C. and win chess scholarships. Defendant Brownscombe proudly told the Plaintiff that Johnny Sadoff was the only D.C. high school student that had competed in Mehler's "qualifier". Defendant Brownscombe informed the Plaintiff that Mehler had already submitted the documentation that identified Johnny Sadoff as the D.C. representative to the Denker for



the fourth year in a row. Brownscombe also stated that the DCCL makes the determination, President Defendant Mikell also is the treasurer and registered agent of the USCCF. In 2001, the DCCL's official address was 1501 'M' Street NW, Washington, D.C., the same address as the USCCF.)

### DEFENDANTS MCCRARY REDMAN GOICHBERG'S EARLY AND CONTINUED RACIAL ANIMUS TOWARD PLAINTIFF

38.     Plaintiff wrote letters to Defendants Redman and McCrary detailing the racially discriminatory conditions he (Plaintiff) and other Black African-American adults and children were subjected to. On or about May 19, 2001, Defendant Redman responded to the Plaintiff's letter and said that, "I have asked the Scholastic Director of the U.S. Chess Federation to look into this most troubling accusation." Defendant McCrary responded to the Plaintiff's letter on or about May 19, 2001. McCrary said, "I do know David Mehler and he is not a racist." On several occasions at USCF events, the Plaintiff approached and spoke with Defendant Goichberg regarding racial bias and disparate treatment, which could not have been easily overlooked. Defendants McCrary, Redman and Goichberg's early animus toward plaintiff is displayed by their lack of response and or action to Plaintiff's letters and dialog from Plaintiff

### DEFENDANTS USCCF AND ATTORNEY MEHLER'S WHEEL CONSPIRACY TO DEFAME PLAINTIFF

38.     On December 22, 2004, Defendant Attorney Mehler testified under oath in a deposition that, in early June of 2001, he (Defendant Attorney Mehler) called a meeting at his place of business (Defendant United Stated Chess Center Foundation) to discuss Plaintiff Vaughn L. Bennett. In particular, he (Defendant Attorney Mehler) wanted to address what Plaintiff had been saying about Defendants USCF, USCCF, Mehler and how they could respond to it. Those attending the meeting of the minds that Defendant Attorney Mehler had called, were all Black African-Americans; Eugene Brown, Attorney Mehler's local business competitor; Eugene Brown's partner, former D.C. Firefighter

17



Mike Brown; the then Director of Community and Corporate Relations for the District of Columbia Public School (DCPS), Dr. Leonard Haynes; former Georgetown University professor, Dr. Arthur Hoyte; Alfred "Butch" Hurd and Defendants Ralph Mikell (DCCL President) and Greg Acholonu. (Defendant Mikell again is the treasurer and registered agent of the USCCF and Defendant Acholonu is an employee who works for Defendant's Attorney Mehler and the USCCF.) As a result of "spokes" coming together at this meeting, the conspiracy to retaliate against the Plaintiff was hatched. Ultimately the defendants struck back at Plaintiff, by creating and spreading a false defamatory story about the Plaintiff. The "hub" went about defaming the Plaintiff by calling him (the Plaintiff) a "vicious thug with a substantial history of dishonesty."

39.    Upon information and belief, in July of 2001, Defendant Attorney David Mehler told Defendants Mikell and Acholonu, to write letters containing the story that was created at the meeting. The defamatory letters that Defendants Mikell and Acholonu wrote in or about July 2001 for Defendant Attorney Mehler, accused the Plaintiff of a fictitious 1989 crime of criminal conspiracy for which he was never charged. In fact, by writing their letters, Defendants Acholonu and Mikell created the only "documentation", of this 1989 criminal conspiracy, that exists to this date. As a result of his treasurer/registered agent and employee writing a false, defamatory story about Plaintiff, Defendant Attorney Mehler has perpetuated this same story to support his defamatory claim that the Plaintiff is "vicious thug with a substantial history of dishonesty."

40.    On August 4, 2001 Defendants USCCF and Attorney Mehler retaliated against Plaintiff by writing and sending emails that included several false and defamatory statements about Plaintiff. This email was posted, (and still is posted) on the website, www.thechessdrum.net , accessible and visible to millions of viewers. Language stating, but not limited to, that the Plaintiff was "a vicious thug with a substantial history of dishonesty" was in the content of the emails that Defendant Mehler wrote.

18

**DEFENDANTS USCCF, DCCL, MEHLER AND MIKELL'S INTERFERENCE
WITH PLAINTIFF MAKING AND ENFORCING CONTRACTS BY
SPREADING THEIR DEFAMATION OF PLAINTIFF TO ELECTED DC
BOARD OF EDUCATION MEMBERS PEGGY COOPER CAFRITZ AND
WILLIAM LOCKRIDGE**

41.    On August 8, 2001, the District of Columbia Board of Education, at a
special board meeting, unanimously passed a resolution in order to correct the blatant
racist, discriminatory and unfair practice of having only White Caucasian children who
had not won the title and trophy of D.C. High School Chess Champion represent
Washington, D.C. at national chess tournaments where scholarships can be won. Whereas
Black African-American and Vietnamese children, who have won the title and trophy of
D.C. High School Chess Champion are intentionally being denied equal access to
representing Washington, D.C. at national chess tournaments where scholarships can be
won. (The resolution that the BOE passed stated that the BOE would be the only entity to
certify who would represent the District of Columbia at the Denker.)

42.    On or about October 2001 and May of 2002, DCCL president Defendant
Ralph Mikell and Defendant Attorney David Mehler, met with duly elected District of
Columbia Board of Education (BOE) President Peggy Cooper Cafritz and (then) Vice
President William Lockridge. Defendants Mikell and Attorney Mehler coerced Cafritz
and Lockridge that they (Mikell and Mehler) were mandated by the USCF to determine
who would represent Washington, D.C. at the Denker; that the BOE had no authority to
determine who would represent Washington, D.C.; and that the BOE could not enforce
the resolution that the BOE had passed. (The BOE never enforced their resolution.)

43.    Additionally, Defendant Attorney David Mehler admittedly made false
and defamatory comments regarding the Plaintiff while meeting with the BOE President
and Vice President. These defamatory comments were intentionally made in order to
influence the BOE not to give the Plaintiff contracts.

44.    On December 22, 2004, while under oath in deposition, Defendant

19

Attorney Mehler stated that he had asked the USCF for, (and had been granted)

special permission for Johnny Sadoff to represent Washington, D.C. at the Denker.

