IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VAUGHN BENNETT, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | **Case No.: 1:05CV02225** |
| | * | Judge Richard L. Leon |
| | * | |
| UNITED STATES CHESS | * | |
| FEDERATION, et. al. | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT DAVID MEHLER'S MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED, OR IN
THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT**

Defendant David Mehler, (hereafter "Mehler") submits this Memorandum Of Points And Authorities in support of his Motion To Dismiss all claims against him pursuant to Fed. R. Civ. P. 12 (b)(6), or in the alternative Fed. R. Civ. P. 56 for failure to state a claim upon which relief may be granted, collateral estoppel and res judicata. While they need not be addressed here, the true facts demonstrate that the Plaintiff's allegations are fantastic, materially false, without any legal basis, and are vexatious in nature. Nothing in this Motion shall be deemed to concede to any facts or allegations made by the Plaintiff, all of which are expressly and vigorously denied.

**FACTS**

The Plaintiff is a self-proclaimed advocate of chess as a teaching tool for disadvantaged youth in the Washington, D.C. metropolitan area. He is the Executive Director of his own

1

corporation, Olympic Chess House.[1] Defendant Mehler is the Executive Director of the U.S. Chess Center Federation ("Chess Center") and has served in that capacity for many years. The Chess Center was co-founded by Mr. Mehler in 1992 as a non-profit organization to teach chess to children, especially those in the inner-city of the District of Columbia.[2]

**Procedural Background**

On August 6, 2002, this Plaintiff filed a four-count Complaint in the Superior Court of the District of Columbia ("D.C. Superior Complaint") against, among others, this Defendant. In that case, the Plaintiff alleged that the Defendants (1) violated the his First Amendment right to free speech, (2) his Fourth Amendment right against unreasonable seizures, (3) defamed the Plaintiff and (4) caused the Plaintiff to be falsely imprisoned. See Complaint filed in Superior Court for the District of Columbia (Civil Action No.: 02CA7007) (hereafter "D.C. Superior Complaint)(Attached as Exhibit 1). Over the course of nine months, the parties in that case responded to his allegations, engaged in discovery, filed Motions for Summary Judgment[3], and finally resolved the entire case, with prejudice, before Judge Fisher on May 2, 2005. See Order Dismissing with Prejudice (attached as Exhibit 2)[4]. Now, the Plaintiff is improperly and

---

[1] See www.olympicchessdc.org

[2] See www.chessctr.org

[3] Partial summary judgment was granted by the Court. See Order Granting in Part and Denying in Part Defendant's Motions for Summary Judgment dated November 4, 2003 (attached as Exhibit 3).

[4] Bennett has filed an unfounded and untimely motion to set aside the Order of Dismissal with Prejudice but this action does not vitiate the impact of this Order here. See Southern Pacific Communcations Co. V. American Telephone & Telegraph Co., 740 F.2d 1011, 1018 (D.C. Cir. 1984)(The trial court's Order is final for purposes of this Court's determination until and unless the Order is reversed. Collateral estoppel can be applied to a trial court's finding even while the final judgment is pending appeal).

2

frivolously attempting to re-litigate against this Defendant the same issues, and potentially other issues which should have been earlier raised in this lawsuit.

## STANDARD OF REVIEW

### I.     Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)[5]

Dismissal under Fed. R. Civ. P. 12(b)(6) requires the Court to take the allegations of the Complaint as true and liberally construe them in favor of the plaintiff. See Major v. Plumbers Local Union No. 5 of the United Ass'n of Journey men and Apprentice of the Plumbing and Pipe-Fitting Industry of the U.S. and Canada, 370 F. Supp. 2d. 118, 123 (D.D.C. 2005)(citation omitted). However, conclusory factual and legal allegations need not be considered by the court. Id. A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) will be granted only if it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claims which would entitle him to relief. Id. In this case, even with the allegations against this Defendant taken as true and liberally construed, Plaintiff's Complaint does not state a claim upon which relief may be granted and is likewise, barred as a matter of law by collateral estoppel and res judicata.

