IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VAUGHN L. BENNETT

    Plaintiff

v.                                             Case No: 1:05CV02225 (RJL)

UNITED STATES OF AMERICA
CHESS FEDERATION (USCF), et al,

    Defendants

### AFFIDAVIT OF VAUGHN L. BENNETT

I, Vaughn L. Bennett of 2520 10th Street, N.E., #27, Washington, D.C., state as follows:

**Affiant.**

1.    I am a Black African-American chess promoter, instructor, and coach. I am also a member of the USCF and currently the only Black African-American, duly elected, delegate (District of Columbia) to the USCF in the world. I am the claimant in the present action. I make this affidavit in support of my Opposition to Defendant McCrary's Motion to Dismiss and/or for Summary Judgment. The matters set out in this affidavit are within my personal knowledge and are true to the best of knowledge and belief.

**USCF**

2.    The USCF is the national governing body of chess in the United States. It is a nonprofit amateur and professional sport [chess] organization, which acts as this country's representative in the international chess federation, Federation International Des Echec (FIDE). It sets goals and directs policy in the sport [chess]. It also governs and has the power to sanction internal chess competitions held in the U.S. The USCF is an IRS 501 (c) (4), tax-exempt, social organization. In 1939, the USCF was incorporated in

1

the state of Illinois and headquartered in the state of New York. The USCF has affiliates in each of the fifty states. Each affiliate pays membership fees, tournament fees, etc., to the USCF. The primary place of business for the USCF remained in the state of New York for sixty-five (65) years until 2004 when it was moved to Crossville, Tennessee.

**How the racist USCF system affects Bennett.**

3.  I am affected by the USCF's racist scheme because my Black African-American and Vietnamese students, that would have won chess scholarships, were and are being denied access to chess tournaments where they would have won scholarships; while Caucasian students of Caucasian chess coaches were given access. This racially discriminatory policy has negatively affected my ability to do the business of teaching chess, as my students are subjected to a racist glass ceiling on their opportunities to benefit professionally and educationally. As a result of the glass ceiling my students have been and are being discouraged from playing chess (while Caucasian students are encouraged to play). Ultimately, as a result, my credibility as an instructor, coach, and chess promoter was and is negatively affected. I have suffered by not being able to continue teaching, coaching, and promoting chess, because my students, due to the racist system, have been discouraged from participating in chess activities.

4.  As I began to research the statistics on Black African-American chess players, I discovered that the chess rating/evaluation system was racially being used to keep myself and other Black African-Americans at the lowest levels of chess, while Caucasian chess players are given the opportunity to reach the highest levels. I also discovered that the USCF had racially utilized their chess rating/evaluation system to drop my chess rating/evaluation down over two hundred points.

2

**McCrary as a policy/decision maker of the USCF.**

5. John McCrary has been a policy/decision maker with the USCF for almost two (2) decades. He has held roles as the Chairman of the U.S. Chess Hall of Fame Committee, President of the U.S. Chess Trust, USCF Secretary, FIDE representative, Vice-President of Finance, liaison to the USCF Policy Board (aka Executive Board), and ultimately President of the USCF. Currently McCrary is the South Carolina delegate to the USCF, a member of the USCF by-laws committee, USCF Delegate at Large, etc. he also currently heads or is a member of many other USCF committees.

**Bennett's communication of race discrimination with McCrary.**

6. In May of 2001, I wrote to, the then, USCF Vice-President John McCrary expressing my concerns about a continuing system of racial discrimination that my students, others, and myself were suffering from. I chose to write to Mr. McCrary because I knew that he was a significant policy/decision maker for the USCF. McCrary wrote back stating that he knew David Mehler and that Mehler was not racist. (See attachment #1)

7. On or about September of 2001, I attempted to reach, then, USCF President McCrary via telephone. I called the USCF headquarters in New York and spoke with USCF Assistant Secretary Ms. Barbara Vandermark. I left a message with Ms. Vandermark for Mr. McCrary expressing my concerns about the system of racial discrimination that the USCF was engaging in and that David Mehler had been retaliating against me for speaking out about it. I also asked Ms. Vandermark if she would have Mr. McCrary call me. McCrary never called nor did McCrary ever take any action to address my complaints of racial discrimination.

3

**McCrary's relationship with Mehler and the US Chess Center Foundation.**

8.  I discovered that David Mehler, the US Chess Center Foundation, and John McCrary had a relationship with each other due to McCrary being the Chair of the US Chess Hall of Fame Museum Committee. Mehler gave the US Chess Hall of Fame Museum space to operate at 1501 'M' Street N.W. Washington, D.C., rent free, for nine years, (a "gift" worth at least $1,000,000.00). In addition, McCrary was present at the US Chess Center when Mehler announced that his daughter, Sarah, was Maryland's highest rated chess player. (See attachment #2)

**The USCF Executive Board's policy/decision making authority.**

9.  The Executive Board of the USCF has the authority to develop and implement policy for the USCF. An example of this authority in action was at the USCF Executive Board meeting of October 27-28, 2001, where USCF President McCrary presided. The then, USCF Vice President for Finance, Frank Camaratta made two motions, Executive Board **(EB) 02-17**, "The following operational guidelines for accounts receivable/payable shall be general policy...", and **EB 02-18**, "The Executive Board will continue the policy established by the previous Executive Board concerning reimbursement for travel." Both motions concerning policy/decision making were "**PASSED 7-0**"

10. One of the most significant examples of the policy/decision making authority of John McCrary and the Executive Board was in 2003 when, as USCF President, John McCrary and the Executive Board made an oral contract with the city of Crossville, Tennessee. McCrary and the Executive Board met with the Governor of Tennessee and other State and City officials and agreed to move the primary place of business of the USCF from New York to Crossville, Tennessee. The oral contract that McCrary

negotiated with the city of Crossville was undertaken without the knowledge of the USCF Board of Delegates.

**Conclusion**

11.   As a result of the USCF's continuing system of race discrimination, my constitutional and civil rights have been violated. Additionally, as a result, I have suffered and continue to suffer mental anguish, emotional pain and suffering, feeling of paranoia, feelings of distrust, depression, sleep deprivation, nightmares when able to sleep, loss of consortium, sexual dysfunction, personality disorder, anxiety attacks, interference with life's daily activities, loss of enjoyment of life, humiliation, embarrassment, loss of positive reputation that I have worked my whole life to build, negative changes in my relationships with family and friends, and inconvenience.

12.   I believe that, unless prevented by this Honorable Court, John McCrary and the other Defendants in this lawsuit will continue their ongoing campaign of racism and discrimination, causing me even more serious harm than has so far been the case. Additionally, I am concerned for the rights of the children, who are clearly very distressed by what has been going on. I therefore respectfully ask this Honorable Court to grant me the relief set out in my present application.

I solemnly affirm under the penalties of perjury and upon personal knowledge that the foregoing facts are true.

Vaughn L. Bennett, *pro se*
2520 10th Street, NE, #27
Washington, D.C. 20018
(202) 351-2627

5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing AFFIDAVIT was mailed, first class and postage prepaid this 31st day of January, 2006 to:

Richard E. Schimel
7201 Wisconsin Avenue, Suite 600
Bethesda, Maryland 20814

Vaughn Lee Bennett