**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

VAUGHN L. BENNETT,

        Plaintiff,

v.

UNITED STATES CHESS
FEDERATION, et al.,

        Defendants.

\*         CASE NO: 1:05CV02225

\*

\*

\*

\*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM IN SUPPORT OF
THE STATE UNIVERSITY DEFENDANTS'
MOTION TO DISMISS**

     Defendants the University of Maryland, Baltimore County ("UMBC"), Dr. Freeman

Hrabowski, III  and Professor Alan Sherman (the "University Defendants") submit this

Memorandum in support of their Motion to Dismiss.

**INTRODUCTION**

     Plaintiff Vaughn L. Bennett has filed this ten-count action against  five non-profit

organizations that are involved in sponsoring chess tournaments for students,[1] fourteen

individuals who are associated with the non-profit organizations and two private entities.[2]

In addition, Plaintiff has named as defendants the University of Maryland, Baltimore

---

[1]    The non-profit organizations are: the United States of America Chess
Federation ("USCF"), United States Chess Center Federation ("USCCF"), the District of
Columbia Chess League ("DCCL"), the Maryland Chess Association ("MCA"), and Chess
Central ("CC").  Complaint ¶¶ 2, 7, 8, 9 and 15.

[2]    The defendant private entities are BMR Design and the Hershey Lodge and
Convention Center.  The role of these entities in the dispute is unclear, except for the
allegation that during a 2004 "chess meet" at the Hershey Convention Center, an argument
involving the plaintiff, several defendants  and accusations of racism allegedly disrupted
the competition. *See* Complaint, ¶¶19.

County ("UMBC"), the University's President, Dr. Freeman Hrabowski, and a University faculty member, Professor Alan Sherman (collectively referred to as the "University Defendants").

The plaintiff's claims against the chess organizations and the fourteen individuals other than the University Defendants arise out of allegations of a conspiracy among the organizations to keep African-American and Vietnamese children from participating in chess competitions in the Washington D.C. area. Complaint, ¶¶34 - 37. The plaintiff alleges that a conspiracy began in 2001 and continued, despite plaintiff's protests, through 2004. *Id.* Plaintiff alleges that members of the chess organization defamed him (*id.*, ¶¶ 33, 39, 40, 43, 48, 63 - 71); schemed to have him incarcerated (*id.*, ¶¶ 45-47); interfered with his attempts to teach chess at a District of Columbia high school (*id.*, ¶49); usurped his opportunity to officiate at chess tournaments (*id.*, ¶ 50); manipulated chess competition rating systems and organization rules to discriminate against African-American competitors ( *id.*,¶51); falsified ratings that denied Howard University's chess team its rightful place in a 2003 competition (*id.*, ¶¶54-55); and disrupted a 2004 chess competition in Hershey, Pennsylvania and subsequently suspended plaintiff's membership in one of the chess organizations. (*id.*,¶¶ 59-62).

While these factual allegations regarding the purported conduct of the non-profit organizations and the defendants tied to those organizations are sweeping and consume almost 40 pages of the Complaint, the factual allegations regarding the University Defendants are discrete, and limited to a few sentences. Plaintiff alleges that he met with the defendant Hrabowski in June 2001 and expressed his concern about the number of African-American students who received chess championships from UMBC (*id.*, ¶¶57); and

further alleges that in 2004 the University Defendants acted with "racial animus" by depriving him of a "business opportunity" to participate in a collegiate chess championship known as the Pan-American Collegiate Chess Championship. *Id.,* ¶¶ 57 - 58.[3]

Thus, reading the allegations in a light most favorable to plaintiff, it appears that his complaints against the University Defendants are: 1) that UMBC does not give enough chess scholarships to African-American students; and 2) that the University Defendants have injured him financially by depriving him of a potential business opportunity relating to the collegiate chess championships.

As set forth in detail below, plaintiff (who is not a student competing for a chess scholarship at UMBC), does not have standing to assert the former claim; and the Eleventh Amendment and statutory immunity bar the latter claim against the University Defendants.  In addition, the  complaint fails to identify any facts that demonstrate connections between University Defendants Hrabowski and UMBC and the District of Columbia sufficient to warrant this Court's assertion of personal jurisdiction over them.

