IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VAUGHN L. BENNETT

    Plaintiff

v.                                          Case No: 5CV2225 (RJL)

UNITED STATES OF AMERICA
CHESS FEDERATION (USCF), et al,

    Defendants

### PLAINTIFF'S OPPOSITION TO DEFENDANT MEHLER'S MOTION TO DISMISS

Now comes the Plaintiff, Vaughn L. Bennett, pro se, and opposes the Defendant David Mehler's Motion to Dismiss, and as grounds therefore states as follows:

**Plaintiffs' Preliminary Statement**

Plaintiff has standing to bring his claims as he is directly impacted by retaliation for speaking out against the racial discrimination directed at he (Plaintiff), and his students.

On August 5th, 2002, Plaintiff, pro se, filed a Complaint with the D.C. Superior Court alleging that Defendant Mehler, among other Defendants, (1) violated his First Amendment rights, (2) violated his Fourth Amendment rights, (3) defamed his character, and (4) caused him to be falsely imprisoned.

On April 25, 2005, Attorney Donald Temple, (Plaintiff's counsel at the time) attempted to self-deal by unethically creating and negotiating a surreptitious clause of Plaintiff's settlement for his (Temple's) own benefit. Thereby denying the Plaintiff a "full and fair opportunity" to litigate the issue. Temple coerced Plaintiff into agreeing to settle

1

his lawsuit at a pre-trial conference on April 25, 2005, and the Honorable Judge Fisher dismissed the case with prejudice.

Approximately one hour after the April 25th, 2005, pre-trial conference had ended Plaintiff called Judge Fisher's chambers to inform him that he no longer wished to settle his lawsuit. That same afternoon, April 25, 2005, Plaintiff faxed a letter to Judge Fisher informing him that he (Plaintiff) no longer wished to settle the lawsuit. Ultimately on November 15, 2005, the Plaintiff filed a timely Motion for Relief, under D.C. Superior Court Rule 60(b), from the Court's Order dismissing the case with prejudice. (See attached Plaintiff's Motion for Relief from the Court's Order). Defendant Mehler never filed any Opposition to Defendant's Motion for Relief.

Defendant Mehler's Motion to Dismiss is based on the legal arguments of collateral estoppel and res judicata. Collateral estoppel, as the Defendants correctly state, precludes the relitigation of an issue, which has already been decided in a prior action. The Defendants attempted application of collateral estoppel to this case, however, is fatally flawed. Collateral estoppel, as the Supreme Court has held, cannot be applied absent a "full and fair opportunity" to litigate the issue in the earlier case. Plaintiff respectfully states that collateral estoppel and res judicata do not properly apply. "Because plaintiff's present motion for reconsideration is unopposed, . . ., this court will exercise its discretion and grant plaintiff's motion for reconsideration." Washington v. Thurgood Marshall Academy, No. 03-2570, 2005 WL 2978966, at *3 (D.D.C. Oct. 31, 2005).

Again, Defendant Mehler filed no Opposition to Plaintiff's well founded and timely filed, Motion for Relief from the Court's Order (See attached); thus, (in

2

accordance with Superior Court Civil Rule 12-I (e)), conceding Plaintiff's Motion for Relief. Respectfully, Defendant is disingenuous when he claims in footnote #4 that, "Bennett has filed an unfounded and untimely motion to set aside the Order of Dismissal with Prejudice. . .", as he never Opposed Plaintiff's Motion. In addition, Defendant Mehler did not want to settle the lawsuit; nor has the Defendant expressed, (in any form or fashion), that he would be prejudiced from the Court's granting of Plaintiff's Motion for Relief.

