10/11/05

Attachment

To: Attorney David P. Durbin

From: Vaughn L. Bennett

R.E.: Bennett v. US Chess Center, et al

No. of pgs: 18 (Including cover)

Dear Atty. Durbin,
   I am faxing you a copy of my motion for Relief from the Courts Order and my opposition to Temple's current motion. Thank you very much.

Sincerely,
Vaughn L. Bennett

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

VAUGHN L. BENNETT

    Plaintiff

v.                                                                    Civil Action No: 02-CA007002

U.S. CHESS CENTER FOUNDATION,           Judge Gerald I. Fisher
INC., et al.

    Defendants

## PLAINTIFF'S MOTION FOR RELIEF
## FROM THE COURT'S ORDER

**COMES NOW** the Plaintiff, Vaughn L. Bennett, pro se, and files this Motion for Relief from the Court's Order dismissing Plaintiff's case with prejudice. Plaintiff moves for relief from the Court's order under D.C. Superior Court Rule 60(b).

## PRELIMINARY STATEMENT

On April 25th, 2005 at the third Pretrial Conference, Attorney Donald Temple, improperly and inappropriately discussed with the Honorable Judge Gerald I. Fisher a particular term, unbeknownst to Plaintiff, of the settlement agreement in Plaintiff's litigation. Atty. Temple specifically asked if Judge Fisher would enforce a settlement clause that would allow his (Atty. Temple's) company "Concerned Black Men, Inc." to be given rent free space (worth millions of dollars) in which to operate at Defendant David Mehler's place of business. Defendant The U.S. Chess Center Foundation (Defendant Mehler's company) is located at 1501 'M' Street NW, Washington, D.C., which is where Atty. Temple told Judge Fisher that "Concerned Black Men, Inc." would run a tutoring program. The Plaintiff was surprised to hear Atty. Temple seek Judge

1

Fisher's support, as he (Atty. Temple) had never obtained the Plaintiff's approval for this addendum to Plaintiff's settlement agreement. **This self-dealing request was only for Attorney Temple's benefit as Plaintiff does not have, nor ever has had, any connection or affiliation with Concerned Black Men, Inc.** Plaintiff has since found out that Attorney Donald Temple was founder and president of "Concerned Black Men, Inc."

## HISTORY

On August 5, 2002 the pro se Plaintiff filed his initial complaint in the action to which this Motion pertains to. Plaintiff has survived defendant's initial motion for summary judgment and defendant's renewed motion for summary judgment. After the Honorable Judge Zoe Bush ruled against defendant's renewed motion for summary judgment, Plaintiff sought the services of Attorney Donald Temple in order to attempt to settle the case. Attorney Temple ultimately requested that limited discovery be conducted in order to take depositions of Defendant Attorney David Mehler and his accomplice, Ralph Mikell. The depositions were taken on December 22, 2004 and elicited quite a bit of critical evidence that would help to prove Plaintiff's claim.

On or about January 4th, 2005, the first of three Pretrial Conferences was held with the Honorable Judge Gerald I. Fisher. While at the Jan. 4th Pretrial Conference, Judge Fisher stated that he had been informed that there was an offer of settlement for $25,000 dollars made in the case. Plaintiff was astounded at the false notion of a $25,000 offer of settlement, as he had never discussed with nor authorized Atty. Temple to negotiate a settlement for that amount.

During February 2005 Atty. Temple and his partner Atty. John Robotham began pressuring the Plaintiff to accept a settlement offer from Atty. David Mehler of $12,500.

2

Ultimately, on February 22, 2005, Plaintiff succumbed to the pressure from Attys. Temple and Robotham and granted Temple Law authorization to negotiate a settlement for $12,500. A settlement agreement was written, Plaintiff disagreed with the language of it and refused to sign it. Atty. Temple, via his partner (Robotham) gave Plaintiff an ultimatum in that he either accept the settlement offer from Defendant Atty. Mehler, or he (Temple) would withdraw because he was "not going to court with this."

