IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VAUGHN BENNETT, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   **Case No.: 1:05CV02225** |
| | *   Judge Richard L. Leon |
| | * |
| UNITED STATES CHESS | * |
| FEDERATION, <u>et</u>. <u>al</u>., | * |
| | * |
| Defendant. | * |

**DEFENDANT DAVID MEHLER'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Defendant, David Mehler (hereafter "Mehler"), by and through his undersigned counsel, and pursuant to LcvR 7, hereby submits this Reply to Plaintiff's Opposition to Defendant Mehler's Motion to Dismiss. Even though there is no need to reach them, the true facts would demonstrate that the Plaintiff's allegations are fantastic, materially false, without any legal basis, and/or are vexatious in nature.[1] Nothing in this Reply shall be deemed to concede to any facts or

---

[1] Plaintiff attaches a 24 page affidavit to support his unsubstantiated and outlandish conclusions in an attempt to create a basis for his previously litigated and settled claims. The true facts would show, for example: 1. Mr. Mehler gave up his career as a practicing attorney in the District of Columbia to teach inner city children chess as a means of improving their academic and social skills. 2. The Denker Tournament, the national tournament, was created in 1984 to determine who would represented the District of Columbia. Any child in the District of Columbia has been able to enter the qualifyng tournament. The director has no influence on the outcome of any chess game. Throughout its existence, children of various races have won the tournament, including the time frame between 1998-2001. At the end of the qualifying tournament, the District of Columbia Chess League ("DCCL") is responsible for submitting the champion's name to the United States Chess Federation ("USCF") for entrance into the Denker Tournament. The director has no control of the USCF's decision. 3. Mr. Bennett is not a victim of racism. He provides absolutely no facts to support that his low national chess rating is a result of any racism. In actuality, his national rating is exclusively determined by how well Mr.

allegations made by the Plaintiff, all of which are expressly and vigorously denied.

In reply to Plaintiff's Opposition, this Defendant states as follows:

I. **THE CLAIMS ARE BARRED BY THE DOCTRINES OF COLLATERAL ESTOPPEL AND RES JUDICATA**

This lawsuit is barred as a matter of law pursuant to collateral estoppel and res judicata. The Plaintiff incorrectly states that he was not given a "full and fair opportunity" to litigate the same issues in the earlier case filed on August 6, 2002 before the Superior Court for the District of Columbia. See Plaintiff's Opposition at pg 2. To the contrary, after numerous motions, discovery, and partial summary judgment, the parties resolved all claims and issues raised in the D.C. Superior Complaint before Judge Fisher, and the claims were dismissed **with prejudice,** on May 2, 2005. See Order of Dismissal with Prejudice (attached as Exhibit 2 to Defendant's Motion to Dismiss)(emphasis added). Subsequently, the Plaintiff filed a Motion For Relief on November 15, 2005 to vacate the previous Order dismissing the case with prejudice. An Opposition to Plaintiff's Motion for Relief was filed on December 23, 2005. Plaintiff filed his Reply brief on January 13, 2006. Again, after reviewing all the motions and the arguments presented, the Superior Court of the District of Columbia denied Plaintiff's Motion for Relief on

---

Bennett plays his matches. 4. Mr. Bennett suggests that he intended on running a 1,000 participant tournament but could not do so because Mr. Mike Atkins, a tournament director, refused to provide his services. There are hundreds of tournament directors in the country. Mr. Bennett did not have to rely on Mr. Atkins. He could have asked any director to provide their services for Mr. Bennett's alleged tournament. 5. Donald Temple and Mr. Mehler have never had any communications about Mr. Temple using space at the Center for Concerned Black Men organization. 6. The Eastern Open is a chess tournament open to any member of the USCF who pays an entrance fee and who is not otherwise disqualified from participating. Mr. Bennett is not a member of the USCF. The USCF concluded that Mr. Bennett assaulted a tournament director in Pennsylvania and therefore his membership was suspended. This tournament is a private function, and since Mr. Bennett had no membership, he was barred from the event.

March 22, 2006. See Order dated March 24, 2006 (attached as Exhibit 4).

Therefore, the Plaintiff was provided the full extension of judicial discretion to fully and fairly litigate his claims of First and Fourth Amendment violations, defamation of character and false imprisonment. Any arguably unraised issues, facts, or evidence that could be used to establish "new" claims here should have been raised in the D.C. Superior Complaint. See Apolex v. Food & Drug Admin., 393 F.3d 210, 217 (D.C. Cir. 2004)(res judicata precludes "parties from contesting matters that they have had a full and fair opportunity to litigate, protects their adversaries from the expense and vexation of attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."). Having completely and fairly resolved the Plaintiff's claims, **with prejudice**, in the prior case, Bennett is barred as a matter of law from attempting to re-litigate those claims here.

