RECEIVED
APR 2 4 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VAUGHN L. BENNETT

    Plaintiff

v.                                  Case No: 5CV2225 (RJL)

UNITED STATES OF AMERICA
CHESS FEDERATION (USCF), et al,

    Defendants

## PLAINTIFF'S OPPOSITION TO THE STATE UNIVERSITY DEFENDANTS' MOTION TO DISMISS

Now comes the Plaintiff, Vaughn L. Bennett, pro se, and opposes the Defendants' University of Maryland, Baltimore County (UMBC), Dr. Freeman Hrabowski and Professor Alan Sherman (the "University Defendants"), Motion to Dismiss, and as grounds therefore states as follows:

Since approximately 2000 Plaintiff has been a card-carrying member of the USCF. In or about July of 2004, Plaintiff was duly elected as the D.C. Delegate to the USCF. Plaintiff is the only Black African-American Delegate to the USCF. In the capacity of official USCF tournament director and as a member of the USCF, Plaintiff has run many USCF sanctioned chess tournaments in Washington, D.C. Plaintiff has taken children to compete in USCF sanctioned tournaments locally, regionally, and nationally.

The Defendants have denied the Plaintiff particular professional opportunities in the business of chess while allowing free access to Caucasian chess promoters. These opportunities include but are not limited to:

1

    a.    Denying Plaintiff the business opportunity and prestige of hosting the Pan American Collegiate Chess Championships.

    b.    Denying Plaintiff the business opportunity and prestige of having his (Plaintiffs) students represent the District of Columbia and win a scholarships.

**Plaintiff has standing to bring his Claims for Discrimination**

Plaintiff has filed his complaint under 42 U.S.C. § 1982 which says that "[a]ll citizens of the United States" are to be protected against discrimination. In *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 (1969), a white (Caucasian) plaintiff had standing under § 1982 to redress expulsion from corporation organized to operate a community park and playground facilities for the benefit of the area residents after being refused approval of an assignment of his lease because of the assignee's race, on whose behalf the plaintiff had advocated.

Additionally, "Limiting standing under the District of Columbia Human rights Act (DCHRA) to only the direct targets of discrimination would limit the flexibility of the DCHRA as a tool to eliminate discrimination and hamstring efforts to effect the statute's broad purpose. That a plaintiff's alleged injury is predicated upon discrimination against a person other than him or herself presents a jury question as to whether an "unlawful discriminatory practice" occurred and whether the plaintiff was thereby "aggrieved"; *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A. 2d 724 (D.C. 2000).

Plaintiff has referenced the plight of the children and others as evidence of the continuing system of racial discrimination that he (Plaintiff) was subjected to and suffered from. Plaintiff additionally has referenced the children and others as evidence of

2

how he is adversely affected by the racist UMBC chess scholarship award system. Plaintiff's allegations of third-party injury are legally sufficient to survive a motion to dismiss.

**This Court has Personal Jurisdiction over the Individual Defendants**

Defendants transact quite a bit of business in the District of Columbia. The following is a list that includes, (but is not limited to), business activities and contacts that the Defendant's have with the District of Columbia.

- UMBC directly solicits students from high schools in the District of Columbia in order that they may matriculate to UMBC.

- UMBC has an ongoing campaign of directly soliciting Howard University students and George Washington University students to assist in the business venture of conducting the Pan American Collegiate Chess Championships in December of 2006. (Affidavits can be provided from those students who have been meeting with Defendant Sherman.)

- UMBC directly advertises via public media in the District of Columbia for students to attend UMBC.

The aforementioned points are "specific facts that demonstrate purposeful activity by the defendant in the District of Columbia invoking the benefits and protections of its laws." *Helmer v. Doletskaya*, 290 F.Supp 2d 61, 66 (D.D.C.2003) *rev'd on other grounds*, *Helmer v. Doletskaya*, 393 F.3d 201 (D.C.Cir2004).

"Under the due process clause, the minimum contacts principle for the court's exercise of personal jurisdiction over nonresident defendant requires court to examine the quality and nature of defendant's contacts with District of Columbia and whether those

3

contacts are voluntary and deliberate or only random, fortuitous, tenuous, and accidental." "District of Columbia long-arm statute is coextensive in reach with personal jurisdiction allowed by due process clause." *Shoppers Food Warehouse v. Asuncion Moreno*, 746 A.2d 320 (D.C.2000).

UMBC's policy of soliciting individuals in the District of Columbia, (in addition to sharing fees with District of Columbia USCF affiliates, re: Defendant USCCF), clearly establish that the UMBC's contacts with the District of Columbia are "voluntary and deliberate".

**The Eleventh Amendment Does Not Bar Plaintiff's Claim**

Plaintiff respectfully states that the Eleventh Amendment does not protect the Defendants. This is due to, (including but not limited to), the fact that Defendants engaged in a "course of action which shows an actual of deliberate intention to cause harm or which, if not intentional shows an utter indifference to or conscious disregard", by (including but not limited to):

- Dismissing and not responding Plaintiff's claims of racial discrimination.
- Engaging in schemes of retaliatory defamation against Plaintiff.
- Developing, implementing, and sustaining a racially discriminatory system designed to deny Plaintiff, and his students, the professional and educational benefits of the game of chess, while providing similarly situated Caucasians open access.

