UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

**FILED**

`JUL 7 - 2006`

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| VAUGHN L. BENNETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. 05-2225 (RJL) |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| CHESS FEDERATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER
(July 7, 2006) [#4, 5, 7, 11, 14, 17, 21, 22, 25, 30, 36, 40]

Plaintiff, Vaughn Bennett ("plaintiff"), brought this action *pro se* against five non-profit organizations involved in sponsoring chess tournaments for students, sixteen individuals associated with the organizations, individually and in their official capacities, two private entities, and a state university, including the university's president and one of its professors ("defendants"). Plaintiff seeks compensatory and punitive damages for alleged violations of 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, Title VII of the Civil Rights Act, the First, Fourth, Thirteenth, and Fourteenth Amendments to the United States Constitution, as well as retaliatory acts stemming from a conspiracy among the defendants to keep African American and Vietnamese children from participating in various chess competitions. Currently before the Court are a myriad of motions filed by defendants seeking to dismiss, or in the alternative, for summary judgment on a wide array of grounds including lack of

standing, lack of jurisdiction, failure to render service of process, sovereign immunity

restriction by statute of limitations, an Illinois State statute regarding suits against non-profit

organizations, and failure to state a claim upon which relief can be granted. For the

following reasons, the Court GRANTS defendants' motions and, hereby, dismisses this case

with prejudice as to each and every moving defendant.

## BACKGROUND

Since 2000, plaintiff has been a member of the United States of America Chess

Federation ("USCF") and subsequently became a USCF certified tournament director. (*See*

Compl. ¶ 32.) Plaintiff also later became an executive director of Olympic Chess House, a

District of Columbia nonprofit chess organization. (*Id.*) Plaintiff's action arises from

allegations of racial discrimination within the USCF, including inequitable treatment of

Black African-American adult and child chess players. (*Id.* ¶ 33.) Specifically, plaintiff

alleges that sometime in 2001, he discovered an ongoing racially motivated scheme designed

by several of the defendants to deny Black African-American and Vietnamese children the

opportunity to win chess scholarships by representing the District of Columbia at a national

high school chess tournament. (*Id.* ¶ 33a.)

Plaintiff also alleges that members of the chess organization defamed him (*id.* ¶¶ 33,

39, 40, 43, 48, 63-71); plotted to have him incarcerated (*id.* ¶¶ 45-47); interfered with his

attempts to teach chess at a District of Columbia high school (*id.* ¶ 49); denied him an

opportunity to officiate at chess tournaments (*id.* ¶ 50); manipulated chess competition rating

2

systems and organization rules to discriminate against African-American competitors (*id.* ¶ 51); falsified ratings in order to deny the Howard University Chess Team its place in a 2003 competition (*id.* ¶¶ 54-55); and disrupted a 2004 chess competition in Hershey, Pennsylvania and subsequently suspended plaintiff's membership in one of the chess organizations (*id.* ¶¶ 59-62, 71).

## I.    Plaintiff Lacks Standing to Seek Redress for Other Victims in Counts I, VIII, and IX

Several defendants in this action have moved to dismiss the current action due to plaintiff's lack of standing.[1] In particular, these defendants claim that the plaintiff does not have the standing to bring this action on behalf of "other Black African-Americans" in Counts I, VIII and IX.[2] To establish standing to bring an action against a proper party, a plaintiff must establish that they were injured by the action of the defendant(s). *See Raines v. Byrd*, 521 U.S. 811, 857-58 (1997). A plaintiff cannot usually litigate on behalf of another

---

[1]    The following defendants have moved that the current action be dismissed for lack of standing: Defendants University of Maryland, Baltimore County ("UMBC"); Dr. Freeman Hrabowski, III; Professor Alan Sherman; Chess Central' Timothy Just; USCF; John McCrary; Timothy Redman; Boyd Reed; and David Mehler. Defendants United States Chess Center Federation ("USCCF"), Ralph Mikell, Greg Acholonu, and Salvador Rosario, while claiming they have not been served in this action and thereby not waiving service of process, have asked that Defendant Mehler's arguments in his motion to dismiss, which includes dismissal for lack of standing, be adopted as their own. Defendants William Goichberg, Wayne Clark, Thomas Brownscombe, and Gregory Vasserstein also claim that the have not been properly served, and without waiving service of process, ask that the Court consider the motion to dismiss by defendants USCF, McCrary, Redman, Just and Reed, which includes dismissal for lack of standing, be considered filed on their behalf as well.