### DEFENDANTS USCCF, MEHLER AND ROSARIO'S SCHEME TO HAVE PLAINTIFF INCARCERATED

45.     Since the approximately November of 1997, Plaintiff Bennett regularly

patronized the USCCF, purchasing chess equipment and books. Plaintiff has also taken

children to the USCCF, paid for them to play in chess tournaments at the USCCF and

coached children's chess teams at several tournaments at the USCCF. Plaintiff was never

barred from the USCCF.

46.     In early March of 2002 Defendants Salvador Rosario (a worker belonging

to Attorney David Mehler and the USCCF), the USCCF and Attorney David Mehler

conspired to have Plaintiff Bennett arrested. Defendant Salvador Rosario, at the behest of

Defendant Atty. Mehler and on behalf of Defendant USCCF, wrote a coercive letter to

the Washington, D.C. Councilmember Kathy Patterson. Councilmember Patterson's

duties (then) involved presiding over the Washington, D.C. Council's Judiciary

Committee, which held the Metropolitan Police Department (MPD) accountable. In the

letter that Rosario wrote to Councilmember Patterson, he falsely informed her that

Plaintiff had a history of violence, had been previously barred from the USCCF and that

when the Plaintiff was at the USCCF, the MPD never showed up when called. This false

information influenced Councilmember Patterson to exercise her coercive power to

demand a report from the MPD Chief Charles H. Ramsey concerning Rosario's claims.

Also in early March of 2002 Defendant Attorney Mehler, while discussing racial

accusations at a meeting with the Principal and other staff members at Draper Elementary

School in Southeast, Washington, D.C., Defendant Attorney Mehler stated that he (Atty. Mehler) was going to have the Plaintiff arrested.

47.     Unaware of Defendant Attorney Mehler's plot to have him incarcerated, Plaintiff Bennett went to the USCCF on Saturday March 23, 2002 to return a chess set that he had purchased at the USCCF in December. Defendant Attorney Mehler instructed his workers to call the police. At approximately1:00pm, when two MPD officers arrived at the USCCF, another Mehler worker Mr. Goralsky or "Mr. G" (as he instructs the children to call him) pointed the Plaintiff out to the MPD officers. The MPD officers approached the Plaintiff and said, "Sir come with us." The Plaintiff asked, "Why?" The police officers said, "Sir step outside with us." Again the Plaintiff asked, "Why?" The MPD officers grabbed Plaintiff, threw him up against a wall, put handcuffs on him and took him outside. All of the actions by the MPD officers took place in front of over two hundred (200) children and adults. Defendant Attorney Mehler falsely informed the MPD officers that the Plaintiff had been previously barred from the USCCF, causing the officers to charge the Plaintiff with unlawful entry, arrest the Plaintiff and take him to jail. At approximately 2:00am on Sunday March 24, 2002, Plaintiff Bennett was assaulted in his jail cell. At approximately 3:30pm, Monday, March 25, 2002, the charges against the Plaintiff were dropped and the Plaintiff was released from jail. Defendant Attorney Mehler has publicly announced his conspiracy to have the Plaintiff incarcerated when he told the Washington City Paper writer, Dave McKenna, that, "This wasn't the first time we've called the police on him. It was just the first time the police showed up."

21

## DEFENDANTS USCCF AND ATTORNEY MEHLERS DEFAMATORY STATEMENTS MADE TO AND PUBLISHED IN THE WASHINGTON CITY NEWSPAPER

48.    In April of 2002 Defendants USCCF and Attorney David Mehler made

false and defamatory comments, regarding the Plaintiff, to Dave McKenna a writer for

the Washington City Paper. The defamatory comments were consequently published in

the April 5-11, 2002 edition of the Washington City Paper. The Washington City Paper

has a readership of over 100,000.The defamatory comments include, but are not limited

to:

Implying that the Plaintiff was racist; Defendant Attorney Mehler told

Dave McKenna that the Plaintiff has shown personal animosity toward him since they

first met. "He [Plaintiff] came in the room and told me [Mehler] that my color was all

wrong for the Chess House, and that the place was only for players whose tans were

much darker than mine," says Mehler. "He [Plaintiff] didn't even know me [Mehler]."

## DEFENDANTS USCCF AND ATTORNEY MEHLER'S INTERFERENCE WITH PLAINTIFF'S RIGHT TO MAKE AND ENFORCE A CONTRACT WITH GONZAGA HIGH SCHOOL

49. While at the D.C. Open chess tournament held on or about October 2002, in

Washington, D.C., at Gonzaga High School, (a prestigious high school in D.C.) the

Plaintiff met Ms. Tobin, Gonzaga's librarian. Plaintiff Bennett dialogued with Ms. Tobin

about chess. Bennett informed Ms. Tobin about the full scholarships to college that the

children could win playing chess, he also spoke about his work with "at-risk" children

across Washington, D.C. Plaintiff Bennett told Ms. Tobin that he taught chess to children

in the esteemed afterschool program, the "Higher Achievement Program" (HAP), (the

headquarters of HAP is on the Gonzaga High School campus). Ms. Tobin was excited

22

and invited the Plaintiff to come and teach chess to children at Gonzaga, offering to pay

Plaintiff. It is the Plaintiff's belief that, upon proper discovery, Ms. Tobin will disclose

that what Defendant Mehler and his workers (who were present when the Plaintiff spoke

to Ms. Tobin) said about the Plaintiff, influenced her to not return Plaintiff's calls and

renege on her invitation to the Plaintiff.

## DEFENDANTS USCF, USCCF AND ATTORNEY MEHLER'S INTERFERENCE WITH PLAINTIFF'S RIGHT TO MAKE AND ENFORCE A CONTRACT

50.    Also while at the D.C. Open chess tournament held on or about October

2002, in Washington, D.C., the Plaintiff approached, USCF certified National

Tournament Director (NTD), Mike Atkins to request his services. The Plaintiff asked

Atkins if he would (for a fee) direct a national chess tournament for the Plaintiff in

Washington, D.C., where one thousand (1000) children would participate. (In order to

give a USCF sanctioned tournament with 1000 participants, USCF rules stipulate that

you must have an NTD to direct the tournament.) Atkins informed the Plaintiff that he

would not officiate any of the Plaintiff's tournaments because of what Defendant

Attorney David Mehler had said about Plaintiff, thus Plaintiff was denied access to a

business opportunity in promoting and conducting large chess tournaments.