## ARGUMENT

---

[5] In deciding a Motion to Dismiss pursuant to Fed. R. Civ. P (12(b)(6), this Court can properly consider facts alleged in the Complaint, any documents attached to or incorporated in the Complaint, matters of which the Court may take judicial notice, and matters of public record. See Marshall County Health Care Auth. V. Shalala, 988 F.2d 1221, 1226 (D.C. Cir. 1993); Robinson v. District of Columbia, 2005 U.S. Dist. Lexis, 36129 (D.D.C. December 2, 2005). In this case, all the documents referenced are either part of the Complaint or part of the public record. Therefore, this Court can properly decide this Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

I.  **This Lawsuit is Barred as a Matter of Law for Failure to State a Claim upon Which Relief May be Granted.**

    A.    **Lack of Standing**

The standing inquiry focuses on whether the Plaintiff is the proper party to bring the suit. See Raines v. Byrd, 521 U.S. 811, 857 (1997). The Plaintiff must establish that the alleged injury suffered is particularized as to him. Id. at 858. The injury must affect the Plaintiff in a personal and individual way. Id. There is a general prohibition against a litigant raising another person's legal rights. See Allen v. Wright, 468 U.S. 737, 751 (1984). In a civil rights action, such as here, standing requires that the suit must be brought by the direct victims of the alleged discrimination because they are best situated to assert that the individual rights alleged were violated. See Clifton Terrace Ass'n v. United Tech. Corp., 289 F.2d 714, 721 (D.C. Cir 1991).

In this case, the Plaintiff alleges he was a coach, mentor, and advocate of chess for disadvantaged youth in the Washington, D.C. metropolitan area. See Complaint ¶ 32 -37. In this Complaint, the Plaintiff asserts claims of discrimination on behalf of African-American and Vietnamese children who allegedly face discrimination in chess events, tournaments, and competitions and in the policies and procedures associated with those events. He claims that these discriminatory actions prevented these children from advancing in their levels of competition and ultimately prevented them from receiving chess scholarships to colleges and universities. See Complaint at ¶¶ 33-38, 51-56, 72-81. However, the Plaintiff is prohibited as a matter of law from bringing claims for other litigants. See Allen, 468 U.S. at 751. In this case, he cannot establish that he has suffered any particularized injury. These discrimination claims are exclusively asserted for the benefit of the individual African-American and Vietnamese children who were allegedly harmed by the named Defendants. Even if he were a fiduciary, this

4

Plaintiff lacks the necessary standing, because the alleged victims are identifiable and are able to assert any viable claims. See Clifton Terrace Ass'n., 289 F.2d at 718. Therefore, as a matter of law, this Court must dismiss all claims of alleged discriminatory practices or actions against individual, un-named African-American and Vietnamese children for lack of standing. See Counts I, II, VIII, IX, and X of the Complaint.

**B.  Statute of Limitations**

Not only does the Plaintiff lack the standing to sue in this case, he has exceeded the statute of limitations for his claims creating yet another bar, as a matter of law, for this lawsuit. In this case, the applicable statute of limitations is governed by Section 12-301 of the D.C. Code. See Browning and Direct Outstanding Creations Corp. v. Clinton, 292 F.3d 235, 244 (D.C. Cir 2002)(D.C Code § 12-301 applies to cause of actions in the District of Columbia); Carney v. The American University, 151 F.3d 1090, 1096 (D.C. Cir. 1998)(D.C. Code § 12-301 applies to section 1981 claims); Brown v. District of Columbia, 251 F. Supp. 2d 152, 162 (D.D.C 2003)(D.C. Code § 12-301applies to section 1983 claims). Section 12-301 of the D.C. Code provides the statute of limitations for several prescribed causes of action and, for those actions not specifically prescribed, it provides a three-year statute of limitations. See D.C. Code § 12-301(8). Once the statute of limitations has expired, the Plaintiff is barred as a matter of law from raising such claims. Id.