## ARGUMENT

### A.     The Applicable Legal Standard

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint; the

---

[3]     The sole references to the University Defendants in the  Complaint appear in ¶11 (identifying UMBC as a state university); ¶ 28 (identifying University Defendant Hrabowski as the University's President, "highest ranking official" and "policy maker"); ¶ 29 (identifying University defendant Sherman as a UMBC "employee" and the director of UMBC's chess program); ¶61 (noting parenthetically that the winner of the chess competition is awarded a scholarship to UMBC); and ¶¶ 82, 99 (alleging that the "government supported" University Defendants conspired to deprive plaintiff a business opportunity).

motion  does not resolve disputes regarding the underlying facts or the merits of the plaintiff's claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).    In deciding the motion, the court must accept all well-pleaded facts or allegations and draw all reasonable inferences in favor of the plaintiff. *Majack Products v. Motion Picture Ass'n*, 52 F.3d 373, 375 (D.C. Cir. 1995). However, the court need not accept the plaintiff's legal conclusions as true. *Alexis v. District of Columbia*, 77 F. Supp. 2d 35, 37 (D.D.C. 1999).  As set forth in detail below, applying this standard to plaintiff's claims, plaintiff has failed to state cognizable claims against the University Defendants.

**B.      To the Extent Plaintiff's Claim Against the University Defendants is that UMBC Does Not Give Chess Scholarships to African American Students, the Claim Must Be Dismissed Because Plaintiff Lacks Standing to Assert It.**

Plaintiff appears to base one of his claims against the University Defendants on the allegation that UMBC does not grant chess scholarships to African-American students. *Id.*,  ¶57. Even assuming, as the University Defendants must for purposes of this Motion, that the plaintiff's allegations are true, plaintiff  does not have standing to assert claims on behalf of students who are eligible for a  UMBC for chess scholarships.

To establish standing, plaintiff must point to an injury he has personally sustained, rather than to the  injuries of others. *Allen v. Wright*, 468 U.S. 737, 751 (1984); *Clifton Terrace Ass'n v. United Tech Corp.*, 289 F. 2d 714, 721 (D.C. Cir. 1991).  Plaintiff, who describes himself as a chess teacher, mentor, chess tournament director and head of the non-profit Olympic Chess House (*id.*, ¶6, 32, 49, 50, 58, 61) has not been injured by the manner in which UMBC awards its chess scholarships to students.  The  proper plaintiff to a purported claim challenging the racial

composition of UMBC's chess scholarship recipients would be a student who contends that he or she was denied such a scholarship.[4]  Plaintiff's claims based on UMBC's scholarship program must be dismissed for lack of standing.

> **C.**    **Plaintiff's Claim Against the University Defendants Based on Alleged Interference with a Potential Business Opportunity Relating to a Chess Tournament is Barred by the Eleventh Amendment.**

The second claim grounded in facts relating to the University Defendants is the claim  that the University Defendants interfered with the plaintiff's potential business opportunity relating to a collegiate chess championship.  *Id.*, ¶58.  On the face of the Complaint, the alleged business opportunity has past, and thus plaintiff apparently seeks money damages from the University Defendants.  To the extent plaintiff's claim is against UMBC, it is  barred by the Eleventh Amendment.  To the extent this claim is against President Hrabowski and  and Professor Sherman, it is barred by principles of statutory immunity.

The Eleventh Amendment bars claims against the states in federal court unless the state has consented to suit or Congress has lawfully abrogated the states' immunity. *Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996); Tennessee v. Lane*, 541 U.S. 509 (2004).  Eleventh Amendment immunity extends to entities that are arms of the state (*Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)); and the University of Maryland, Baltimore County is an arm of the State of Maryland for Eleventh Amendment purposes. *Middlebrooks v. University of Maryland, College Park,* 980 F. Supp. 824, 827 (D. Md. 1997);

---

[4]     The University Defendants deny  that such a claim would be either cognizable or meritorious.

*Palotai v. University of Maryland,* 959 F. Supp 714, 716 (D. Md. 1997).[5] Thus UMBC is entitled to immunity under the Eleventh Amendment and plaintiff's claim against the UMBC must be dismissed.

The individual University Defendants - University President Hrabowski and Professor Sherman - are immune by statute from plaintiff's tort claim unless they acted with malice or gross negligence or outside the scope of their employment. Md. Code.Ann., Cts. & Jud. Proc. §5-522(b) ("State personnel . . . are immune . . . from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence . . . ."). The Complaint does not include any facts that suggest that with respect to their actions regarding UMBC's chess program, defendants Hrabowski and Sherman acted with either malice or gross negligence, and thus they are entitled to statutory immunity, and the claims against them should be dismissed.

As noted is Sections I, J, L and M of this Memorandum, these principles of Eleventh Amendment and statutory immunity also apply to the common law tort claims plaintiff asserts in Counts VI, VII and X, for defamation, false imprisonment and intentional infliction of emotional distress respectively.

### D.    Count I (Section 1981) Fails to State a Cognizable Claim Against the University Defendants.

Plaintiff's claim against the University Defendants in Count I under 42 U.S.C.