**Plaintiff has standing to bring his Claims for Discrimination**

Plaintiff has filed his complaint under 42 U.S.C. § 1981 and 42 U.S.C. § 1982 which says that "[a]ll citizens of the United States" are to be protected against discrimination. In *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 (1969), a white (Caucasian) plaintiff had standing under § 1982 to redress expulsion from corporation organized to operate a community park and playground facilities for the benefit of the area residents after being refused approval of an assignment of his lease because of the assignee's race, on whose behalf the plaintiff had advocated. The Courts have recognized the right of litigants to bring actions on behalf of third parties, provided three important criteria are satisfied: The litigant must have suffered an "injury in fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests. *Powers v. Ohio*, 499 U.S. 400, 410-411 (1991). Plaintiff has met these criteria. Plaintiff has suffered "injury in fact", (See Plaintiff's Affidavit #25, 26, 27, 28, 29, 42, 43, 44, 45, 46, 47, 48, 56, 57), giving him a "sufficiently concrete interest" in the outcome of the issue in dispute, and most

3

significantly, the children cannot protect themselves. (Also see *Macintosh v. Building Owners and Managers Association International*, 355 F.Supp.2d 223 (D.D.C. 2005), quoting, *Glymph v. District of Columbia*, 211 F.Supp.2d 152 (D.D.C. 2002).

Additionally, "Limiting standing under the District of Columbia Human rights Act (DCHRA) to only the direct targets of discrimination would limit the flexibility of the DCHRA as a tool to eliminate discrimination and hamstring efforts to effect the statute's broad purpose. That a plaintiff's alleged injury is predicated upon discrimination against a person other than him or herself presents a jury question as to whether an "unlawful discriminatory practice" occurred and whether the plaintiff was thereby "aggrieved"; *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A. 2d 724 (D.C. 2000).

Plaintiff has referenced the plight of the children (who cannot protect themselves) and others as evidence of the continuing system of racial discrimination that he (Plaintiff) was subjected to and suffered from. Plaintiff additionally has referenced the children, and others as evidence of how he is adversely affected by the racist USCF system. Plaintiff's allegations of third-party injury are legally sufficient to survive a motion to dismiss.

**Plaintiff's Claims are <u>not</u> Barred by the Statutes of Limitations Due to the Continuing Violation Theory**

Plaintiff's Complaint speaks to a discriminatory system where each discriminatory act pursuant to that system is a new act of discrimination -- a continuing violation -- where Defendant Attorney Mehler's racially discriminatory policies, practices, and patterns have continued into the statutory period. *Bazemore v. Friday*, 478 U.S. 385 (1986). "In this circuit, it has been held that plaintiff[s] may litigate claims under the continuing violation theory . . . if [they] can prove either a series of related acts,

4

one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the statutory period." *Haynie v. Veneman, 272 F. Supp. 2d. 10, 15 (D.D.C. 2003)* (quoting *Anderson v. Zubieta, 180 F.3d 329, 336 (D.C. Cir.1999))*. Also see *Torres v. Mineta, 2005 U.S. Dist. LEXIS 10151*. Plaintiff's Complaint clearly cites a continuing series of related racially discriminatory acts that are products of a discriminatory system. The named Defendant and his cohorts, from August 2001 to December 29, 2005 (See Plaintiff's Affidavit), perpetrated the blatant acts of racism. Plaintiff continues to suffer from the effects of Defendants maintaining a discriminatory system.

**Plaintiff's Claims of Retaliation, Defamation, and False Imprisonment**

Plaintiff's claims of retaliation, false imprisonment and defamation are timely in that Plaintiff, "in the exercise of due diligence", initially filed suit in D.C Superior Court, in 2002, in order to address them. The 2002 lawsuit was filed against the US Chess Center Foundation, David Mehler, et al. A Motion for Reconsideration is currently pending in the 2002 action. Plaintiff believes that, (due to his Motion for Reconsideration being <u>unopposed</u> by Defendant Attorney David Mehler), his Motion for Reconsideration will be granted. (Upon Plaintiff's claims being reinstated in DC Superior Court, he will move to have them dismissed without prejudice, in order to properly litigate his claims in this Court.)