March 21, 2005, Atty. Temple wrote Plaintiff a letter stating his intention to withdraw from representing him. On March 23, 2005 Plaintiff wrote (see attached) back to Mr. Temple expressing his amazement and dismay upon being informed that he (Temple) was going to file a motion to withdraw his representation. Plaintiff also sent Judge Fisher a copy of the March 23rd letter to Atty. Temple. In the content of the March 23, 2005, letter to Temple, Plaintiff clearly stated that he was "surprised" when, in the Jan. 4th, 2005, Pretrial Conference, Judge Fisher announced that he understood that there had been an offer of a $25,000 settlement in this case. Both Judge Fisher and Atty. Temple received the letter on March 23rd, 2005, via fax. Additionally, on March 23rd, 2005, Temple filed a "Motion To Withdraw".

Attorney Temple neither responded to, nor answered Plaintiff's March 23, 2005, letter that detailed his attempted $25,000 settlement without Plaintiff's consent.

### FAILED TO RESPOND TO MOTIONS

While at the January 4th Pretrial Conference, in the presence of defendant Atty. David Mehler, his lawyers Attys. David P. Durbin and Michael P. Broderick, Attorney John Robotham (Temple's partner) and the Plaintiff; Judge Fisher asked Atty. Temple if he was going to oppose the Defendant's "Motion In Limine". Atty. Temple paused to

3

contemplate and replied yes, Judge Fisher then ordered him (Temple) to file the opposition to the defendants "Motion In Limine" by February 1st, 2005. Plaintiff was unaware of what a "Motion In Limine" was. Plaintiff was shocked to find that the "Motion In Limine", (filed in or about November of 2004), was a motion to eliminate all of the critical evidence that he (the Plaintiff) needed to prove his case.

*Attorney Temple never filed (nor did he request an extension of time to file) the opposition to defendant's "Motion In Limine" though Judge Fisher had ordered him to do so by February 1st, 2005!*

On or about March 30, 2005, a second Pretrial Conference was held. While at this second Pretrial Conference, Judge Fisher acknowledged that he had received the copy of Plaintiff's March 23rd letter to Atty. Temple and Plaintiff's March 29th, 2005 letter (see attached) to him (Judge Fisher).

In an attempt to pursue settlement, Judge Fisher persuaded Atty. Temple to continue to represent the Plaintiff, resulting in Temple making an oral motion that withdrew his written motion to withdraw representation. Judge Fisher announced that Temple had made an oral motion withdrawing his motion to withdraw representation and that he (Judge Fisher) was going to withhold ruling on the motion. Judge Fisher ended the second Pretrial Conference by informing us that he would give us more time to consider settling and ordered another Pretrial Conference to be held on April 25th, 2005.

On or about April 25th, 2005, at the third Pretrial Conference, Attorney Dave Durbin, informed the court that Defendant Attorney David Mehler was rejecting the settlement agreement and did not want to settle.

4

## ENGAGED IN A CONFLICT OF INTEREST

Also, while at the third Pretrial Conference, Atty. Temple had an improper and inappropriate conversation with Judge Fisher in which he (Temple) requested special treatment for his (Temple's) own personal interests. Attorney Temple specifically asked Judge Fisher to enforce a condition of Plaintiff's settlement agreement with Defendant Atty. Mehler that allowed for his (Temple's) company, "Concerned Black Men, Inc." to receive rent-free space (worth millions of dollars) to operate a tutoring program at the US Chess Center Foundation (Mehler's company). Plaintiff does not have, nor ever has had, any connection or affiliation with Concerned Black Men, Inc. Clearly this surreptitious settlement clause gave Attorney Temple a significant benefit from Plaintiff's lawsuit that would have eclipsed any settlement that Plaintiff would have received. Plaintiff never gave Attorney Donald Temple permission to negotiate this element of the proposed settlement. Plaintiff was unaware of any negotiations between Attorney Temple and Defendant Attorney Mehler to establish such a clause. Temple's unethical conduct was a clear attempt at self-dealing, and a blatant conflict of interest.