## II.   PLAINTIFF LACKS STANDING TO BRING CLAIMS OF DISCRIMINATION

The Plaintiff is barred as a matter of law from bringing this lawsuit because he lacks the proper standing. He has filed this action on behalf of unidentified African-American and Vietnamese children whose civil rights were allegedly violated by the named Defendants. These children were purportedly deprived of the opportunity to participate in chess events, tournaments and specifically, the Arnold Denker Tournament of Champions. Not only is Plaintiff completely vague about whose rights have been violated, he has absolutely no legal basis to bring a claim on behalf of any specific child, even if he could name such a child. Such claims must be brought by the actual victims who are best situated to assert their individual rights. See Allen v. Wright, 468 U.S. 737, 751 (1984)(there is a general prohibition against a litigant raising another's legal

rights.).

The Plaintiff identifies a three part test to determine whether he can bring a claim on behalf of a third party. Not surprisingly, the Plaintiff does not even address what his relationship is to the unidentified children or identify any obstacles preventing these children from bringing their own claim(s). Even if there was a close relationship, there is absolutely no reason why these children, through their guardians, could not bring any viable claim(s). The Plaintiff does not present any facts to support the assertion that the unidentified children are unprotected and require his assistance. See Clifton Terrance Ass'n Ltd. v. United Tech. Corp., 929 F.2d 714, 721 (D.C. Cir. 1991)(Even if claiming a fiduciary relationship, prudential limitations on standing ordinarily require that an action under section 1981 and 1982 be brought by the direct victims of the alleged discrimination because they are best situated to assert the individual rights in question.) Therefore, lacking the proper standing to sue on their behalf, Plaintiff's discrimination claims are barred as a matter of law.

### III. THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT AND 42 U.S.C. 1982 ARE INAPPLICABLE

The Plaintiff attempts to include violations pursuant to the District of Columbia Human Rights Act (DCHRA) in his most recent filing. Any alleged violation of the DCHRA is not a part of this claim, and therefore cannot be a basis to support his standing for discrimination claims. Additionally, the Plaintiff cites Sullivan v. Little Hunting Park, Inc. 396 U.S. 229 (1969) to support his claims of a violation of 42 U.S.C. § 1982. Section 1982 and the holding in Sullivan protect against discrimination as related to real and personal property. There is absolutely no allegation that this defendant discriminated against Mr. Bennett's property interest(s). Having failed to state any allegations to support at claim pursuant to 42 U.S.C. §

1982, all claims pursuant to this Section should be dismissed.

### IV. PLAINTIFF'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

The Plaintiff's claims are also barred by the applicable statute of limitations. All of the Plaintiff's allegations involving this Defendant occurred prior to October 2002, over three years ago. There is not a single allegation against this Defendant in Plaintiff's Complaint filed on November 15, 2005 which states a discriminatory act after October 2002, and the majority of the allegations stem from alleged acts in 1998-2001. See Plaintiff's Complaint. In determining the statute of limitations this Court applies Section 12-301 of the D.C. Code which provides specific statute of limitations for prescribed actions and dictates that, for a non-prescribed action, the statute of limitations is three (3) years.

However, when a cause of action with no prescribed statute of limitation is "intertwined" with one having a specifically prescribed limitations period, District of Columbia applies the prescribed period as the statute of limitations for the entire cause of action. See Dolly Kyle Browning and Direct Outstanding Creations Corp. v. Clinton, 292 F.3d 235, 244 (D.C. Cir. 2002). Since the allegations of personal civil rights violations and potential interference with alleged business opportunities all stem from the claim that the Plaintiff was defamed, this court should apply the one year statute of limitation applicable to defamation pursuant to D.C. Code § 12-301(4). Alternatively, even if this Court finds that not all of the allegations are intertwined with the alleged defamation, this Court should apply the three-year statute of limitations pursuant to D.C. Code § 12-301(8). Having filed this lawsuit on November 16, 2005, over three (3) years after the alleged causes of action accrued, the Plaintiff's claims are all barred, as a matter of law.

In an attempt to circumvent the applicable statute of limitation barring his claims, the Plaintiff states that his claims are brought pursuant to the continuing violation theory. The Plaintiff's reliance on this theory is seriously misplaced. In order to properly assert a continuing violation argument, the Plaintiff must show that his initial knowledge of the discriminatory behavior occurred within the statutory period. See Pleasants v. Allbaugh, 185 F. Supp. 2d 69,75 (D.D.C 2002)("For the statute of limitations purposes, a continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitation period, typically because it is only its cumulative impact (as in the case of a hostile work environment) that reveals its illegality.").