Defendants should not be cloaked with immunity by citing the Eleventh Amendment.

4

Congress enacted 42 U.S.C. § 2000d-7, conditioning the receipt of federal funds on a waiver of state agencies' Eleventh Amendment immunity to private suits. See *Alexander v. Sandoval*, 532 U.S. 275, 280 121 S. Ct. 1511 (2001); *Litman v George Mason University*, 186 F. 3d 544, 553-54 (4th Cir. 1999). Thus the Eleventh Amendment does not bar Plaintiff's claims.

**Plaintiff states claim against Defendants pursuant to Fed.R.Civ.P. 12(b)(6)**

Plaintiff has named Dr. Free Hrabowski and Dr. Alan Sherman due to the fact that they were and are policy/decision makers for UMBC. Hrabowski and Sherman's positions of authority within UMBC gave them responsibilities and duties to address issues of racism and discrimination. Disregarding and ignoring Plaintiffs claims of racial discrimination was a breech of Hrabowski and Sherman's responsibility and duty to act. Their high-ranking roles within UMBC, and the accompanying negligence has fostered, fueled, and fanned the flames of racism, discrimination, and retaliation continuously directed at the Plaintiff.

**Plaintiff's Section 1981 claims.**

Plaintiff communicated his concerns of racism with the above named Defendants. Plaintiff states that Defendants had a responsibility and duty, as policy/decision makers of the UMBC to investigate and address Plaintiff's claims of race discrimination. Defendants' failure to take action has encouraged the continuation of the system of racial discrimination that Plaintiff was subjected to.

Plaintiff's Complaint sets forth facts that provide basis to support a reasonable inference that UMBC and the above named individual Defendants interfered with his right to make and enforce contracts due to racial discrimination.

5

**Plaintiff's First Amendment and Section 1983 Claims**

Defendant UMBC is an actor of the US Government. Therefore Plaintiff's First Amendment and 42 U.S.C.A. § 1983 Claims are properly stated as Defendants have acted under color of state law.

**Title VI: Plaintiff was retaliated against for exercising his free speech rights on an issue of public concern**

As a result of Plaintiff exercising his First Amendment rights of free speech, the above named Defendants, using federal monies, retaliated against him. The Defendants denied Plaintiff the business opportunity to conduct or even to partner with UMBC to conduct the most prestigious collegiate chess tournament in the Northern Hemisphere, the 2006 USCF Pan American Collegiate Chess Championships (Pan Ams). Defendants have scheduled the Pan Ams to be held this coming December, in Washington, D.C.

Title VI of the Civil Rights Act prohibits discrimination against persons who complain about or oppose race discrimination. Defendants have retaliated against Plaintiff in violation of Title VI.

**Plaintiff's Section 1985 claims.**

Plaintiff's claims of a race based conspiracy are correct in that Defendants chose to use federal monies to racially and blatantly violate Plaintiff's Constitutional rights and the written and unwritten policies of the USCF. Defendants have racially bypassed the D.C. USCF Delegate (Plaintiff, who is a Black African-American), in order to negotiate and partner with Defendant David Mehler, (who is a Caucasian), and the US Chess Center Foundation to conduct the upcoming Pan Ams, December 2006, in Washington, D.C.

Defendants continue with their policy of denying Black African-American children in D.C. access to their chess scholarships, as UMBC has made no effort to inform the children of the District that a full scholarship, (to UMBC), will be given away at the upcoming 2006 Pan Ams, where a Pan Am Scholastic Tournament will be held.

**Plaintiff's Section 1986 claims.**

As Plaintiff's Section 1985 must not fail, neither should his Section 1986 claim.

**There is direct evidence of discrimination.**

Based on the aforementioned statements, Plaintiff emphatically states that the record contains direct evidence of discrimination.

**Dismissal is premature.**

Dismissal is premature, as no discovery has yet been conducted. Plaintiff believes proper discovery would produce evidence that would not only conclusively, prove his claims; but that much broader race based conspiracy, against Plaintiff would be exposed.

**Defendants have not given a non-discriminatory reason for their actions.**

Defendants have not articulated a legitimate non-discriminatory reason for their actions. As such, Plaintiff's *prima facie* case of discrimination is unchallenged.

## CONCLUSION

Plaintiff has stated claims against Defendants upon which relief may be granted. For all of the foregoing reasons, Plaintiff respectfully requests that the State University Defendants Motion to Dismiss be denied.

Respectfully submitted,

*Vaughn L. Bennett, Pro Se*
Vaughn L. Bennett, pro se
2520 10th Street, N.E., #27
Washington, D.C. 20018
Telephone: (202)351-2627

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing **PLAINTIFF'S OPPOSITION TO THE STATE UNIVERSITY DEFENDANTS' MOTION** was mailed, first class and postage prepaid this 24th day of April, 2006 to:

Elizabeth Marzo Borinsky
Assistant Attorney General
200 St. Paul Place, 17th Floor
Baltimore, MD 21202

*Vaughn Lee Bennett*
Vaughn Lee Bennett