[2]    Defendant Mehler claims in his motion to dismiss that Counts II and X also are brought on behalf of other Black African-Americans or children. Count X will be dealt with separately in this opinion. As to Count II, plaintiff's complaint is clear that Count II only references a violation of Plaintiff's rights under the First Amendment. (*See* Pl.'s Compl. ¶¶ 95-100.)

person's legal rights. *See Allen v. Wright*, 468 U.S. 737, 751 (1984). Our Circuit Court has stated that actions alleging discrimination should be "brought by the direct victims of the alleged discrimination because they are the best situated to assert the individual rights in question." *Clifton Terrace Ass'n v. United Tech. Corp.*, 289 F.2d 714, 721 (D.C. Cir. 1991).

When reviewing a motion to dismiss for lack of standing, the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Id.* at 501. Where a motion to dismiss, however, presents a dispute over the factual basis of the Court's jurisdiction, the Court "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting, Inc. v. Rep. of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000); *In re Swine Flu Immunization Prods. Liability Litig.*, 880 F.2d 1439, 1442-43 (D.C. Cir 1989). If, after considering the record before the Court, "the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed." *Warth*, 422 U.S. at 502.

While plaintiff is a chess coach and a mentor to many young children in the District of Columbia and is actively involved in promoting the development of chess within the District of Columbia, plaintiff is prohibited from bringing claims on the behalf of other litigants, no matter how dear to his heart they may be. *See Allen*, 468 U.S. at 751; *see Clifton Terrace Ass'n*, 289 F.2d at 721. The "other Black African-Americans", the African-American and Vietnamese chess playing children within the District are both identifiable and

4

able to present their own claims if they so choose. Thus, Counts I, VIII, and IX are dismissed for lack of standing so far as they allege defendants violated the rights of alleged victims other than the plaintiff.

## II.   Plaintiff is Precluded by Collateral Estoppel and Res Judicata From Suing Defendants Mehler, United States Chess Center Federation ("USCCF") and Mikell

Plaintiff previously brought suit against defendants Mehler, USCCF and Mikell in the District of Columbia Superior Court, Civil Action No. 02-7007, alleging violations of plaintiff's First and Fourth Amendment rights, defamation and false imprisonment. Defendants were granted summary judgment on the First and Fourth Amendment claims, as well as the false imprisonment claim. (*See* Def. Mehler's Mot. To Dismiss Ex. 3.) The remaining claim of defamation was settled and an Order of Dismissal with Prejudice was entered on May 2, 2005. (*See* Def. Mehler's Mot. To Dismiss Ex. 2.) For the following reasons, plaintiff is barred from bringing this current action against defendants Mehler, USCCF and Mikell, as the current claims are barred by collateral estoppel, res judicata and by the settlement agreement entered into between plaintiff and these defendants in the Superior Court action.[3]

Counts II, IV and VII of the current action are identical to previous claims raised

---

[3]     Defendant Mehler states in a footnote that defendants USCCF, Mikell, Acholonu, and Rosario have not been properly served in this action . (Def.., David Mehler's, Mot. To Dismiss for Failure to State a Claim Upon Which Relief May Be Granted, or in the Alternative, Summary Judgment 1 n.1. ("Def. Mehler's Mot. To Dismiss.))  However, due to the fact that plaintiff's claims against defendants Mehler, USCCF and Mikell are barred by collateral estoppel and res judicata, for the purposes of this opinion, the Court will treat those two defendants as properly served.

against defendant Mehler, USCCF and Mikell in the D.C. Superior Court action and, therefore, those claims, having been fully adjudicated on the merits, are barred by collateral estoppel. *See Stanton v. Dist. of Columbia Ct. of Appeals,* 127 F.3d 72, 76-78 (D.C. Cir. 1997). The other claims brought in the current action against defendants Mehler, USCCF and Mikell are barred by res judicata as they all stem out of the same cause of action. *See id.* at 78. Our Circuit Court has stated that the District of Columbia has adopted the "transaction approach" in defining the term "cause of action" for claim preclusion purposes and that approach includes "all or any part of the transaction, or series of connected transactions, out of which the action arose." *Id.* (quoting *Smith v. Jenkins,* 562 A.2d 610, 613 (D.C. 1989)). All of plaintiff's current claims against defendants Mehler, USCCF and Mikell, stem from of the same transactions that were the basis of his D.C. Superior Court action, and, therefore, plaintiff is barred from litigating them against those defendants in this action as the events did not take place "post-judgment." *Stanton,* 127 F.3d at 78-79. While the defamation claim by plaintiff in the D.C. Superior Court action was settled, plaintiff is barred from bringing that claim against defendants Mehler, USCCF and Mikell in the current action, since plaintiff voluntarily accepted the settlement agreement dismissing the case with prejudice. Thus, he is equitably estopped from attacking the settlement through this suit. *See Asberry v. U.S. Postal Serv.,* 692 F.2d 1378, 1381-82 (Fed. Cir. 1982) ("Having voluntarily accepted the settlement and its benefits, [plaintiff] is equitably estopped to attack it."); *Johnson v. Washington Gas Light Co.,* 404 F. Supp. 2d 179, 181 (D.D.C. 2005).