## DEFENDANT USCF'S RACIAL ANIMUS EVALUATIONS/CHESS-RATINGS AGAINST PLAINTIFF AND OTHER BLACK AFRICAN-AMERICAN ADULTS AND CHILDREN

51.    In a written commentary, Mike Goodall, Nothern California Delegate to

Defendant USCF said that, "The rating system is the most important asset held by the

USCF. Thus the integrity of the rating system is paramount." The Defendant USCF's

performance evaluation/chess-rating system is implemented by USCF certified and

23

sanctioned tournament directors and tournament organizers exercising undue authority to make biased and inconsistent determinations with little or no oversight. This system permits discrimination on the basis of race and color in evaluations/chess-ratings where scholarships, cash prizes, master titles, as well as further advancement within the sport of chess, are based on evaluations/chess-ratings pursuant to USCF written policies. The undue discretion of tournament directors and tournament organizers is the direct cause of Plaintiff and other Black African-American adults and children receiving lower ratings than Caucasians and fewer high ratings. There is no factor (such as age, experience, or similar factors) that could explain this race based or color based difference in evaluations/chess-ratings. Defendants USCF, USCCF and Attorney David Mehler "arranging" for Defendant Attorney Mehler's son and daughter to obtain two of the world's highest chess ratings, epitomizes the easy, blatant and overt manipulation of this performance evaluation/chess-rating system for personal bias and gain.

### DEFENDANTS USCF, MCA AND SACHIN K. SINGHAL'S BLATANT ACT OF RACISM AGAINST THE PLAINTIFF AND BLACK AFRICAN-AMERICAN CHILDREN

52.     Defendant Sachin K. Singhal is a USCF sanctioned chess "tournament director" (chess referee). A USCF tournament director governs all of the activities at chess tournaments, is bound to direct the tournaments in accordance with the USCF rules and submit a signed "Official Tournament Report Form For USCF National Rating" (see attachment). The tournament report form's, "Statement Of Compliance", (that must bear the signature of the Chief Tournament Director), says:

"I accept responsibility for the correctness of this tournament and certify that I

have performed the duties of Chief Tournament Director in accordance with

USCF rules and procedures."

53.    In November of 2003, Defendant Singhal was the USCF Chief

Tournament Director for the East Coast Amateur Chess Championships in Baltimore;

where the Plaintiff and his team, Olympic Chess House (OCH) Middle School team,

**clearly** (as per the official team standings) won first place; but was awarded the second

place trophy due to racism. The entire OCH team consisted of Black African-American

children and as usual they were the only Black African-American team at the tournament.

The Plaintiff didn't know that he and his team had been robbed of the first place trophy,

until the day after the tournament, when the Plaintiff had requested a printed copy of the

final team standings and saw that OCH had clearly won first place in the middle school

section. USCF tournament director, Defendant Sachin K. Singal, made the racist decision

to deny the Plaintiff and his team the first place trophy.

## DEFENDANT USCF DENIES PLAINTIFF AND THE HOWARD UNIVERSITY CHESS TEAM THE OPPORTUNITY TO WIN CHESS PRESTIGE AND BUSINESS BENEFITS

54.    Since 2001, Plaintiff has mentored/coached the Howard University chess

team (HU), which is currently the most successful Historical Black College or University

(HBCU) chess team in the United States. The H.U. chess teams, under Plaintiff's

tutelage, have not only won many prizes, but most importantly they have reached out to

the children from communities where many of them (the children) may never have a

chance to set foot on a college campus. Members of the HU chess teams have also gone

to the communities, where most people avoid going, in order to mentor and teach chess to

25

. the children.

55.    In December 2003 the HU chess team competed in the Pan American

Collegiate Chess Championships in Miami, Florida. (HU made history by being the first

HBCU chess team to ever attend the Pan American Collegiate Chess Championships, the

NCAA's of chess!) The HU team was intentionally cheated by the USCF. The USCF

used false chess ratings to keep HU out of placing in a higher category because of racial

discrimination.

## DEFENDANT MCA AND DEFENDANT HARRY COHEN'S CREATION OF POLICY INTENDED TO DENY PLAINTIFF AND BLACK AFRICAN-AMERICAN CHILDREN EQUAL RIGHTS, BENEFITS AND PRIVLEGES

56.    In approximately August of 2004, MCA, under the leadership of

Defendant Harry Cohen (he is also the DCCL treasurer), created new rules in order to

intentionally deny the Plaintiff and his teams (consisting mainly of Black African-

American children) the same rights, benefits and privileges that Caucasian coaches and

children enjoy: MCA changed its tournament rules so that "Club teams cannot win team

trophies". Plaintiff and his teams are the only "club" that has regularly been in local

scholastic competition and winning in recent years!

## DEFENDANTS UMBC, DR. HRABOWSKI, DR. SHERMAN AND ATTORNEY MEHLER'S INTERFERENCE WITH PLAINTIFF'S RIGHT IN MAKING AND ENFORCING CONTRACTS AND OTHER PROFESSIONAL OPPORTUNITIES

57.    Defendants have intentionally engaged in an ongoing pattern and practice

of racial discrimination that has denied the Plaintiff and other Black African-Americans

the chance to benefit from, or be part of business opportunities within the professional

chess world. In June of 2001, Plaintiff Bennett met with University of Maryland at

Baltimore County (UMBC) president, Defendant Dr. Freeman Hrabowski III, a Black

African-American. During Plaintiff's meeting with Dr. Hrabowski, the Plaintiff expressed his concerns about how Black African-American children had intentionally been denied access to chess scholarships because of racial discrimination. The Plaintiff also spoke to Defendant Hrabowski about the fact that UMBC had never given a chess scholarship to a Black African-American child, yet UMBC "very aggressively recruits [chess players] from all over the world." UMBC depends heavily upon receiving government funds to function as a state university.