Additionally, when a cause of action with no prescribed statute of limitations is "intertwined" with one having a prescribed limitations period, District of Columbia courts apply the prescribed period. See Browning and Direct Outstanding Creations Corp. v. Clinton, 292 F.3d 235, 244 (D.C. Cir 2002). In this case, the Plaintiff's claims of personal civil rights violations and potential interference with business opportunities directly relate to the allegation

5

of defamation. The Plaintiff avers that because this Defendant allegedly defamed the Plaintiff on several occasions, he was unable to acquire potential employment contracts and suffered civil rights violations.

Since the Plaintiff's claims purportedly all stem from and are intertwined with the claims of defamation, the Plaintiff is limited by the one-year statute of limitations. See D.C. Code Ann. §12-301(4)(2005). Alternatively, even if this Court finds that not all the allegations are intertwined with the alleged defamation, this Court should apply the three-year statute of limitations pursuant to Section 12-301(8) of the D.C. Code. All of the Plaintiff's allegations involving this Defendant occurred prior to October 2002. See Complaint ¶¶ 33-38, 51-56, 72-81. The Plaintiff did not file his Complaint until November 16, 2005, which is beyond the three-year statute of limitations. Thus, all the claims against this Defendant are beyond the statute of limitations either under D.C. Code §12-301(4) or D.C. Code §12-301(8). Thus, all of the claims are barred, as a matter of law.

    C.    **No Viable Constitutional Claims Against Defendants.**

In addition to lacking the necessary standing and exceeding the statute of limitations to bring these claims, the Plaintiff asserts no viable Constitutional claims against this Defendant. In Counts II, III, IV, VIII and IX, the Plaintiff purports to allege violations of his First, Fourth, Thirteenth and Fourteenth Amendment rights secured under the United States Constitution. None of these claims states any basis for relief, as a matter of law.

The Constitutional rights afforded under all of these Amendments are for protection against governmental action-- not by a private party-- unless such action furthers a state interest. The Constitutional right of free speech under the First Amendment is a protection against improper governmental action only and not a protection against private parties. See Columbia

6

Broadcasting System, Inc. v. Democratic National Committee, 412 U.S. 94, 114, 93 S.Ct. 2080, 36 L.Ed.2d 772, 790 (1973).

> The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.

Adderley v. Florida, 385 U.S. 39, 47, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966).

Under District of Columbia law, the owner/occupant of private property is expressly authorized to ask an unwanted visitor to leave the premises and, if that visitor refuses, the interloper can be arrested and prosecuted. D.C. Code § 22-3302 states, in pertinent part:

> [a]ny person who, without lawful authority, ... refuse[s] to quit the same on the demand of the lawful occupant, or of the person lawfully in charge thereof, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $100 or imprisonment in Jail for not more than 6 months, or both, in the discretion of the court.

Thus, probable cause exists as a matter of law for an arrest on private property where a defendant is asked to leave the premises, but fails to do so. See Safeway Stores, Inc. v. Kelly, 448 A.2d 856, 863 (D.C. 1982); Bauldock v. Davco Food, Inc., 622 A.2d 28 (D.C. 1993) (judgment notwithstanding the verdict was affirmed where restaurant patron's claims for false arrest and assault and battery were based upon actions of the police officer an admitted refusal to leave the premises after a patron was ordered to do so, in violation of D.C. Code § 22-3102).[6]

Given all of these legal principles, the Plaintiff has no First Amendment violation to

---

[6] The undisputed facts would demonstrate that there is absolutely no basis for any claims of false arrest or false imprisonment against this Defendant. Bennett admits that he refused to leave the Chess Center premises, after having been asked to do so. See Complaint ¶47. He also admits that officers of the D.C. Metropolitan Police Department arrested him and detained him. Thus, there was probable cause which supported the conduct of the Police. See, e.g. Dent v. May Department Stores, 459 A.2d 1042 (D.C. 1982). In any event, there is no fact to show that this Defendant arrested or detained Mr. Bennett. Therefore, no claims exist, as a matter of law.

complain about here. On the undisputed facts, there was no governmental action taken by this Defendant but rather the exercise by the lawful occupant of private property of the right to remove an unwanted, disruptive visitor. The Plaintiff's removal from the premises of the Chess Center in March of 2002 was entirely consistent with District of Columbia law and cannot support any claim for relief under the First Amendment.