---

[5]    The University of Maryland, Baltimore County, is, like the University of Maryland, College Park, a "constituent institution" of the University System of Maryland. Section 12-101(b)(5) of the Education Article of the Annotated Code of Maryland.

§1981 is based on the same factual allegations that underlie Counts VI, VII and X for defamation, false imprisonment and intentional infliction of emotional distress, respectively, and are barred by the Eleventh Amendment and statutory immunity principles set forth in Section C.

### E.    Count II (Section 1983)) Fails to State a Cognizable Claim Against the University Defendants.

In Count II plaintiff asserts a claim under 42 U.S.C. §1983 in which he alleges that "the defendants" violated his First Amendment rights by defaming him and falsely arresting him in retaliation for his criticisms of the United States Chess Foundation. *Id.*, ¶¶ 95-100. Plaintiff apparently seeks money damages arising from the defamatory statements. Plaintiff's Section 1983 claim against the University of Maryland must be dismissed because the University, an arm of the State of Maryland, "is not a person within the meaning of Section 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64, 66-69 (1989)(Section 1983 does not abrogate the states' sovereign immunity).

Although the plaintiff conclusorily alleges that he has sued the remaining University defendants - President Hrabowski and Professor Sherman - in their "official and individual" capacities (*id.*, ¶¶ 28, 29), the action he identifies for each defendant is, in fact, "official" action. Plaintiff refers to the conduct of defendant Hrabowski as the University's President, "the highest ranking official" at the University, and as a "policy maker." *Id.*, ¶28. Plaintiff refers to the actions of defendant Sherman as a University "employee," the "director of the [University's] chess program" and a University "policy-maker." *Id.*, ¶ 29. conduct by both defendants that he ascribes. Section 1983 claims such as this - claims for money damages against state actors acting in their official capacities - are not recognized

under Section 1983 because they are, in essence, claims against the state. *Will v. Michigan Dept of State Police, supra.*

To the extent plaintiff's Count II Section 1983 claims purport to include the University Defendants, they must be dismissed.

**F.     Count III (Section 1982 Fourteenth Amendment) is Grounded in Factual Allegations in Which the University Defendants Had No Involvement.**

Neither the facts nor the law that underlie Count III relate in any manner to the University Defendants. In Count III plaintiff alleges that he was treated differently than Caucasian citizens are treated when he was falsely arrested in 2002 , and when non-University defendants Vasserstein and Just allegedly asked him to leave the USCF-sanctioned National Youth Action Chess Championships that were held at the Hershey Park Convention Center in 2004. *Id.,*¶¶101-104; *see also, id.,*¶¶ 59 - 69**.**

There are no allegations that the any of the University Defendants were involved in any way in purported false arrest of the plaintiff in 2002; or that the University Defendants were present during 2004 championship at the Hershey Park Convention Center.

Moreover, plaintiff wrongly relies on 42 U.S.C. §1982 as the legal basis for Count III. Section 1982 protects the rights of all African-Americans in the context of property rights, and states "[A]ll citizens of the United States shall have the same right . . . as is enjoyed by white citizens . . . to inherit, purchase, lease, sell hold and convey real and personal property." There is no logical correlation between the factual allegations regarding plaintiff's alleged imprisonment and any rights he may assert under Section

1982.

The claim asserted in Count III should be dismissed for failure to state a cognizable claim.

**G.     Count IV (Section 1983  Fourth Amendment) Is Grounded in Factual Allegations In Which the University Defendants Had No Involvement.**

In Count IV plaintiff asserts Section 1983 claims against "the defendants" in which he alleges that the defendants  violated the Fourth Amendment when they coerced police officers to arrest him in March 2002 . *Id.*, ¶¶105- 109, *see also* ¶¶45-47, 119-121.   It appears that the sole defendants named in Count IV are the USCCF and defendants Rosario and Mehler.  *Id.*, ¶108 ("By subjecting Plaintiff to an unreasonable seizure Defendants USCCF, Attorney Mehler and Rosario violated Plaintiff's rights under the Fourth Amendment.").

There are no factual allegations in the Complaint that even suggest that the University Defendants had any role at all in the alleged false imprisonment of plaintiff describes (*id.*, ¶¶105 -109, 45 -47), and, in the absence of any such allegations, Count IV fails to state a cognizable claim against the University Defendants and should be dismissed.[6]

**H.____Count V (Title VII) Must Be Dismissed Because Plaintiff Has No Employment Relationship with the University Defendants.**

In Count V, Plaintiff alleges that the "defendants have violated Title VII by intentionally retaliating against Plaintiff because he engaged in protected activity." *Id.,*¶¶ 110-113.  Title VII of the Civil Rights Act, 42 U.S.C. 2000 *et seq.* applies to discrimination in employment relationships.  Plaintiff was never an employee of the University Defendants

---

[6]     In addition, the arguments regarding the Section 1983 claim asserted in Count II apply equally to the Section 1983 claim against the University Defendants in Count IV.