Plaintiff's claims are timely because they are continuing violations. On December 29, 2005, Defendant Attorney Mehler continued to retaliate against the Plaintiff by defaming him. Defendant Attorney Mehler falsely informed MPD Officers Jones and Manley that the Plaintiff had "assaulted" certain individuals. (See Plaintiff's Affi. #54)

5

**Plaintiff's Claim of Intentional Infliction of Emotional Distress**

Plaintiff's claim for intentional infliction of emotional distress is <u>not</u> time-barred. His claim arises from (but is not limited to):

    a.    Being subjected to the Defendant Attorney Mehler's, (et al); extreme, outrageous and continuing system of race discrimination, coupled with the intentional ongoing denial of Plaintiff's human and civil rights; and knowing that the children that he teaches and coaches are intentionally being racially discriminated against, year after year; causes the Plaintiff severe emotion distress: as Plaintiff is in full view of the children's legacy being stolen.

    b.    Defendant Mehler's extreme and outrageous conduct of falsely labeling Plaintiff as a, "vicious thug with a substantial history of dishonesty", intentionally causes the Plaintiff severe emotional distress: as Plaintiff must constantly face individuals, who believe this defamatory statement. (See Plaintiff's Affidavit # 47)

    c.    Defendant Mehler's extreme and outrageous conduct of racial discrimination and retaliation continuously denying Plaintiff access to places of "public accommodation". (Such as the US Chess Center Foundation and the Wyndham Hotel.)

    d.    Defendant Mehler's extreme and outrageous conduct of chasing Plaintiff at an national chess tournament, having Wyndham Hotel Security threaten the Plaintiff, and finally having the Plaintiff removed by Metropolitan Police Department Officers in front of hundreds of children and adults; intentionally caused the Plaintiff severe emotional distress. Plaintiff had to

withstand the shame and stigma of slavery associated with being told to leave the chess tournament because of racism.

**Plaintiff's Section 1981 claims.**

Paragraph 34 of Plaintiff's Complaint provides several facts to support his claim of a "racist discriminatory scheme":

- "Since 1988, the Defendant's scheme has kept Black African-American and Vietnamese children, who had won the title of D.C. High School Champion, from representing the D.C. at the most prestigious scholastic tournament in the United States, the Arnold Denker Tournament of High School Champions (the Denker)."

- "The Defendants, especially Attorney Mehler, through an unfair and inequitable process, had ensured that only a Caucasian child, Johnny Sadoff, (also the son of USCCF board member and registered agent, Elizabeth Sadoff), represented D.C. at the Denker from, (then), 1998—2001."

Paragraph 35 of Plaintiff's Complaint provides more facts to support his claim of a "racist discriminatory scheme":

- "With knowledge of the fact that from, 1998-2001, the titled and trophy holding D.C. High School Champion had been either Black African-American or Vietnamese, Plaintiff became direly concerned about Black African-American and Vietnamese children being denied access to chess scholarships, especially since no Black African-American child had ever

7

> won a full chess scholarship, (though at least twenty three universities offer full or partial chess scholarships)."
>
> - "He also was troubled by the adverse impact of the blatant, racially motivated scheme to deny minority children, (many of whom were the Plaintiff's students), chess scholarships."

On numerous occasions, Plaintiff communicated his concerns of racism with various members of the USCF, including the above Defendant. Plaintiff states that Defendant had a responsibility and duty, as a policy/decision maker of the USCCF to cease and desist his blatant acts of race discrimination against the children. Defendant's failure to cease and desist has perpetuated the continuation of the system of racial discrimination that Plaintiff was subjected to.

In paragraph 50 of Plaintiff's Complaint, Plaintiff describes his attempt, (on or about October 2002), to request the USCF tournament directing services of Mike Atkins. Plaintiff approached Atkins while he was in the performance of his official USCF duties; running the D.C. Open, a USCF sanctioned, chess tournament. The Plaintiff made his request to Atkins in order to pursue a business opportunity in which he (Plaintiff) would host a USCF sanctioned tournament with one thousand (1000) children participating. Atkins, (while in performance of his USCF duties), immediately refused to officiate any of Plaintiff's tournaments, because of what Defendant Attorney Mehler had said about Plaintiff.