Initially while at the April 25th, Pretrial Conference Plaintiff had stated that he was willing to settle for the amount and the terms offered by Defendant Atty. Mehler. After hearing that he (Mehler) did not agree to the terms of the settlement and did not want to settle, Plaintiff changed his mind. Plaintiff told Atty. Temple that he was having second thoughts about his decision to settle and that he (the Plaintiff) no longer wanted to settle the lawsuit. Mr. Temple began telling Plaintiff that he was making a big mistake and asked Plaintiff why he wanted to continue with the case. Plaintiff told Atty. Temple that he wanted to continue the case because of what Mehler had done to the children and

5

that the children deserved an opportunity to try to win chess scholarships to college. Plaintiff said that it could help save their lives. Plaintiff told Temple that Mehler had to pay for having him (the Plaintiff) falsely arrested and defaming his name.

Temple told the Plaintiff that he was wrong. He said that the Plaintiff would be hurting the children if he didn't settle the lawsuit. Atty. Temple was so loud in his attempts to persuade Plaintiff that another Judge (unnamed) opened the door to the room that Attys.Temple, Robotham and Plaintiff were in, and stated that she could hear what was going on in the Plaintiff's proceeding in her courtroom, and that she didn't want to hear it. After the Judge closed the door, Temple stated that, "She is in way over her head."

Due to the Attorney Temple's dogged efforts at persuading his client to settle, Plaintiff ultimately informed Judge Fisher that he agreed to settle the lawsuit. Plaintiff witnessed a woman, identified as Cindy Burns, give an envelope to Atty. Temple. Plaintiff never saw the contents of the envelope that was passed as they, (the contents of the envelope), were never revealed and acknowledged. After Cindy Burns passed the envelope to Atty. Temple, Judge Fisher said, "I order this case dismissed with prejudice." It was approximately 11:30am.

At approximately 12:30pm, just one hour after the Pretrial Conference on April 25th, 2005, Plaintiff called Judge Fisher's chambers seeking to withdraw his acceptance of the settlement. Additionally, that afternoon, Plaintiff faxed a letter to Donald Temple and to Judge Fisher's chambers appealing the Judge's Order. The letter received by Judge Fisher's chambers (asking the Judge to allow the Plaintiff to continue) was stamped

6

"RECEIVED APR 25 2005 CHAMBERS OF JUDGE GERALD I. FISHER". (see attached)

As Plaintiff received no response to his initial request appealing Judge Fisher's Order, Plaintiff believed that his lawsuit was still ongoing. As a result of this belief, Plaintiff submitted written correspondence (see attachment) and made additional calls to Judge Fisher's chamber requesting further court dates and other assistance. Judge Fisher finally responded to Plaintiff in a letter dated May 28, 2005 (see attached). In his letter to the Plaintiff, Judge Fisher informed the Plaintiff "the case is at an end" and provided Plaintiff with a copy of his (Judge Fisher's) order. June 9, 2005, Plaintiff wrote back to Judge Fisher, (see attached), thanking him for responding and ultimately making a second request of the Judge to rescind his <u>Order of Dismissal With Prejudice</u>. Judge Fisher never responded to Plaintiff's June 9, 2005 letter. Additionally, Plaintiff has had no communication from Attorney Temple since the Pretrial Conference April 25th, 2005.

### FAILED TO PRESENT KEY EVIDENCE AND WITNESSES

Attorney Temple failed to utilize a crucial witness list that the Plaintiff had provided him for the Joint Pretrial Statement. Additionally, Attorney Temple failed to present key evidence in the form of an affidavit received from a critical witness. The affidavit clearly evidences the falsehood of Defendant Attorney David Mehler's and his co-conspirators testimony, and their blatant defamation of Plaintiff's name.