In addition to this, the acts must be substantially related. See Pleasant 185 F.Supp at 74. To determine whether such acts are substantially related the Court uses a three prong inquiry: 1. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? 2. With regard to the frequency of the acts, are the alleged acts recurring or more in the nature of an isolated decision? And, 3. Do the acts possess a degree of finality that would alert a person of a need to assert his or her rights? Id.

Mr. Bennett's Complaint and its alleged claims of discrimination demonstrate that the continuing violation theory does not apply. By his own admission in the Complaint, the Plaintiff states that his initial knowledge of these alleged acts was prior to the statutory limitation period. In 2000 he became a dues paying member of the USCF. See Complaint at ¶32. Then, "[o]n or around April of 2001, Plaintiff discovered an ongoing, racially motivated scheme....to [keep] Black African- Amercian and Vietnamese children.... from representing the D.C. at the most prestigious scholastic tournament in the United States, the Arnold Denker Tournament of High

School Champions**."** See Complaint at ¶ 33(a), 34. Then, according to Mr. Bennett, "on August 4, 2001 Defendants USCCF and Mehler retaliated against Plaintiff by writing and sending emails that included several false and defamatory statements about Plaintiff." See Complaint at ¶ 40. In March 2002, Mr. Bennett alleges that because of the Defendants discriminatory practices, he was falsely arrested and imprisoned. See Complaint at ¶ 46- 47. In April 2002, certain Defendants, including Mr. Mehler, made false and defamatory comments to the Washington City Paper about Mr. Bennett. See Complaint at ¶ 48. In October 2002, Mr. Bennett alleges that he was aware that certain Defendants, including Mr. Mehler, interfered with his right to make and enforce a contract and prevented him from conducting a tournament. See Complaint at ¶ 49, 50. These allegations show that they were individual, isolated, and unrelated; each different act involving a number of different unrelated individuals.

Importantly, not only was Mr. Bennett aware of these violations, but he admits that prior to the statutory limitation period, he began speaking against these alleged violations. He states that in May 2001, immediately following his awareness of the alleged racist scheme, he began speaking "out on a broad range of matters concerning race discrimination and illegal activities" that he alleges in his Complaint. See Complaint at ¶ 33. On May 3, 2001, Mr. Bennett had a telephone conversation with USCF scholastic coordinator expressing his concerns about the alleged racism he was aware of. See Complaint at ¶ 37. On May 19, 2001, Mr. Bennett wrote letters "detailing discriminatory conditions he and other Black African-American adults and children were subject to." See Complaint at ¶ 38. In June 2001, Mr. Bennett met with University of Maryland officials to discuss "how Black African-American children had intentionally been denied access to chess scholarships because of racial discrimination." See Complaint at ¶ 57.

Mr. Bennett uses the continuing violation theory to attempt to evade the statutory

limitations bar on his claims. However, his Complaint clearly establishes that this theory does not apply. Each alleged act was separate, distinct, and unrelated to any other act; he was aware of the acts prior to the statutory limitation period; and he acted against them prior to the limitation period. Plaintiff understood these allegations to be, in his mind, a violation of his and other's rights well before the statutory limitation period. Consequently, the continuing violation theory does not apply and all of Plaintiff's allegations against this Defendant are barred by the applicable statute of limitations.

### V.   PLAINTIFF'S CONSTITUTIONAL CLAIMS ARE NOT VIABLE

Aside from the fact that the Plaintiff's Constitutional claims are barred by lack of standing, collateral estoppel, res judicata, and the applicable statute of limitations, they are also not viable claims which could be made against Mr. Mehler as either a private citizen or a as a executive director of a chess organization. To prove a claim under §1981, plaintiffs must prove, "(1) that [he] is a member of a racial minority; (2) that [the defendant] had intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." Adams v. Hitt Constracting, Inc., 2005 U.S. Dist. LEXIS 16872 (July 11, 2005). This section does not provide a general cause of action for race discrimination. Brown v. District of Columbia, 252 F. Supp.2d 152, 163 (D.D.C 2003) Rather, it prohibits intentional race discrimination with respect to certain enumerated activities. Id.

The Plaintiff claims that he was prevented from creating potential future contractual relationships. See Complaint at ¶ 49. These contractual relationships were prospective. However, a violation under this Sections requires the Plaintiff to clearly establish how his race was used to prevent him from making and enforcing actual contracts. See 42. U.S.C § 1981 (b). There is no factual indication that he had an enforceable contact, or  that if such a contact

existed, his race was a factor in preventing its enforcement.

The Constitutional right of free speech under the First Amendment is a protection against improper <u>governmental action</u> only and not a protection against private parties. See <u>Columbia Broadcasting System, Inc. v. Democratic National Committee</u>, 412 U.S. 94, 114, 93 S.Ct. 2080, 36 L.Ed.2d 772, 790 (1973).