Accordingly, all claims against defendants Mehler, USCCF and Mikell are dismissed with prejudice.[4]

## III.    All Claims Against the University of Maryland, Baltimore County and Its Officers Must Be Dismissed

Defendants University of Maryland, Baltimore County, Dr. Freeman Hrabowski, and Professor Alan Sherman (the "University defendants") moved to dismiss this action for lack of standing, lack of personal jurisdiction, failure to state a cognizable claim and because the action is barred by the Eleventh Amendment and statutory immunity. Because the University of Maryland, Baltimore County is a arm of the state of Maryland, and defendants Hrabowski and Sherman are State personnel as employees of UMBC, plaintiff is barred from pursing the current action against the University defendants. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *See* Md. Code. Ann., Cts. & Jud. Proc. § 5-522(b).  Therefore, all claims against the University defendants are dismissed.

In *Seminole Tribe of Florida v. Florida*, the Supreme Court found that the Eleventh Amendment bars claims against states in federal Court unless the state has consented to suit or Congress has lawfully abrogated the states' immunity.  517 U.S. at 54 ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the

---

[4]    This Opinion does not address the fact that defendants Acholonu and Rosario were not served by the plaintiff. If the plaintiff is to proceed against these defendants, he is to provide proof of service to the Clerk of the Court within 15 days of this Memorandum Opinion and Order.

judicial power of the United States.'" (quoting *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)).

The Eleventh Amendment immunity applies to entities that are arms of the state. *See*

*Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974) (Barring an action in which the state

was the real party in interest). Since UMBC is an arm of the state of Maryland, the

plaintiff is barred from bringing the current action against UMBC.

As for the defendants Hrabowski and Sherman, the Maryland Courts and Judicial

Proceeding Annotated Code Section 5-522 provide that state personnel are immune from

prosecution for torts while acting in their official capacity unless the action is with malice

or gross negligence. *See* Md. Code. Ann., Cts. & Jud. Proc. § 5-522(b) ("State personnel,

. . . are immune from suit in courts of the State and from liability in tort for a tortious act

or omission that is within the scope of the public duties of the State personnel and is made

without malice or gross negligence..."). Since both defendants Hrabowski and Sherman

are state personnel, *see* Md. Code Ann. § 12-101, and the allegations in the complaint are

not sufficient to prove malice or negligence, all claims against defendants Hrabowski and

Sherman are also dismissed. Accordingly, University defendants' motion to dismiss all

claims is GRANTED.

## IV.    Failure to state a claim under Federal Rule 12(b)(6)

The remaining defendants claim that the plaintiff has failed to state a claim upon

which relief can be granted as to both his constitutional claims (Counts I, II, III, IV, and VIII)

and his other claims. For the following reasons the Court agrees and dismisses each one for

8

failure to meet the standard set by Rule 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) provides that a district Court should dismiss a complaint for failure to state a claim upon which relief can be granted when it is clear that no relief could result under any facts consistent with the complaint's allegations. *Conley v. Gibson*, 355 U.S. 41, 45-47 (1957); *EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997). Thus, in evaluating the defendants' motions the Court will assume the truth of all of the factual allegations set forth in the plaintiffs' complaint, *see Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985), and will construe the complaint liberally in favor of the plaintiff. *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979). A *pro se* complaint is held to a less stringent standard than formal pleadings drafted by lawyers. *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 n.2 (D.C. Cir. 2000) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Although a Court will read a *pro se* plaintiff's complaint liberally, a *pro se* plaintiff must present a claim on which the Court can Grant relief. *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981).