58.     In 2004, Defendants UMBC, Dr. Freeman Hrabowski III and Alan Sherman engaged in racial discrimination by conspiring to treat the Plaintiff in a manner different from other USCF Delegates on account of Plaintiffs race, Black African-American. The aforementioned Defendants located in the State of Maryland acted with racial animus by creating a ceiling on the business opportunity of the Pan American Collegiate Chess Championships. Due to racism, Defendants chose intentionally not to notify and to completely bypass the Plaintiff regarding a business opportunity, in Plaintiff's state, with government monies. The Plaintiff is the current, duly elected, Washington, D.C. "state" delegate. Plaintiff was subjected to racial discrimination when Defendants UMBC, Dr. Freeman Hrabowski III, and Dr. Alan Sherman denied the Plaintiff equal access to an opportunity to engage in contracts. They chose to shut Plaintiff completely out of the process in order to partner with Defendant David Mehler and give the 2006 Pan-American Collegiate Chess Championships (Pan Ams), in Washington, D.C. The Pan Ams are the Defendant USCF's most prestigious collegiate chess tournament in North America. Defendants UMBC, Alan Sherman, and Dr. Freeman Hrabowski III intentionally violated written and unwritten USCF policies that

27

include the state delegate's knowledge of and participation, in major USCF events in the delegate's state that he/she represents. (The Plaintiff is currently the only Black African-American USCF state delegate in the world.) The Pan-American Collegiate Chess Championships brings the top collegiate chess teams from the United States, (and several other countries), together to compete to determine who is the best. Bypassing the Plaintiff denied him the business opportunity (a minority business opportunity) to participate in or be a part of the Pan American Collegiate Chess Championships even though the Plaintiff—the duly elected, (term 2004-2006), Washington, D.C. state delegate—has worked with thousands of youth in Washington, D.C.

## DEFENDANTS MCA SINGHAL AND COHEN'S RACIAL ANIMUS AND SCHEME TO DENY PLAINTIFF A BUSINESS OPPORTUNITY

### *Racism rears its ugly head in the land of chocolate!*

59.    HERSHEY PARK, PA at approximately 11:30am, Saturday November 13, 2004, the Plaintiff was sitting at a table with Dr. Beate Kanamine, MD, Ms.Willette Seaward and Ms.Emira Woods; in the Cocoa Beanery Coffee Shop; inside of the Hershey Lodge and Convention Center, (which was the host of the United States Chess Federation (USCF) sanctioned, 2004 National Youth Action Championships (NYAC).

60.    Dr. Kanamine, a Caucasian, is a medical surgeon who was also the elected 2004 Scholastic Coordinator of Chess for the State of Maryland under the Maryland Chess Association (MCA). In June 2004, Dr. Kanamine coordinated a trip to Russia for group of elementary school children from Annapolis, Maryland. The children were able to train with Russian instructors and play against Russian children.

61.    Dr. Kanamine (Dr. K) informed Ms. Seaward, Ms. Woods and the Plaintiff that when she had told the board members of MCA that she was going to

collaborate with Plaintiff Bennett to do some chess activities, she was told (by the MCA

board members) that if she did that, they (MCA board members) would have nothing to

do with her. She told Ms. Seaward, Ms. Woods and the Plaintiff that Sachin K. Singhal

had emailed her and told her via the telephone specifically that if she associated with the

Plaintiff that they (the MCA board) would ostracize her. Sachin K. Singhal, according to

Dr. K, on 11/13/04, is an appointed board member of MCA who used to give Dr. K's son

chess lessons, until he told her what would happen if she partnered with the Plaintiff.

Dr. K said that she had met and negotiated with the Anne Arundel County School Board

and that Anne Arundel County had agreed to spend $6,000 per school on chess in the

school year 2005/2006 and, as a result of her partnering with the Plaintiff, MCA has

ignored her progress. Dr. K also told Ms. Seaward, Ms. Woods and the Plaintiff that she

had been given space in twenty Anne Arundel schools in order to host qualifying

tournaments for the Maryland Sweet Sixteen Championship (MSSC). (The winner of the

MSSC is awarded a full scholarship to UMBC. In 1995 and 2005 a twelve (12) year old

won the MSSC. Never has a Black African-American won the MSSC.) Dr. K said that

when she tries to inform the public about scheduled tournaments and attempts to post the

information on the MCA website, they (MCA) remove it because of her association with

the Plaintiff. Dr. Kanamine said that Sachin K. Singhal told her that neither he nor

anyone else would be a tournament director for her tournaments if she associated with the

Plaintiff.

     62.     Defendant Attorney David Mehler was the president of MCA in 1995; he

is also a current member of the United States Chess Federation (USCF), the USCF's

Bylaws Committee and a Maryland alternate delegate to the USCF. David Mehler is

chess Grandmaster Dr. Alex Sherzer's "coach".

## DEFENDANTS USCF, VASSERSTEIN AND JUST'S BLATANT RACIAL ANIMUS AND WHEEL CONSPIRACY TO DEFAME PLAINTIFF

63.     On Sunday evening November 14, 2004, at approximately 4:40pm, while

at the National Youth Action Championships (NYAC) chess tournament, in Hershey, PA,

the constitutional and civil rights of several African-American children, youth and adults

(including plaintiff) were violated. In particular, while Plaintiff, was standing in the

spectator area with about one hundred (100) other parents and coaches (Plaintiff was the

only Black African-American among them) watching the children play chess during the

ninth and last round of a three-day tournament. Plaintiff was watching several games,

particularly the game of his (Plaintiff's) student (who was one of just ten Black African-

American children, out of approximately six hundred children, that played in the

NYAC!).

64.     USCF Tournament Director Defendant Gregory Vasserstein, (A Caucasian

who says that he coaches the Penn State University chess team.), approached Plaintiff

and said, "I'm going to have to ask you to leave the room." Plaintiff Bennett said, "For

what? I haven't done anything!" Vasserstein said, "I need you to leave the room." The

Plaintiff said "Why?" Vasserstein responded, "He [referring to the Plaintiff's student's

opponent] said you are annoying him by standing here so I would like you to leave." The

Plaintiff said, "I haven't done anything, I'm watching the games just like everyone else,

behind the [spectator] line." Then Vasserstein said, "So you're not gonna leave?" The

Plaintiff said, "No." Vasserstein walked away and the Plaintiff continued watching the

game.

30

65.    Less than two minutes later, the USCF chief tournament director of the NYAC, Tim Just (a large Caucasian man, approximately six (6) feet tall weighing about 300 pounds.), approached the Plaintiff and said; "I want you out of here right now." The Plaintiff told him "I have not done anything and I have a right to be here just like everyone else." Defendant Just blatantly expressing his racial animus said, "I telling you to leave nigger or I'm going to call the police." Plaintiff said, "I am not leaving." He (Just) walked away, near the entrance of the room, came back about thirty seconds later and told the Plaintiff that if he (the Plaintiff) didn't leave that he (Just) was going to forfeit the Plaintiff's student's game. Defendant Just turned around, walked to the table of the game that the Plaintiff's student was playing, and stood at the edge of the table, between the two boys, with his back to the Plaintiff, completely blocking his (the Plaintiff's) view of the game. (The Plaintiff's student later told him [Plaintiff] that Mr. Just was so close to their table that his "stomach hung over the chess clock" that they [Plaintiff's student and his opponent.] needed to push on each move.)