Similarly, in order to pursue a viable claim for violation of a Fourth Amendment right, a claimant must assert the existence of governmental involvement. See United States v. Lima, 424 A.2d 113, 117 (D.C. 1980) ("... although a private individual may act unlawfully and violate the privacy of another, no constitutional violation has occurred absent government involvement in the intrusion.") Indeed, "[i]t is well established that the protection of the Fourth Amendment is applicable to intrusions of an individual's privacy interest by governmental officers and, not generally, to those made by private parties." Coolidge v. New Hampshire, 403 U.S. 443, 488, 91 S.Ct. 2022, 29 L.Ed.2d 564, *reh. denied*, 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971); Burdeau v. McDowell, 256 U.S. 465, 475, 41 S.Ct. 574, 65 L.Ed. 1048 (1921).

Here, officers of the Metropolitan Police Department became involved in the seizure of Bennett's person when they were called to the Chess Center in March of 2002 - private property - after Bennett refused to leave the premises. Any action taken by the Government's law enforcement representatives was entirely separate and independent of the acts of this Defendant, who had no authority to effect an arrest and against whom no such allegation is even made in this case.

The Fourteenth Amendment forbids the State to deny persons within its jurisdiction the equal protection of the laws. See Georgia v. McCollum, 505 U.S. 42, 49 (1992). The Fourteenth Amendment can be violated only by a State actor, not a private party. See Lugar v.

8

Edmondson Oil Co., Inc., 457 U.S. 922, 924 (1982). If the action is brought against a private party, the Court must determine whether the private party met the state action requirement. Id. At 929. The protections of due process are from governmental and not a private actors. Id. at 930.

In this case, the Plaintiff alleges that this Defendant as a private citizen and a member of private non-state chess organization, violate his Fourteenth Amendment by having him falsely arrested on private property. As discussed above, the alleged actions of this Defendant do not implicate any state violation by of due process under the law. There is no violation of the Fourteenth Amendment as a matter of law as alleged by the Plaintiff against this Defendant.

Although the Thirteenth Amendment forbids slavery or involuntary servitude, it is applied to protect all persons the same right in every state to make and enforce contracts. See U.S. Const. Amend. XIII, the Provisional Government of the Republic of New Afrika v. American Broadcasting Co., 609 F. Supp. 104, 109 (D.D.C. 1985). Again, the claimed actions alleged must be by a state actor, or if by a private party, then to advance some state interest. As stated above, the alleged actions of this Defendant as a private citizen and a member of private non-state chess organizations do not constitute any state action.

Accordingly, Plaintiff has no viable claims to pursue under the First, Fourth, Thirteenth or Fourteenth Amendments to the United States Constitution. Therefore, these claims must be dismissed, as a matter of law.

## II. Alternatively, this Lawsuit is Barred as a Matter of Law by Collateral Estoppel/Issue Preclusion and Res Judicata/Claim Preclusion

Having established that the Plaintiff's Complaint fails to state any claim upon which relief may be granted based upon lack of standing, failing to file his claims within the statute of

limitations, and having no viable Constitutional claims, this Complaint also fails as a matter of law based upon collateral estoppel and res judicata.

On August 5, 2002, the Plaintiff, filed a Complaint with the D.C. Superior alleging that this Defendant, among other Defendants, (1) violated his First Amendment rights, (2) violated his Fourth Amendment rights, (3) defamed his character, and (4) caused him to be falsely imprisoned. See Exhibit 1. After nine months of motions, discovery, and granting of partial summary judgment, that case was dismissed with prejudice because the parties resolved the case before Judge Fisher on May 2, 2005. See Exhibit 2.

In this Complaint, the Plaintiff alleges all of the same facts and issues previously raised and adjudicated in the D.C. Superior Complaint. In the instant Complaint, the Plaintiff alleges that this Defendant, among many of the same Defendants named in the D.C. Superior Complaint, (1) discriminated against the Plaintiff, (2) violated his First Amendment rights, (3) Fourteenth Amendment rights, (4) Fourth Amendment Rights, (5) retaliated against the Defendant for asserting his Constitutional rights, (6) defamed him, (7) caused him to be false imprisoned, and (8) violated his rights under the Thirteenth Amendment.