9

(or of any of the defendant entities) and thus he has no cognizable claim under Title VII.

I.    **Count VI (Defamation) Is Grounded in Factual Allegations in which the University Defendants Had No Involvement.**

In Count VI Plaintiff asserts a defamation claim against "the defendants." *Id.*, ¶¶114-118. The defamation claim arises out of allegations that an article published in the Washington City Paper in April 2002 defamed plaintiffs. Plaintiff identifies defendants Mehler and the USCCF as the defendants involved in the alleged defamatory statements. *Id.*, ¶48. There is no factual allegation in the Complaint that the University Defendants were involved in any aspect of the purported defamation. Accordingly, in the absence of any factual allegations tying the University Defendants to the allegedly defamatory statements, the allegations in Count VI must be dismissed as to the University Defendants.

J.    **Count VII (False Imprisonment) Is Grounded in Factual Allegations In Which the University Defendants Had No Involvement.**

Count VII is grounded in the allegation that the defendants coerced the police to wrongfully arrest and falsely imprison the plaintiff in March 2002. *Id.*, ¶¶119-121. The details regarding plaintiff's arrest in 2002 are set forth in paragraphs 45 through 47 of the Complaint, where plaintiff alleges that non-University defendants USCCF, Mehler and Rosario conspired to have him falsely arrested. On the face of the Complaint, the University Defendants did not participate in any manner in the arrest incident, and thus Count VII fails to state a cognizable claim against them.

K.    **Based on the Allegations in His Complaint, Plaintiff's Count VIII (42 U.S.C. § 1985) Claim is Based on an Alleged Conspiracy to Deprive African American Students of Chess and Academic Opportunities, and Plaintiff Lacks Standing to Assert Such Claims.**

In Count VII plaintiff alleges that the defendants are liable under 42 U. S. C. §1985

because they have conspired "to deny the Plaintiff and other Black African-Americans the professional and educational benefits of chess." *Id.*, ¶124. Section 1985(3) provides a remedy for conspiracies to violate the civil rights of minorities.    To state a claim under Section 1985, plaintiff must allege that he was the victim of a conspiracy grounded in invidiously discriminatory animus.  *See United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 828-29 (1983). In this case, the plaintiff's allegations appear to be that the defendants conspired to violate the civil rights of African American students who wanted to participate in various chess competitions.  As explained in Section A, plaintiff, a teacher and mentor and chess advisor, does not have standing to assert the rights of chess-playing students as the grounds for his Section 1985 claim, and the claims should be dismissed

**L.    Count IX (42 U.S.C. § 1986) Fails to State a Cognizable Claim**.

"A colorable claim under Section 1985 is a prerequisite to stating an adequate claim" under 42 U.S.C. §1986, which imposes liability on individuals who have knowledge of a conspiracy to violate civil rights and fail to act. *Thomas v. News World Communications* 681 F. Supp. 55, 71 (D.D.C. 1988).  In the absence of a claim under Section 1985, plaintiff's Section 1986 claim fails.

**M.    The Allegations of Count X (Intentional Infliction of Emotional Distress) Against the University Defendants Are Barred by the    Eleventh Amendment and Statutory Immunity.**

In Count X plaintiff asserts a common law tort claim of intentional infliction of emotional distress against all of the defendants.    For the reasons set forth in Section C Plaintiff's Count X claim for money damages against the University Defendants is barred by the Eleventh Amendment and statutory immunity.

11

**N.    Plaintiff's Claims Against Defendant Hrabowski and Defendant UMBC Must Be Dismissed for Lack of Personal Jurisdiction.**

Defendant Hrabowski is not a resident of the District of Columbia, and plaintiff's complaint does not cite any facts suggesting or showing that Dr. Hrabowski has contacts with the District of Columbia, or has performed any actions in the District of Columbia sufficient to warrant this court's assertion of jurisdiction over him. UMBC is a Maryland university located in Baltimore County, and there are no allegations that it has any contacts with the District of Columbia. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); D.C. Code §13-423. Plaintiff's claims against University Defendants UMBC and Dr. Hrabowski should be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

**CONCLUSION**

For the reasons set forth in this Memorandum, the University Defendants respectfully requests that all claims asserted against them in the Complaint be dismissed.

Respectfully submitted,


J. JOSEPH CURRAN , JR.
Attorney General of Maryland

                /s/
_____
Elizabeth Marzo Borinsky
Assistant Attorney General
200 St. Paul Place, 17th Floor
Baltimore, MD 21202
(410) 576-7053
Attorneys for Defendant

13