In paragraph 51 of Plaintiff's Complaint, Plaintiff clearly describes how the USCF performance evaluation system permits discrimination on the basis of race and color in evaluations/chess-ratings where scholarships, cash prizes, master titles, as well as

8

further advancement within the sport of chess, are based on evaluations/chess-ratings pursuant to USCF written policies. Plaintiff also describes in 51 how the undue discretion of tournament directors and tournament organizers is the direct cause of Plaintiff and other Black African-American adults and children receiving lower ratings than Caucasians, and fewer high ratings. When Plaintiff joined the USCF in the year 2000, his USCF performance evaluation was over two hundred points lower than when he was last a member of the USCF, with no explanation. Caucasian chess players are not subjected to the lowering of their performance evaluation, with no explanation. There is no factor (such as age, experience, or similar factors) that could explain this race based or color based difference in performance evaluations.

### Plaintiff's Constitutional Claims Under the First, Fourth, Thirteenth and Fourteenth Amendments to United States Constitution are Viable.

"Negro citizens, North and South, who saw in the Thirteenth Amendment a promise of freedom – freedom to 'go and come at pleasure' and to 'buy and sell when they please' – would be left with 'a mere paper guarantee' if Congress were powerless to assure that a dollar in the hands of a Negro will purchase the same thing as a dollar in the hands of a white man." *Jones v. Mayer Co.*, 392 U.S. 409.

Defendant USCF is a defacto actor of the US Government. (See Plaintiff's Affidavit, "The USCF and how the USCF is linked with the US government.") The USCCF is a defacto actor of the District of Columbia Government. (See Plaintiff's Affidavit, "David Mehler and the US Chess Center Foundation (USCCF) and how they are linked with the DC Government.") Therefore Plaintiff's Constitutional Claims are properly stated as Defendants have acted under color of state law.

Plaintiff has exercised his First Amendment rights to speak out about children being denied the personal property of chess scholarships. Plaintiff's Complaint thus properly alleges violations of 42 U.S.C. § 1981, 1982, 1983, 1985, 1986, and 2000; when he was falsely arrested on the premises of the USCCF; was told to leave the tournament in the Hershey Park Resort; and when the MPD Officers took him out of the Wyndham Hotel on December 29, 2005. (See Plaintiff's Affidavit # 54) Plaintiff was denied his property rights in his right to hold space at the USCCF, the Hershey Park Resort chess tournament, and the Wyndham Hotel. Hershey Park Resort, USCCF, and the Wyndham Hotel are places of public accommodation.

**Plaintiff was retaliated against for exercising his free speech rights on an issue of public concern.**

As a result of Plaintiff exercising his First Amendment rights of free speech, Defendants retaliated against him.

"It is well established that civil rights statutes should be read expansively in order to fulfill their purpose." *Griffin v. Breckenridge*, 403 U.S. 88

**There is direct evidence of discrimination.**

Based on the aforementioned statements, Plaintiff emphatically states that the record contains direct evidence of discrimination.

**Dismissal is premature.**

Dismissal is premature, as no discovery has yet been conducted. Plaintiff believes proper discovery would produce evidence that would not only conclusively, prove his claims; but that much broader race based conspiracy, against Plaintiff would be exposed.

10

**Defendant Mehler has not given a non-discriminatory reason for his actions.**

Defendant Mehler has not articulated a legitimate non-discriminatory reason for his actions. As such, Plaintiff's *prima facie* case of discrimination is unchallenged.

## CONCLUSION

Plaintiff has stated claims against Defendants upon which relief may be granted. Defendant never filed any Opposition to Plaintiff's Motion for Relief from the Court's Order, in accordance with Superior Court Civil Rule 12-I (e), thus Defendant Mehler conceded the Plaintiff's Motion for Relief and therefore has no standing to bring the claims of collateral estoppel/issue preclusion and res judicata/claim preclusion. For all of the foregoing reasons, Plaintiff respectfully requests that Defendant Mehler's Motion to Dismiss be denied.

Respectfully submitted,

*Vaughn Lee Bennett, pro se*
Vaughn L. Bennett, pro se
2520 10th Street, N.E., #27
Washington, D.C. 20018
Telephone: (202)351-2627

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT MOTION TO DISMISS** was mailed, first class and postage prepaid this 20th day of February, 2006 to:

David P. Durbin, Esquire
1100 Connecticut Avenue, N.W., Suite 600
Washington, D.C. 20036

*Vaughn Lee Bennett*
Vaughn Lee Bennett