### FAILED TO COMMUNICATE

Attorney Temple did not keep the Plaintiff fully apprised of developments of his case:

1. He did not inform Plaintiff of the existence of a "Motion In Limine" filed by Defendants November 2004.

7

2. He did not inform Plaintiff of his failure to adhere to the Judge's order (regarding filing his opposition to the "Motion In Limine" by February 1st, 2005).

3. He did not inform Plaintiff of his unauthorized efforts to settle Plaintiff's lawsuit for $25,000. Also, he never addressed Plaintiff's concerns about the attempted, unauthorized settlement that were detailed in Plaintiff's March 23, 2005 letter.

4. He did not inform Plaintiff as to what "irreconcilable differences" existed between he and Plaintiff that would require him to withdraw his representation.

5. **He did not inform Plaintiff of his secret negotiations with Defendant Mehler in Plaintiff's settlement that facilitated him (Temple) receiving rent-free space at Mehler's place of business.**

6. He did not respond and take action when Plaintiff informed him, after the April 25th, 2005, Pretrial Conference, that he no longer wished to settle the case.

7. He has not communicated with Plaintiff at all, (orally or in writing), since the April 25th, 2005 Pretrial Conference, were he (Temple) received an envelope from Defendant Attorney David Mehler's insurance adjuster.

### FAILED TO SURRENDER FILES

On May 2, 2005 Plaintiff terminated Attorney Temple as his (the Plaintiff's) representative in his litigation. In the termination letter that Plaintiff wrote to him (Temple), Plaintiff requested that he be provided with his case file, inclusive of the "proofed" copies of Defendant Attorney David Mehler and Ralph Mikell's deposition transcripts. (Plaintiff paid Temple $1,500 to take Mehler's and Mikell's depositions.) To this day, Temple has not provided the Plaintiff with his case file or any reason as to why he has withheld my documents. Since December 2004, Plaintiff has made several

inquiries to Attorney Temple for the production of "proofed" copies of the depositions that were paid for, yet Temple never produced them.

Plaintiff has not received any message or had any other form of communication with Atty. Temple since the April 25th, 2005 Pretrial Conference. Temple falsely claims that, "On June 25, 2005 we spoke with Ms. Barbara Calloway on his home contact number. She assured us that she would convey the message to Mr. Bennett to collect his papers." Ms. Barbara Calloway has provided a sworn affidavit (See attached "Affidavit of Barbara Calloway") stating that on June 25, 2005, she was in Pittsburgh, PA and did not speak with Temple or any of his representatives.

If Plaintiff's case file was available and he (Temple) had "called numerous times" to no avail, due diligence would have allowed for him to at least write a letter informing Plaintiff that his documents were ready for pickup.

## **LEGAL ARGUMENT**

Attorney Temple's "outrageous" conduct (see Lynch v. Meridian Hill Studio Apts., Inc 491 A.2d 515) is in violation of his (Temple's) implicit duty to devote reasonable efforts in representing Plaintiff. His (Temple's) plan to illegally benefit from his client's lawsuit included making intentional mistakes of fact.

Temple's conduct was so egregious that in fairness, it should not be imputed to Plaintiff. Attorney Temple has demonstrated a complete lack of concern for his client's interests. Bond v. Wilson 398 A.2d 21 (1979)

Attorney Temple's blatant self-dealing shows it would be "manifestly unconscionable", to allow the judgment to stand. Pickford v. Talbott 225 U.S. 651, 657 (1912). In fact, Rule 60(b) reflects the "Courts own inherent and discretionary power . . .

to set aside a judgment whose enforcement would work inequity." Plaut v. Spendthrift Farm, Inc. 514 U.S. 234

Plaintiff Bennett has been assiduous in pursuing his claim by making two timely requests of Judge Fisher to rescind his order.