> The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.

<u>Adderley v. Florida</u>, 385 U.S. 39, 47, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966).

Under District of Columbia law, the owner/occupant of private property is expressly authorized to ask an unwanted visitor to leave the premises and, if that visitor refuses, the interloper can be arrested and prosecuted. D.C. Code § 22-3302 states, in pertinent part:

> [a]ny person who, without lawful authority, ... refuse[s] to quit the same on the demand of the lawful occupant, or of the person lawfully in charge thereof, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $100 or imprisonment in Jail for not more than 6 months, or both, in the discretion of the court.

Thus, probable cause exists as a matter of law for an arrest on private property where a defendant is asked to leave the premises, but fails to do so. See <u>Safeway Stores, Inc. v. Kelly</u>, 448 A.2d 856, 863 (D.C. 1982); <u>Bauldock v. Davco Food, Inc.</u>, 622 A.2d 28 (D.C. 1993) (judgment notwithstanding the verdict was affirmed where restaurant patron's claims for false arrest and assault and battery were based upon actions of the police officer an admitted refusal to leave the premises after a patron was ordered to do so, in violation of D.C. Code § 22-3102).

The Plaintiff asserts that the Mehler, as executive director of the USCCF, is a governmental actor because the organization allegedly enjoys certain zoning and tax benefits.

9

The Plaintiff completely misstates the application of Section 1983 and the concept of a governmental actor.  In order to act under color of state law as required under this Section, there must be a misuse of power as possessed by virtue of state law and made possible **only** because the wrongdoer is clothed with the authority of state law.  See Meyer v. Reno, 911 F. Supp.11, 14 n1 (D.D.C. 1996)(emphasis added).  The fact that Mr. Mehler is an executive director of a not for profit chess organization in the District of Columbia has nothing to do with possessing the authority to act under any state law.  Mr. Mehler is not clothed with authority of any state law.  He is running a chess organization for inner city children.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons and the reasons stated in Defendant David Mehler's Motion to Dismiss for Failure to State a Claim upon Which Relief May Be Granted, or in the Alternative Motion for Summary Judgment, Defendant, David Mehler, respectfully requests that this motion be GRANTED and that the Complaint be dismissed, with prejudice.  This Defendant also seeks the appropriate relief, including attorneys' fees, costs, and expenses, pursuant to 28 U.S.C. § 1927 against the Plaintiff for litigating these claims recklessly and in bad faith.  Further, the Defendant reserves the right to seek this Court's injunctive powers to prohibit Bennett from any further frivolous and vexatious pleadings.

Respectfully submitted,

JORDAN COYNE & SAVITS, L.L.P.

By: _____
David P. Durbin  #928655
Anjuma K. Goswami  #485466
1100 Connecticut Avenue, N.W.
Suite 600

Washington, D.C. 20036<br>
(202) 296-4747<br>
Fax: 202-496-2800<br>
Counsel for Defendant, David Mehler

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing Reply to Plaintiff's Opposition to Defendant David Mehler's Motion To Dismiss For Failure To State A Claim Upon Which Relief May Be Granted, Or In The Alternative, Summary Judgment, was mailed, first class and postage prepaid, and electronically provided this 12th day of April, 2006 to:

Mr. Vaughn Lee Bennett
2520 10th Street, NE, #27
Washington, DC 20018

Richard E. Schimel, Esquire
BUDOW & NOBLE, P.C.
Suite 600
7201 Wisconsin Avenue
Bethesda, MD 20814
  *Counsel for John McCrary*

Jeffrey Thomas Brown, Sr., Esquire
DeCARO, DORAN, SICILIANO,
  GALLAGHER & DeBLASIS, L.L.P.
P.O. Box 40
Lanham, MD 20703-0040
  *Counsel for Harry Cohen*

Tina M. Maiolo, Esquire
Thomas L. McCally, Esquire
CARR MALONEY, P.C.
Suite 1100
1667 K Street, NW
Washington, DC 20006
  *Counsel for United States of America Chess*
  *Federation, Robert John McCrary, Timothy Redman,*

*Timothy Just, Thomas Brownscombe, William Goichberg, Boyd Reed and Gregory Vassersteihn*

Elizabeth Marzo Borinsky, Esquire
Assistant Attorney General
17th Floor
200 St. Paul Place
Baltimore, MD  21202
  *Counsel for University of Maryland Baltimore County, Dr. Freeman Hrabowski, III and Dr. Alan Sherman*

Mr. Timothy Just
37165 Willow Lane
Gurnee, IL  60031

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　Anjuma K. Goswami

G:\CASES\AKG\Bennett- Mehler\Reply Dismiss-Motion.wpd