### A.    Count I: Alleged Violation of 42 U.S.C. § 1981

Plaintiff alleges that he was discriminated against in violation of 42 U.S.C. § 1981 by defendants "(1) denying the Plaintiff and other Black African-Americans the right to make and enforce contracts; (2) denying the Plaintiff and other Black African-Americans access to the professional and educational benefits of chess while allowing similarly situated Caucasians an open door policy; (3) denying chess promotions to Plaintiff; and (4) giving

9

Plaintiff and other Black African-Americans lower evaluations/chess ratings than Caucasians on the basis of race and color. (Pl.'s Compl. ¶¶ 93-94.)

Section 1981 guarantees individuals freedom from racial discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Our Circuit has adopted the *McDonnell Douglas* burden shifting framework to analyze a § 1981 claim. *See Murray v. Gilmore*, 365 U.S. App. D.C. 372, 406 F.3d 708, 713 (D.C. Cir. 2005). Under this scheme, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1971). To establish a prima facie case of discrimination, plaintiff must establish that he is: (1) a member of a protected class; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in Section 1981 (which includes the right to make and enforce contracts). *See Mitchell v. DCX, Inc.*, 274 F. Supp. 2d 33, 44-45. In showing discriminatory intent, "plaintiff must show that a defendant intentionally treated him or her differently because of his or her race." *Id.* at 45.

In this case, plaintiff has not only failed to sufficiently allege that there were actual contracts to which he was about to enter into with others, but has also failed to allege that any defendants treated him differently specifically because of his race. *See Mitchell*, 274 F. Supp. 2d at 45. Plaintiff's self-styled complaint reads more like a dispute between himself and others about the promotion and development of the game of chess in the District of

10

Columbia than a traditional legal action. The hostility between plaintiff and all, or some, of the defendants appear to be based more on personal differences than racial animosity. While plaintiff's complaint is long, he fails to allege that there were *actual* contracts or promotions that he was close to entering into or receiving. Because plaintiff has failed to sufficiently allege that defendants treated him differently because of his race and plaintiff has failed to sufficiently allege that any alleged discrimination interfered with *actual* contracts or promotions that would benefit the plaintiff, Count I is dismissed as to all moving defendants.

### B.    Counts II, III, IV, VIII, and IX: The Constitutional Claims

Plaintiff alleges that the defendants violated plaintiff's First, Fourth, Thirteenth and Fourteenth Amendment rights pursuant to 42 U.S.C. §§ 1982, 1983, 1985, and 1986.[5] Defendants have moved to dismiss the counts of plaintiff's complaint which allege that they violated plaintiff's Constitutional rights for failure to state a claim. For the following reasons, each of these must also be dismissed.

First, plaintiff alleges that the defendants violated his First Amendment rights "[b]y retaliating against Plaintiff for his exercise of his right to free expression." (*See* Pl.'s Compl. §§ 95-100.) Plaintiff seems to claim that defendants violated this right pursuant to 42 U.S.C. § 1983. *Id.* However, defendants are private parties, not government or state actors, and,

---

[5]    In Count II, plaintiff alleges defendants violated her First Amendment rights pursuant to 42 U.S.C. § 1983. In Count III, plaintiff alleges defendants violated her Fourteenth Amendment rights pursuant to 42 U.S.C. § 1982. In Count IV, plaintiff alleges defendants violated her Fourth Amendment rights pursuant to 42 U.S.C. § 1983. In Count VIII, plaintiff alleges defendants violated her Thirteenth Amendment rights pursuant to 42 U.S.C. § 1985, and in Count IX, plaintiff alleges defendants violated her Thirteenth Amendment rights pursuant to 42 U.S.C. § 1986.

therefore, they cannot violate plaintiff's First Amendment rights pursuant to 42 U.S.C. § 1983. *See Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.*, 412 U.S. 94, 114 (1973). Therefore, Count II is dismissed as to all defendants.

Second, plaintiff alleges that the defendants, none of whom are government agents, violated his Fourth Amendment rights pursuant to 42 U.S.C. § 1983. However, the protections provided by the Fourth Amendment apply to invasions of a person's privacy interests by government agents, not private individuals or associations. *Coolidge v. New Hampshire*, 403 U.S. 443, 488, *reh. denied*, 404 U.S. 874 (1971) ("The exclusionary rules were fashioned 'to prevent, not to repair,' and their target is official misconduct.") (quoting *Elkins v. United States*, 364 U.S. 206, 217 (1960)); *United States v. Lima*, 424 A.2d 113, 117 (D.C. 1980) ("It is well established that the protection of the Fourth Amendment is applicable to intrusions of an individual's privacy interests by governmental officers and, not generally, to those made by private parties."). The defendants, being neither government agents nor police officers, cannot be held liable for violations of the plaintiff's Fourth Amendment rights pursuant to 42 U.S.C. § 1983. Accordingly, Count IV is dismissed as to all defendants.