66.    The Plaintiff went outside the playing hall and asked some of the Caucasian and Black African-American parents that Plaintiff knew, to come inside to witness what was taking place. When the Plaintiff went back inside the room accompanied by the parents, the Plaintiff stood legally in the spectator area almost exactly where he had initially been when approached by Vasserstein and Just. After about fifteen (15) seconds Mr. Just suddenly wheeled around and yelled, "If you [Plaintiff] don't leave this room in ten seconds I'm going to forfeit this game! Ten! Nine! Eight! Seven! Six! Five! Four! Three! Two! One! This game is forfeited!" and while thrusting his right arm down and pointing his index finger, almost hitting the Plaintiff's student's

31

face, he yelled even louder, "You lose because he won't leave the room! [Turning and pointing at the Plaintiff who was still in the spectator area.] Just spun back around, putting his finger in the child's face again, and yelled, "Your whole team is forfeited!" The Plaintiff's student (who was still sitting in his chair) looked bewildered and scared. The Plaintiff, who felt that his student was in imminent mental and physical danger from Defendant Just, stepped across the spectator line in an attempt to protect the child. During the process of coming in between the Plaintiff's student and a visibly animated and still towering Defendant Just, the Plaintiff seized the bottom of Defendant Just's left elbow with the open palm of his (Plaintiff's) right hand, pushed his (Just's) elbow across the front of his chest and moved Defendant Just approximately three feet away from the Plaintiff's student.

     67.    Ms. Willette Seaward, (mother of the student whom Defendant Just had forfeited and intimidated); after ensuring her son's safety; stood in the middle of the tournament room and screamed, "The United States Chess Federation is a racist organization!"

     68.    The Hershey Park Police arrived took the Plaintiff into room, questioned the Plaintiff and issued a citation to the Plaintiff for pushing, later, the Hershey Park Police withdrew the citation. The Hershey Park Police issued defendant Tim Just a citation for his behavior and language.

     69.    Upon information and belief Defendant Tim Just conducted a "meeting of the minds" via (including but not limited to) emails in order to conspire, with Defendants USCF, Goicherg, Chess Central, Wayne Clark, BMR Design, Boyd M. Reed, Attorney David Mehler and several other Caucasian members of the USCF, to defame Plaintiff. On

November 16, 2004, Defendant Tim Just wrote a letter to USCF containing false and defamatory statements. Defendant Just falsely stated that the Plaintiff, "attacked", "assaulted" and "punched", him while at the National Youth Action chess tournament. Defendant Just further falsely postulates that the Plaintiff was bothering a child by; standing close to the child; "making faces" at the child; and exhibiting "constant loud behavior" all while the child was playing against the Plaintiff's student.

Defendant Just also wrote that, "This man should have his membership suspended." and that, "This man should be barred from all scholastic events." (According to USCF policy, if a member is suspended he/she loses all of his/her rights to facilitate or participate in any USCF activity. Also, the suspended member cannot be present at any USCF activity, which would directly affect Plaintiff's role as D.C. delegate to the USCF.) The aforementioned Defendants have conspired to defame the Plaintiff and have Plaintiff be suspended from the USCF due to racial discrimination and retaliation.

70.     Upon information and belief Defendant Tim Just instructed Defendants Chess Central, Wayne Clark, BMR Design, and Boyd M. Reed to write letters to support his false defamatory story about the Plaintiff.

71.     Ultimately, as an end result of the racist conspiracy to defame the Plaintiff in retaliation for his speaking out against racism, Defendants have voted to suspend the Plaintiff from the USCF.

## DEFENDANTS USCF, HERSHEY LODGE AND CONVENTION CENTER AND TIM JUST'S SPONTANEOUS CREATION OF POLICY

72.     Defendants USCF, Hershey Lodge and Convention Center and Tim Just spontaneously created a racist policy designed to violate the rights and privileges of the Plaintiff and other Black African-Americans. The policy entailed forfeiting at the "count of 10", chess games being played by only Black African-American children (who were also members of the USCF) because their Black African-American coach (Plaintiff) refused to leave a USCF tournament in the Hershey Lodge and Convention Center at which he was legally present. Plaintiff was singled out for this treatment because of his race, for being the only Black African-American USCF Delegate and in retaliation for him (Plaintiff) taking a stand and speaking out against racism in the USCF.

## DEFENDANT'S USCF AND ATTORNEY MEHLER COLLUDE TO COMMIT FRAUDULENT MISREPRESENTATIONS TO PLAINTIFF AND OTHER BLACK AFRICAN-AMERICAN ADULTS AND CHILDREN

73.     There is clear, convincing and unequivocal evidence that there was a false representation of material facts when, in deposition December 22, 2004, Defendant Mehler said that he had "arranged" for his daughter and son to play and win a US Chess Federation (USCF) rated tournament, "Sarah's Triangle"—against the #27th ranked chess player in the world, International Grandmaster Vladimir Epishin.

74.     There is clear, convincing and unequivocal evidence that Defendant USCF and Defendant Mehler knew or believed that the representation is false and that the matter is otherwise than as represented when Mehler admits, per deposition, that there was "no possibility" of his daughter and son defeating the worlds #27 ranked chess player, International Grandmaster Epishin. By Defendant Attorney David Mehler's deposition testimony, he also admits that they (Mehler's son and daughter) might not have played the games that they were given credit for.

34

75.    There is clear, convincing and unequivocal evidence that Defendant

Mehler and Defendant USCF intended to make the fraudulent representation and that the

USCF and Mehler intended that it be believed upon, for example:

a.    Mehler admittedly "arranging" for a USCF certified

tournament director, (Who conveniently happened to be his US Chess Center Foundation

(USCCF) accountant, Sam Bisbey, who also is "an accountant with the Department of

Justice"), to run the tournament and sign the "Official Tournament Report Form For

USCF National Rating" (see attachment). The tournament report form's, "Statement Of

Compliance", (that must bear the signature of the Chief Tournament Director), says:

"I accept responsibility for the correctness of this tournament and certify that I have

performed the duties of Chief Tournament Director in accordance with USCF rules and

procedures."