In this case both collateral estoppel, referred to as issue preclusion, and res judicata, referred to as claims preclusion, apply preventing the Plaintiff from re-litigating his claims. Collateral estoppel bars a litigant from re-litigating any issue "contested by the parties and submitted for judicial determination in a prior case, so long as the issue was actually and necessarily determined by a court of competent jurisdiction in that prior case and the preclusion in the second case would not work a basic unfairness to the party bound by the first determination." See The Government of Rwanda v. Johnson III, 409 F.3d 368, 374 (D.C. Cir. 2005). Issue preclusion does not require mutuality of the parties. Id. Where a defendant has

fully presented a complete defense on the merits to the plaintiff's claims causing the plaintiff to lose, the plaintiff should not be allowed to re-litigate. Id. Allowing re-litigation is a mis-allocation of the Court's resources. Id.

Res Judicata embodies the principle that a party who has had the opportunity "to litigate a claim before an appropriate tribunal usually ought not to have another chance to do so." See SBC Communication Inc. v. FCC and United States of America, 407 F.3d 1223, 1229 (D.C. Cir. 2005). The purpose of res judicata, as distinct from collateral estoppel, is that res judicata prevents the litigation of matters that **should have been raised** in the earlier suit. Id. at 1230; Apotex v. Food & Drug Admin, 393 F.3d 210, 217 (D.C. Cir. 2004)(res judicata precludes "parties from contesting matters that they have had a full and fair opportunity to litigate, protects their adversaries from the expense and vexation of attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.") (emphasis added). In order to determine whether res judicata applies the court should consider whether they share the same "nucleus of facts." See Apotex 393 F.3d at 217. This analysis would include whether the facts are "related in time, space, origin, or motivation, whether they form a convenient trial unit and whether their treatment as a unit conforms to the parties' expectations..." Id. In applying these two principles, this Court should not allow this Plaintiff to raise issues litigated and resolved or claims that should have been raised, in the prior suit.

The Plaintiff previously alleged the same "facts" to support his First Amendment, his Fourth Amendment, his defamation and his false imprisonment claims as he alleges in the instant Complaint. Having alleged these same "facts" and evidence to support his D.C. Superior Complaint, these claims should be dismissed with prejudice pursuant to collateral estoppel. The

11

Plaintiff litigated those claims with the same "facts" and evidence against this Defendant and settled the case was ultimately dismissed, with prejudice. See Exhibit 1 and 2. This Court should not allow what has been finally dismissed to be re-litigated. To do so, erodes the purpose of a final judgment. The D.C. Superior Complaint was litigated and resolved, with prejudice, therefore any and all claims raised in that case cannot be litigated again and must be dismissed with prejudice as a matter of law. See The Government of Rwanda v. Johnson III, 409 F.3d 368, 374 (D.C. Cir. 2005). Moreover, a Rule 41 dismissal in the Superior Court operates as "...adjudication upon the merits." See Sup. Ct. Civ. R. 41.

In this present Complaint, the Plaintiff appears to claim "new" counts not previously raised. However, an evaluation of the claims and the facts and evidence used to support these "new" counts[7] shows that these are part of the same nucleus of facts as argued in the D.C. Superior Complaint simply inexcusably not raised. Furthermore, none of the facts and evidence stated to support these "new" counts against this Defendant are truly new. The Plaintiff was aware of these "facts" and they all could and should have been raised in the D.C. Superior Complaint because they are related in time, space, origin, or motivation. See Apotex v. Food & Drug Admin, 393 F.3d 210, 217 (D.C. Cir. 2004).