Granting relief from Judge Fisher's <u>Order of Dismissal With Prejudice</u> via Rule 60(b) would not prejudice Defendant Attorney Mehler because he (Mehler), did not want to settle the litigation. The Defendant's insurance company (a non-party to this litigation) decided to settle the lawsuit against the wishes of their client (Defendant Mehler) (see attachment).

"A lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal." Rule of Prof. Conduct 3.3(a)(1) "A lawyer's operating assumption must be to expect—and our opinions place decisive significance upon—candor from counsel in their dealings with each other and with the court consistent with the rules of professional conduct we have promulgated." Makins v. District of Columbia 861 A.2d 590 (D.C. 2004) Attorney Temple blatantly misrepresented and or misled Judge Fisher and Defendant's counsel by falsely positing that Plaintiff Bennett had agreed to allow for Temple's company, Concerned Black Men, Inc., to receive space, (via Plaintiff's settlement agreement) at the U.S. Chess Center Foundation to operate a tutoring program. "A judgment secured by misrepresentation by one counsel to another is an "extraordinary circumstance" warranting relief under Rule 60(b)." Miranda v. Contreras 754 A.2d 277 (2000)

"However, the purpose of 60(b) is to respect the finality of judgments by providing post-judgment relief only under exceptional circumstances." Clement v. Dept.

10

of Human Services 629 A.2d 1215 (1993) Atty. Temple surreptitiously negotiating and invoking a secret clause of his client's settlement agreement, in order to pursue free space at the U.S. Chess Center Foundation for his (Temple's) own benefit, is an exceptional circumstance necessitating relief under Rule 60(b).

By asking Judge Fisher to enforce a fraudulent stipulation of Plaintiff's settlement agreement, Attorney Temple attempted, as per Rule 60(b), "fraud upon the court." ". . . improper influence on the court . . . in which the integrity of the court and its ability to function impartially is directly impinged." Olivarius v. Stanley J. Sarnoff Endowment, 858 A.2d 457 (D.C. 2004) (quoting Partnership Placements, Inc. v. Landmark Ins. Co., 722 A.2d 837.)

Attorney Temple, Plaintiff Bennett's attorney of record, owed his client (Bennett) a standard of care, a duty, which he (Temple) breached by engaging in self-dealing. "In order to prove legal malpractice, a plaintiff must establish the applicable standard of care, a breach of that standard, and a casual relationship between the violation and the harm complained of." Mills v. Cooter, 647 A.2d 1118, 1123 (D.C. 1994).

## CONCLUSION

Defendants Attorney Mehler and the US Chess Center Foundation did not wish to settle the lawsuit. Plaintiff has never seen nor received a check or any other form of payment, as part of a settlement in his lawsuit against David Mehler. Plaintiff has never signed any settlement agreement or statement in this lawsuit.

Attorney Temple's blatant self-dealing and unethical conduct has clearly had a profoundly fatal effect on Plaintiff obtaining justice in his lawsuit against Defendants Attorney David Mehler and the US Chess Center Foundation. Plaintiff believes that

Attorney Temple's deliberate; negotiation of Plaintiff's lawsuit for $25,000 without Plaintiff's permission; not filing an opposition to the "Motion In Limine"; persuading of Plaintiff to accept a $12,500 settlement; failure to communicate with Plaintiff and failure to surrender the case file are all part of a pre-meditated, carefully executed, self-dealing scheme designed to give space (worth millions of dollars) to Atty. Temple's organization, "Concerned Black Men".

The Plaintiff, to this day, still suffers from the devastating effects of the defamation committed against him by David Mehler, his co-conspirators and the U.S. Chess Center Foundation.

For the foregoing reasons, the Plaintiff respectfully asks this Court to vacate its earlier Order of Dismissal With Prejudice.

Respectfully Submitted,

*Vaughn L. Bennett*, pro se
Vaughn L. Bennett, Pro Se
2520 10th Street, NE, #27
Washington, D.C. 20018
(202) 351-2627