Third, plaintiff alleges that defendants violated his Thirteenth Amendment rights pursuant to 42 U.S.C. § 1985 by denying him "the professional and educational benefits of chess," instituting "images and badges of slavery," and conspiring to do wrongs to the plaintiff. (*See* Pl.'s Compl. ¶¶ 122-26.) However, denying plaintiff of "the professional and educational benefits of chess" does not amount to depriving the plaintiff of a "right secured

12

by law to all." *Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971). Therefore, Count VIII is dismissed as to all defendants.

Fourth, plaintiff also alleges the defendants violated his Thirteenth Amendment rights pursuant to 42 U.S.C. § 1986. Section 1986 provides:

> "Every person who, having knowledge that any of the wrongs conspired to be
> done, and mentioned in section 1985 of this title, are about to be committed,
> and having power to prevent or aid in preventing the commission of the same,
> neglects or refuses so to do, if such wrongful act be committed, shall be liable
> to the party injured . . ."

42 U.S.C. § 1986. Judge Louis Oberdorfer of this Court stated in *Thomas v. News World Communications*, that "[t]he language of this provision establishes unambiguously that a colorable claim under § 1985 is a prerequisite to stating an adequate claim for neglect to prevent under § 1986." Therefore, plaintiff, having failed to establish a colorable claim under § 1985 is prevented from bringing a claim of a violation of § 1986 against the defendants. *See id.* Accordingly, Count IX is dismissed as to all defendants.

Finally, plaintiff also alleges that the defendants violated his Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1982, by intentionally discriminating against him, conspiring to have him falsely arrested and denying him the right to be a guest and spectator at a chess tournament at Hershey Lodge and Convention Center. (*See* Pl.'s Compl. ¶¶ 101-04.) However, once again, the defendants are not State actors, they are private parties, and plaintiff has not alleged that defendants have interfered with his rights "to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. Therefore,

13

Count III is dismissed as to all defendants.

### C.    **Count V: Retaliation**

Plaintiff alleges that "defendants have violated Title VII [of the Civil Rights Act, 42

U.S.C. §§ 2000 *et seq.*] by intentionally retaliating against Plaintiff because he engaged in

protected activity." (Pl.'s Compl. ¶¶ 110-13.) To make out a prima facie case of retaliation,

a plaintiff must "demonstrate: (1) that he engaged in a statutorily protected activity; (2) that

the employer took an adverse personnel action; and (3) that a causal connection existed

between the two." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002). However,

plaintiff has not alleged that he is an employee of one or any of the defendants. Therefore,

plaintiff cannot make out a prima facie case of retaliation in violation of Title VII of the Civil

Rights Act. Accordingly, Count V is dismissed as to all defendants.

### D.    **Count VI:  Defamation**

Plaintiff alleges that all defendants defamed him in their communications (written and

oral) with Washington D.C. newspapers, USCF, reporters and the other defendants. Most

of the allegations of defamation are aimed at defendant Mehler and were dealt with earlier

in this opinion. *See supra* at 5-7. With respect to the other defendants, the defamatory nature

of the remarks are not severe enough to satisfy the standard of proof required to prove

defamation. *See  Howard Univ. v. Best*, 484 A.2d 958, 988-89 (D.C. 1984).

To prove a defamation action, a plaintiff "must show (1) that the defendant made a

false and defamatory statement concerning the plaintiff; (2) that the defendant 'published'

the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm of that its publication caused the plaintiff special harm." *Prins v. International Tel. and Tel. Corp.*, 757 F. Supp. 87, 90 (D.D.C. 1991); *Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001). For a statement to be defamatory, the statement must injure the plaintiff "'in his trade, profession or community standing, or lower him in the estimation of the community' . . . But an allegedly defamatory remark must be more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.'" *Howard Univ.*, 484 A.2d at 988-89 (citations omitted) (finding that there was no defamatory language in defendants publication to third parties). Reading each allegation in the complaint as true, as required in considering a motion to dismiss, the complaint fails to satisfy the standard for proving a claim of defamation as the oral communications and letters or emails written by the defendants did not have the necessary defamatory meaning as stated in *Howard University v. Best. See* 484 A.2d at 988-89. Therefore, Count VI is dismissed as to all defendants.