Tournament directors get paid a percentage of the entry fees for every rated

tournament.

76.    There is clear, convincing and unequivocal evidence that there was

justifiable reliance upon the misrepresentation in the USCF taking action to process the

fraudulent information. As per Defendant Attorney Mehler's deposition, the fraudulent

tournament report form was processed by the USCF with Mehler's full knowledge. The

US Chess Center Foundation website still falsely promotes Defendant Attorney Mehler's

daughter as MD's highest evaluated/chess-rated player. Defendant Attorney Mehler

also "arranged" for one of his "students", Grandmaster Dr. Alex Sherzer, who is a

medical doctor (MD), to lose a chess game to his daughter. (Defendant Attorney Mehler

actually attended Dr. Alex Sherzer's graduation from medical school in Budapest,

35

Hungary.) As a result of "defeating" Dr. Sherzer, Mehler's daughter achieved a USCF evaluation/chess-rating, of 3019, the highest evaluation/chess-rating ever achieved in the history of chess in the world.

77.    Dr. Sherzer, Mehler's "student", is one of the, less than, seven hundred (700) chess grandmasters (the NBA, NFL level of chess player) that exist in the whole world. In 2003, Dr. Sherzer (then thirty-two (32) years old), was charged with crossing state lines—into Mobile, Alabama—to have sex with a fifteen (15) year old girl. Dr. Sherzer, was arrested outside the Strickland Youth Center, a juvenile lockup where he hoped to rendezvous with the teen whom he had romanced over the Internet. Sherzer studied medicine overseas where he dined regularly with famed former chess champion Bobby Fischer, according to published accounts.  [Dr. Sherzer has since been employed by Defendant Attorney Mehler at Defendant the US Chess Center Foundation to "teach chess" to children!]

78.    There is clear, convincing and unequivocal evidence that there is damage to Plaintiff, other Black African-Americans and the general public from the justifiable reliance upon the misrepresentation, by the aforementioned taking action to believe the tournament reports and established fraudulent, historical chess records that still are promoted as true, to this day. Mehler's fraudulent behavior was designed give his son and daughter grandmaster level, scholarship winning evaluations/chess ratings. Defendant Attorney Mehler's children both received grandmaster level evaluation/chess-ratings of 2538 for games, that their father (Attorney Mehler) in deposition said, they may not have played; yet he (Attorney Mehler) had, per his deposition testimony, "arranged" the games. Defendant Attorney Mehler knows and

knew very well that by simply achieving an evaluation/chess-rating of 2300, a player

becomes eligible for a "merit" full scholarship to the University of Maryland at Baltimore

County (UMBC). When a child wins the UMBC chess scholarship, it is held for them

until they graduate high school. Defendants UMBC President, Dr. Freeman Hrabowski

III and Dr. Alan Sherman the coordinator of chess at UMBC can attest to this. (UMBC

has the #1 collegiate chess program in all of North America, sponsored by Coca-

Cola!) Defendant Attorney Mehler has used the USCF's rating system, to officiate over

six hundred (600) chess events. He still supports the use of this system today!

79.    Defendants USCF, USCCF and Attorney David Mehler, subjected the

Plaintiff, other Black African-Americans and the general public to a conspiracy intended

to defraud. Defendants furthered the conspiracy to defraud by knowingly positing false

information (to this day) on their websites regarding Defendant Attorney Mehler's

children defeating chess grandmasters. The benefit to the USCF was that Defendants

Attorney Mehler and the USCCF gave them (the USCF) approximately 5,000 square feet

of space at 1501 'M' Street NW, Washington D.C. for nine years, rent and tax free (in

clear violation of D.C. tax laws), to house a museum, the US Chess Hall of Fame, (a

financial asset of the USCF). Defendant Mehler benefited by being the operator and

curator of a national museum while fraudulently holding a twenty year, rent free

lease on 13, 000 square feet at 1501 'M' Street NW, Washington, D.C., a lease worth

millions of dollars.

## MORE OF DEFENDANT USCF's FRAUDULENT ACTIVITIES THAT PLAINTIFF SPOKE OUT ABOUT

80.     The USCF has allowed Caucasian children to participate in national chess tournaments blatantly and fraudulently using names of Black African-American children who were once involved with USCF Scholastic chess but have since graduated from high school. In 2003 at the National High School Chess Championships, a Caucasian child fraudulently registered under a Black African-American child's name. Plaintiff informed Tom Brownscombe (the then Scholastic Director of the USCF) of the situation, yet Brownscombe and the USCF took no action. The purpose of using the Black African-American child's name was because his rating was lower than the Caucasian child's and that the Caucasian child could illegally play in a lower section; thus helping his team and himself fraudulently secure the title and trophy as one of the top twenty-five (25) teams and individuals in the U.S.

## DEFENDANT'S COERCION OF STATE ACTIONS AGAINST PLAINTIFF

81.     Defendants Attorney Mehler, Mikell, USCCF and Rosario have coerced state action against the Plaintiff in several instances.

a.     In 2001 the elected D.C. Board of Education (BOE) passed a resolution to remedy blatant racist practices by defendants. Defendants coerced the BOE into believing that they had no authority to protect the children with the resolution that they had unanimously passed.

b.     Defendants, while meeting with BOE President and Vice-President, defamed Plaintiff in order coerce the BOE to deny Plaintiff contract opportunity with the D.C. Public Schools.

c.     Defendants conspired to have the Metropolitan Police Department arrest the Plaintiff by coercion. In early March of 2002 Defendant Attorney

38

Mehler told several people that he planned to have the Plaintiff arrested. While at a meeting with the principal, assistant principal and a teacher at Draper Elementary School (A D.C. Public School in Southeast, Washington, D.C.), Defendant Attorney Mehler told them that he was going to have the Plaintiff arrested.

Also in early March of 2002, Defendants Attorney Mehler, Sal Rosario and the USCCF wrote a defamatory letter, about the Plaintiff, to D.C. Councilmember Kathy Patterson. At that time, Ms. Patterson presided over the D.C. Council's Judiciary Committee, which held the Metropolitan Police Department Police Chief Ramsey and his department accountable.