Count I of this Complaint for discrimination is allegedly supported by four patterns and practices. First, the Plaintiff alleges that he was discriminated against when he was allegedly prevented from making and enforcing business contracts. See Complaint ¶ 94. The Plaintiff raised, litigated and resolved this issue in the D.C. Superior Complaint. See Exhibit 1 ¶ 24,

---

[7] The Plaintiff has a "new" count for discrimination, violation of his Fourteenth Amendment, violation of his Thirteenth Amendment, retaliation, and intentional infliction of emotional distress.

Exhibit 2. Second, the Plaintiff alleges that the Defendants prevented him and others from the educational and professional benefits of chess. See Complaint ¶ 94. The Plaintiff raised, litigated and resolved this issue in the D.C. Superior Complaint. See Exhibit 1 ¶ 13a, Exhibit 2. Third, the Plaintiff alleges that the Defendants' actions prevented him from receiving chess promotions. See Complaint ¶94. The Plaintiff raised, litigated and resolved this issue in the D.C. Superior Complaint. See Exhibit 1 ¶ 24, Exhibit 2. Lastly, the Plaintiff alleges that other African-Americans received lower evaluations/chess ratings. See Complaint ¶ 94. The Plaintiff raised, litigated and resolved this issue in the D.C. Superior Complaint. See Exhibit 1 ¶ 13, Exhibit 2.

Count V of the Plaintiff's Complaint alleges that the Defendants retaliated against him for engaging in protected activity used to prevent the Defendants from continued allegedly discriminatory actions. He states that this retaliation caused him to suffer a loss of his freedom, professional and educational benefits, the denial of chess promotions and denial of business opportunities. See Complaint ¶ 112. The Plaintiff raised, litigated and resolved this issue in the D.C. Superior Complaint. See Exhibit 1 ¶¶ 13, 17, 24, 37, 44, and 45; Exhibit 2.

Count X of the Plaintiff's complaint alleges that the Defendants intentionally inflicted emotional distress on the Plaintiff by their actions. The Plaintiff suffered fear of retaliation, false imprisonment and assault, damage to his good name and reputation. See Complaint ¶ 127. The Plaintiff raised, litigated and resolved this issue in the D.C. Superior Complaint. See Exhibit 1 ¶ 13, 17, 23, 27, 24, 37, 44, and 45; Exhibit 2.

Moreover, these "new" counts also fall within the defenses of lack of standing and statute of limitations. Consequently, not only do they fail to state a claim upon which relief may be granted, but they are also barred as a matter of law pursuant to collateral estoppel and res

judicata.

## CONCLUSION

None of the Plaintiff's claims against this Defendant state any claim upon which relief may be granted and are barred pursuant to the doctrines of collateral estoppel and/or res judicata. For all of the foregoing reasons, Defendant respectfully requests that his Motion be granted, in its entirety, and that all of the Plaintiff's claims be dismissed, with prejudice, pursuant to Fed. R. Civ. P. 12 (b)(6), (or in the alternative Fed. R. Civ. P. 56.). Additionally, the Plaintiff has filed this lawsuit recklessly and in bad faith. Not only are these claims clearly barred by the statute of limitations and for lack of standing, they are also vexatious in nature having been previously resolved in another court. Consequently, this Defendant seeks the appropriate relief, including attorneys' fees, cost and expenses, pursuant to 28 U.S.C. § 1927 against the Plaintiff for improperly litigating these claims. See Healey v. Labgold,, 231 F. Supp. 2d 64, 67 (D.D.C. 2002)(holding that the plaintiff violated 28 U.S.C. 1927 by filing a complaint containing counts previously ruled on by another court). Finally, the Defendant reserves the right to seek this Court's injunctive powers to prohibit Bennett from any further frivolous and vexatious pleadings.

Respectfully submitted,

JORDAN COYNE & SAVITS, L.L.P.

By _____
David P. Durbin  #928655
Anjuma K. Goswami  #485466
Jordan Coyne & Savits, LLP
1100 Connecticut Avenue, N.W.
Suite 600
Washington, D.C.  20036

14

Telephone: (202)296-4747
Fax: 202-496-2800

Counsel for Defendant, David Mehler

G:\CASES\AKG\Bennett- Mehler\Dismiss-P&A.wpd

15