**E.    Count VII: False Imprisonment**

Plaintiff further alleges that the defendants "coerced public officials and MPD officers into unlawfully arresting Plaintiff without probable cause." However, even assuming the allegations in the complaint are true, the Court finds that the plaintiff's arrest for unlawful entry into the USCCF's premises was reasonable and justified.

15

Therefore, the Court dismisses Count VII as to all defendants for failure to state a claim.

The main component of a claim for false arrest or false imprisonment is an unlawful detention. *Marshall v. Dist. of Columbia*, 391 A.2d 1374, 1380 (D.C. 1978)(listing the elements of a false arrest claim). "False imprisonment is defined, in [the District of Columbia], as the restraint by one person of the physical liberty of another without consent or legal justification." *Faniel v. Chesapeake & Potomac Tel. Co.*, 404 A.2d 147, 150 (D.C. 1979). An arrest can be justified by a police officer if that officer believes, "in good faith, that his or her conduct was lawful" and that their belief was reasonable. *Scott v. Dist. of Columbia*, 322 U.S. App. D.C. 75, 81-82 (D.C. 1996).

The police officers who arrested plaintiff for unlawful entry here did so on USCCF's premises after receiving a call from someone at USCCF. (Compl. ¶ 47.) Plaintiff refused to step outside of the building housing USCCF when asked to do so by the police officers and was then placed under arrest and incarcerated for one night. (*See id.*) Assuming all alleged facts as true, the police officers actions were reasonable and based in good faith. *See Scott*, 322 U.S. App. D.C. at 81-82. Therefore, there was no unlawful arrest or false imprisonment of plaintiff by those officers. Since plaintiff only alleges that defendants"coerced" and "influenced" the police officers who arrested plaintiff, plaintiff cannot state a valid claim of false imprisonment against defendants. *See id.* Accordingly, Count VII of plaintiff's complaint is dismissed as to all defendants.

16

**F.**    **Count X:  Claim of Intentional Infliction of Emotional Distress**

Finally, plaintiff alleges that the conduct of all of the defendants has caused him to "suffer mental anguish, emotional pain and suffering" and several other ailments and thus brought a claim of intentional infliction of emotional distress against all defendants. However, the alleged emotional distress plaintiff has suffered does not satisfy the standard necessary to prove a claim of intentional infliction of emotional distress. *Homan v. Goyal,* 711 A.2d 812, 818 (D.C. 1998).

To prove a claim of intentional infliction of emotional distress, "a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff 'severe emotional distress.'" *Larijani v. Georgetown Univ.,* 791 A.2d 41, 44 (D.C. 2002). The conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Homan,* 711 A.2d at 818 (quoting *Drejza v. Vaccaro,* 650 A.2d 1308, 1316 (D.C. 1994). Liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Restatement (Second) of Torts § 46, Comment (d) (1965). Recovery is not permitted merely because conduct causes mental distress. *District of Columbia v. Thompson,* 570 A.2d 277, 290 (D.C. 1990).

However, the allegations set forth in the complaint, if true, do not satisfy the standard for proving a claim of intentional infliction of emotional distress. Simply stated, the conduct

17

alleged is not "so outrageous and extreme" that it goes beyond all "bounds of decency" and should be considered atrocious. *Homan*, 711 A.2d at 818. Therefore, the Court finds that plaintiff has failed to allege conduct sufficient to prove intentional infliction of emotional distress and dismisses Count X as to all defendants.

## V.    **Conclusion**

Plaintiff, in his complaint, has outlined in detail what appears to be a long and tempestuous history between himself and defendant Mehler and the other defendants concerning the promotion of the game of chess in the District of Columbia. Notwithstanding his frustration with the disagreements between the parties, plaintiff either lacks standing to bring the current action against the defendants, is barred from bringing the action against the defendants, or fails to state a claim upon which relief can be granted.[6] Therefore, for all of the above stated reasons, defendants' Motions to Dismiss are GRANTED. An appropriate order will issue with this memorandum opinion.

RICHARD J. LEON
United States District Judge

---

[6]    This Memorandum Opinion does not reach the merits of defendants' claims that this action should be dismissed on statute of limitations grounds, lack of personal jurisdiction, or because the action is barred by Illinois statute. The plaintiff will be ordered to show cause as to why the current action should not be dismissed as to those defendants claiming lack of service of process through various defendants' motions.