In the letter to Ms. Patterson defendants fraudulently and defamatorily postulated that the Plaintiff was someone with a previous history of violence that had been barred from the USCCF. Defendants letter also fictitiously informed Coucilmember Patterson that no MPD officers ever arrived when called to the USCCF. This false information coerced the Councilmember to demand a report from MPD Chief Ramsey. This improper influence perpetuated by Defendants, combined with Defendant Attorney Mehler falsely informing MPD officers that the Plaintiff had been barred from the facility coerced the MPD officers to arrest the Plaintiff, charging him with "unlawful entry".

82.    Defendants UMBC, Hrabowski and Sherman have coerced state action and racial discriminated against the Plaintiff by interfering with the Plaintiff's constitutional right to pursue contracts. Defendant UMBC relies on government funds to operate and therefore must allow for equal access to contracts. Defendants are so racially animated against the Plaintiff that they completely shut him out of the process, (blatantly

violating written and unwritten policies of the USCF) and partnered with Defendant Attorney David Mehler to hold or host the 2006 Pan Ams in Washington, D.C.

**PLAINTIFF'S ADDITIONAL CLAIMS AGAINST DEFENDANTS**

83.    Plaintiff complained to the defendant administrators of the USCF about racial discrimination within the USCF and as a result, has been verbally and emotionally harassed by Defendants, Caucasians.

84.    All actions complained of herein were intentional adverse, disparate treatment taken on the basis of Plaintiff's race and color. In each such action, Defendants did not treat similarly situated Caucasian men (who are USCF members) the same as the Plaintiff.

85.    Defendant's actions against Plaintiff were done with malice, evil motive, reckless and callous indifference to the federally protected rights of Plaintiff. In each instance, Defendant's acts were intentional and knowing and willful, and Defendants knew or should have known such acts were in violation of law.

86.    In each action complained of herein, Defendants and their agents took the action in the face of a perceived risk that the decision would violate Federal law.

87.    Defendants and their agents knew that taking race and color into account when making significant decisions in the ability of an individual accessing the professional and educational benefits of chess, including but not limited to ratings, major chess tournaments and master titles, violated federal law.

88.    In each action complained of herein, Defendants and their agents held authority and discretion to make the subject decisions adversely affecting Plaintiff.

89.    Defendants did not act in good faith to comply with Constitutional and Federal anti-discrimination statutes in numerous ways, including but not limited to the following:

40

    a.  Plaintiff and other Black African-American chess players fear

        retaliation for constitutional and discrimination complaints.

    b.  Conspiring to have Plaintiff arrested

    c.  Defendant USCF has policies; written and unwritten that deny Plaintiff

        and other Black African-Americans equal rights, benefits and

        privileges.

    d.  Defendants have deliberately limited its recruiting to methods known

        to reduce and exclude Plaintiff and other Black African-Americans.

90.    As a direct result of said constitutional violations and discrimination, Plaintiff has been denied the professional and educational benefits of the game of chess.

91.    As a direct result of said constitutional violations and discrimination, Plaintiff has suffered loss of chess title promotion, pay, bonuses, loss of professional status, and damage to his career.

92.    As a direct result of said constitutional violations and discrimination, Plaintiff suffered and continues to suffer mental anguish, emotional pain and suffering, feeling of paranoia, feelings of distrust, depression, sleep deprivation, nightmares when able to sleep, loss of consortium, sexual dysfunction, personality disorder, anxiety attacks, interference with life's daily activities, loss of enjoyment of life, humiliation, embarrassment, loss of his positive reputation he has worked his whole life to build, negative changes in his relationships with family and friends, inconvenience.

## CLAIMS FOR RELIEF

### COUNT I
### (DISCRIMINATION AGAINST PLAINTIFF VIOLATING 42 U.S.C. § 1981)

93.      Plaintiff repeats and re-alleges each and every allegation above as if set forth herein in full.

94.      Defendants have intentionally discriminated against the Plaintiff because of his race in violation of 42 U.S.C. § 1981 by a pattern and practice (1) denying the Plaintiff and other Black African-Americans the right to make and enforce contracts (2) denying the Plaintiff and other Black African-Americans access to the professional and educational benefits of chess while allowing similarly situated Caucasians an open door policy; (3) denying chess promotions to Plaintiff; (4) giving Plaintiff and other Black African-Americans lower evaluations/chess ratings than Caucasians on the basis of race and color.

### COUNT II
### (FIRST AMENDMENT – 42 U.S.C. § 1983)

95.      Plaintiff repeats and re-alleges each and every allegation above as if set forth herein in full.

96.      During the course of his membership with the USCF, Plaintiff made numerous statements of public concern, many of which received media coverage, relating to the USCF, it's agents and the aforementioned Defendants procedures and policies including but not limited: criticism of the racially discriminatory scheme to deny minority children scholarships to government supported universities; criticism of the racially discriminatory policies and practices of Defendants; criticism of ongoing illegal and fraudulent activities.

42

97.     The public importance of Plaintiff's statements outweighed any disruptive impact that his statements may have had.

98.     Defendant Attorney Mehler admits that the "meeting of the minds" he called in June of 2001, (where D.C. Public Schools administrator Dr. Leonard Haynes, a high ranking D.C. government employee, was present and participated) was intended to address Plaintiff's speech. The Defendants, who rely on government assistance to operate, further retaliated against Plaintiff by developing an elaborate scheme to have Plaintiff falsely arrested (in blatant violation of 42 U.S.C. § 1983). Through defamatory false letters and statements Defendants seized the role of state actor in order to coerce and manipulate elected officials and MPD officers into arresting Plaintiff.

99.     Additionally government supported Defendants UMBC, Hrabowski and Sherman in retaliating against Plaintiff, conspired to deny Plaintiff access to make and enforce contracts.

100.     By retaliating against Plaintiff for his exercise of his right to free expression, defendants violated Plaintiff's rights under the First Amendment.

## COUNT III
## (FOURTEENTH AMENDMENT—42 U.S.C. § 1982)

101.     Plaintiff repeats and re-alleges each and every allegation above as if set forth herein in full.

102.     Defendants have intentionally discriminated against the Plaintiff in violation of 42 U.S.C. § 1982 by treating Plaintiff differently because of his being a member of and being associated with members of protected class.

43

103.   Defendants denied Plaintiff the same right as is enjoyed by Caucasian citizens when they conspired to have Plaintiff falsely arrested. Plaintiff had a right to be a guest at Defendant USCCF (as USCCF is not a private entity).

**104.**   Defendants denied Plaintiff the same right as is enjoyed by Caucasian citizens when they told Plaintiff to leave the tournament in Hershey Park. Plaintiff had a right to be a guest at Defendant Hershey Lodge and Convention Center and a spectator at the tournament.

### COUNT IV
### (FOURTH AMENDMENT – 42 U.S.C. § 1983)

105.   Plaintiff repeats and re-alleges each and every allegation above as if set forth herein in full.

106.   Saturday March 23, 2002, Plaintiff was charged with unlawful entry, arrested and taken to jail. Plaintiff was not released from jail until Monday March 25, 2002, suffering a significant loss of his freedom.

107.   Defendants, who rely on government assistance to operate, became state actors when they conspired in violation of 42 U.S.C. § 1983 to coerce elected government officials and Metropolitan Police Department (MPD) Officers arrest Plaintiff. Defendants let their conspiracy be known to other District of Columbia government employees when Defendant Attorney David Mehler informed them that he intended on having Plaintiff arrested. Defendant Attorney Mehler also shared his conspiracy with the 100,000 readers of the Washington City Paper, when he said; "This wasn't the first time we've called the police on him. It was just the first time the police showed up." By blatantly lying to elected officials and MPD officers, Defendants used their influence to facilitate Plaintiff being seized for purposes of the Fourth Amendment.

108.    By subjecting Plaintiff to an unreasonable seizure Defendants USCCF,
Attorney Mehler and Rosario violated Plaintiff's rights under the Fourth Amendment.

109.    The actions taken by said defendants were in excess of any authority
granted by law and were without justification or excuse in law.

## COUNT V
## RETALIATION

110.    Plaintiff repeats and re-alleges each and every allegation above as if set
forth herein in full.

111.    Plaintiff engaged in numerous acts of protected activity confronting racial
discrimination by writing and speaking out about it. This discrimination is a continuing
violation.

112.    Defendants have intentionally retaliated against Plaintiff for his
engagement in this protected activity. As a result of this retaliation, Plaintiff suffered the
loss of his freedom, professional and educational benefits associated with his occupation,
including but not limited to , the denial of chess promotions and denial of business
opportunity (Pan Ams).

**113.**    Defendants have violated Title VII by intentionally retaliating against
Plaintiff because he engaged in protected activity

## COUNT VI
## DEFAMATION PER SE

114.    Plaintiff repeats and re-alleges each and every allegation above as if set
forth herein in full.

45

115.    Defendants have engaged in a conspiracy to defame Plaintiff, making malicious, completely false and defamatory statements, made with bad faith and intended to shed a false light on Plaintiff.

116.    Defendants published the statements without privilege to a third party.

117.    Defendants fault in publishing the statement amounted to at least negligence.

118.    Defendants statements are actionable as a matter of law irrespective of special harm or that its publication caused the Plaintiff special harm.

## COUNT VII
## FALSE IMPRISONMENT

119.    Plaintiff repeats and re-alleges each and every allegation above as if set forth herein in full.

120.    Defendants coerced public officials and MPD officers into unlawfully arresting Plaintiff without probable cause of Plaintiff's involvement in any criminal activity or misconduct and, indeed, without any crime having been committed.

121.    Plaintiff was arrested and charged with the crime of "unlawful entry" due to Defendants falsely influencing MPD officers. Plaintiff was imprisoned from March 23, 2002, to March 25, 2002, and subjected to a physical assault while falsely imprisoned.

## COUNT VIII
## THIRTEENTH AMENDMENT—42 U.S.C. § 1985

122.    Plaintiff repeats and re-alleges each and every allegation above as if set forth herein in full.

123.    Defendants subjected Plaintiff to racial and class-based discrimination in a conspiracy, in violation of 42 U.S.C. § 1985, designed to deny the Plaintiff and other

46

Black African-Americans the professional and educational benefits of chess.

124.     Defendants acted in furtherance of their conspiracy and injured the Plaintiff in violation of the Thirteenth Amendment that bans images and badges of slavery.

### COUNT IX
### THIRTEENTH AMENDMENT—42 U.S.C. § 1986

125.     Plaintiff repeats and re-alleges each and every allegation above as if set forth herein in full.

126.     Defendants, in violation of 42 U.S.C. § 1986, had full knowledge of the wrongs conspired to be done to Plaintiff and other Black African-Americans.

### COUNT X
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

127.     Defendants intentionally denied Plaintiff of rights, privileges, and immunities that he was entitled to exercise and enjoy as a citizen of the United States. Specifically, Defendants violated Plaintiff's right to speak freely on matters of great public concern without fear of retaliation; caused Plaintiff to be falsely imprisoned and assaulted; deprived plaintiff of the liberty interest in his good name and professional reputation without due process of law; deprived Plaintiff of the liberty interest to pursue a career in his chosen occupation without due process of law; and generally smeared him through the communications media and in the national chess community.

47

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Vaughn Lee Bennett respectfully requests that the Court enter judgment in his favor and award him the following relief:

A.  A declaratory judgment declaring that defendants deprived plaintiff of the privileges and immunities of citizenship which he was entitled to enjoy under Title VII of the Civil Rights Act of 1964 as amended, the First, Fourth, Thirteenth and Fourteenth Amendments to the Constitution and in violation of 42 U.S.C. §1981, 1982, 1983, 1985 and 1986.

B.  A permanent injunction enjoining and restraining defendants, their officers, directors, agents employees, affiliates, and subsidiaries, and those acting in privity or in concert with them, from again depriving plaintiff of the privileges and immunities of citizenship which he is entitled to enjoy under Title VI and VII of the Civil Rights Act of 1964 as amended, the First, Fourth, Sixth, Sixth, Thirteenth and Fourteenth Amendments to the Constitution under color of the law of the District of Columbia, in violation of 42 U.S.C. §1985.

D.  Compensatory damages from defendants, jointly and severally, in an amount to be determined at trial not less than $50 million.

E.  Punitive damages from defendants, jointly and severally, in an amount to be determined at trial not less than $100 million.

F.  The attorneys' fees and costs incurred by Plaintiff in the prosecution of this action.

G.  Such other relief as the Court may deem just and appropriate.

## JURY REQUEST

Plaintiff requests a trial by a jury of his peers of all issues so triable.

Respectfully submitted,

Vaughn Lee Bennett, *pro se*
2520 10th Street, NE, #27
Washington, D.C. 20018
(202) 351-2627